# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

|  |  |  |
|---|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, DIAMOND RESORTS HAWAII COLLECTION DEVELOPMENT, LLC, and DIAMOND RESORTS MANAGEMENT, INC., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. _____ |
| WESLEY FINANCIAL GROUP, LLC, a Tennessee limited liability company, and CHARLES WILLIAM McDOWELL, III, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, DIAMOND RESORTS HAWAII COLLECTION DEVELOPMENT, LLC, and DIAMOND RESORTS MANAGEMENT, INC.[1] sue Defendants WESLEY FINANCIAL GROUP, LLC, and CHARLES WILLIAM MCDOWELL III, and state:

## INTRODUCTION

1. Plaintiffs market, sell, and manage more than 420 vacation destinations throughout the world that customers can book by using membership points sold by Plaintiffs' Diamond Collections.

2. Defendant Wesley Financial Group, LLC's ("Wesley") business model – and that of the other inhabitants of the timeshare cancellation cottage industry - is unique. Wesley is a

---

[1] Plaintiffs Diamond Resorts U.S. Collection Development, LLC and Diamond Resorts Hawaii Collection Development, LLC may, from time to time, be referred to together as "Diamond Collections." All three plaintiffs will be referred to collectively as "Diamond Resorts" and "Plaintiffs."

completely unregulated and unrestrained business whose sole purpose is to cancel another business's valid and enforceable contracts. Wesley has made a business of and monetized the tort of tortious interference with contract. Wesley targets and disrupts valid contracts between timeshare developers, like the Diamond Collections, and their customers. Wesley exacts exorbitant, up-front fees. Defendant Charles William "Chuck" McDowell, III ("McDowell") is Wesley's founder and CEO. While McDowell touts himself as a pioneer in the timeshare exit industry who has "fought and won" against timeshare developers, in reality he is a thrice-bankrupt, tax-liened huckster, oft-vilified sports betting tout, selling snake-oil: false and meaningless promises which, in the end, leave the timeshare owner – many Diamond Collections' members - in a worse position than when they started.

3.     Wesley's aggressive television, radio, social media, and internet advertising campaigns often feature McDowell without revealing his checkered financial past:

- Three (3) bankruptcy filings

- Eight (8) federal tax liens

- Thirteen (13) civil and debt collection lawsuits

- Two (2) worthless check charges

- Vice-President of Sales of "timeshare exit" scam whose principals and nine others were indicted, with the principal sentenced to twenty-seven (27) years in prison.

- ChuckLuck.com, a sports betting "investment adviser," through which McDowell guaranteed his customers a profit, started McDowell's pattern of false guarantees of results and ignored demands for the promised refund, The ChuckLuck.com false "guarantee" became a central theme of McDowell's promotion of Wesley. ChuckLuck.com, amid a legion of angry and vocal bettors denied their promised refunds, mutated into SmokeyWins, a sports betting tout of no greater repute

2

4.     While boasting "we know how to get you out of a timeshare successfully," Wesley conceals the dozens of on-line and BBB complaints. And an even more egregious omission is the Better Business Bureau's revocation of Wesley's accreditation:

> On 11/20/2019 this company's accreditation in BBB was revoked by BBB's Board of Directors due to engaging in activities reflecting poorly on the BBB or its members.[2]



5.     Wesley makes false and misleading promises with a "100% guarantee" that Wesley can legally relieve timeshare owners of their obligations, including owners of Diamond Resorts' timeshare interests.   When the customer inquires further about Wesley's services, Wesley constructs an elaborate illusion that it is searching for grounds that would support a "legal" cancellation of the timeshare interest, while knowing that there is not one available to any timeshare owner who hires Wesley. Wesley is not a law firm and knows that it could do nothing "legally" with any such information obtained. Yet Wesley pointedly discourages its prospective customers from consulting or hiring a lawyer. This is one more of the many deceptions Wesley perpetrates on its customers.

---

2.     https://www.bbb.org/us/tn/franklin/profile/timeshare-advocates/wesley-financial-group-llc-0573-37070239 (last visited April 27, 2020)

6.     Central to Wesley's business model is that its customers must pretend, under threat of forfeiture, that Wesley does not exist, certainly a unique attribute for any consumer facing business. Wesley relies so heavily on secrecy that its contract with **all** its customers – not just Diamond Resorts owners – mandates that the timeshare owner lie about hiring Wesley, making it a breach of contract and a forfeiture of the advance fee they have paid should the customer divulge Wesley's existence. The contract between Wesley and its customers includes an express admonition that the customer must lie to Diamond Resorts and conceal its relationship with Wesley. The "Service Agreement" states in bold and all caps:

> **THE TERMS, CONDITIONS AND EXISTENCE OF THIS SERVICE AGREEMENT ARE CONFIDENTIAL AND YOU AGREE NOT TO DISCLOSE TO ANY PERSON OR ENTITY (INCLUDING BUT NOT LIMITED TO ANY PERSONS WORKING FOR OR AFFILIATED WITH THE TIMESHARE ENTITY) THAT YOU HAVE ENTERED INTO THIS SERVICE AGREEMENT OR ANY OF THE TERMS THEREOF. ANY BREACH OF THIS PARAGRAPH 7.c OR ANY BREACH OF PARAGRAPH 1.b. OF THIS SERVICE AGREEMENT OR ANY DISCLOSURE BY YOU TO ANY PERSON OR ENTITRY THAT [WESLEY] OFFERS A 100% MONEY BACK GUARANTEE IN THE EVENT YOUR PURCHASE AGREEMENT IS NOT TERMINATED WILL GIVE [WESLEY] THE RIGHT TO IMMEDIATELY TERMINATE THIS SERVICE AGREEMENT BY WRITTEN NOTICE TO YOU AND [WESLEY] WILL NOT BE REQUIRED TO REFUND ANY PORTION OF THE FEE TO YOU DUE TO THE BREACH OF THIS PARAGRAPH 7.c. OR THE BREACH OF PARAGRAPH 1.b.**

7.     Wesley operates under this veil of secrecy because it well knows that no timeshare developer, including Diamond Resorts, responds to fraudulent, advance fee so-called "cancellation" companies like Wesley. So Wesley demands their customers never disclose Wesley, while ghostwriting cookie-cutter emails and other communications for the owners, concealing that Wesley wrote them, to send to Diamond Resorts and other timeshare developers requesting to be released from their timeshare interest based on some unsubstantiated and generalized allegation of deception during the sales process, all scripted by Wesley. Wesley's

4

scheme is indiscriminate – it is the same for Diamond Resorts as it is for any other timeshare developer.

8.     The next step in Wesley's scheme is to suppress all communications between the timeshare developer and its customers:

> What to do when the timeshare company calls: Our best advice is not to answer their calls (feel free to block their number). If you do happen to answer, our advice is to say something along the lines of, 'Hey, if you need to speak to me, please contact me in writing.' Hang up and leave it at that – you are not obligated to speak to them.

Wesley also instructs the timeshare owner: "do not respond to the timeshare company without getting specific instructions on what to say/do from Wesley."

9.     But Wesley knows that none of this will work. So, finally, Wesley induces the timeshare owner to stop making payments on valid and enforceable debts, warning, in fact, that continuing payments will make the process take longer. Wesley provides detailed instructions of how to cancel automatic payments depending on the method of payments the customer has established with the timeshare developer. Wesley exposes the timeshare owner to delinquency and default because it knows that only the developer's foreclosure or forfeiture of the timeshare interest, with attendant adverse credit and other consequences to the timeshare owner, will cancel the customer's timeshare.

10.    Wesley falsely leads its timeshare owner customers to believe, wrongly, that they are generating leverage with the timeshare developer.

11.    Meanwhile, Wesley knows all along that it is providing no legal service; that the timeshare owners' ghostwritten cookie cutter submissions will be unsuccessful; and that, in the end, Wesley will resort to tortious interference, directing the customer to breach its timeshare

contract and stop paying without legal or factual cause, exposing the owner to the risk of foreclosure, a money judgment, credit score impairment or worse.

12.     Wesley imposes and collects its entire fee long before the timeshare owner receives any benefit, if he or she ever do.[3]  Wesley justifies its exorbitant up-front fee by instructing the customer to stop paying legitimate and legally enforceable contractual obligations, including annual maintenance, taxes, or mortgage payments to their timeshare companies.  Wesley knows that its instructions will cause owners to breach, without cause or justification, their valid and enforceable agreements with timeshare companies, including Diamond Resorts.

13.     Through its scheme, Wesley extracts outrageous fees from its clients that it does nothing to legitimately earn and, by precipitating a default by the clients of their obligations to Diamond Resorts, recklessly subjects those clients to the risk of adverse legal actions - such as foreclosure and other available legal remedies - and potentially ruinous credit reporting. Wesley then brazenly claims millions of dollars in victorious "mortgage debt relief" services for its customers.

14.     Defendants lure their customers by false promises in their advertising on their website (https://timesharecancellations.com/).  Wesley also floods social media: Twitter (continuously), approximately 550 Facebook ads, numerous YouTube videos, and radio and television with false advertising of its illusory service.

---

3.      There are other *legitimate* federal and state regulated businesses that help their customers reduce or eliminate debt or repair credit damaged by excess debt. Debt relief providers, credit repair businesses and the like differ from Wesley and other wholly unregulated timeshare cancellation businesses in many ways, but one particular stands out: the advance fee ban. Unlike Wesley and its ilk, debt relief providers and credit repair organizations do not get paid until the customer actually receives the promised result. *See, e.g.* the Tennessee Uniform Debt-Management Services Act, T.C.A. §§47-18-5501, *et seq.*, in particular T.C.A. § 47-18-5523.

6

15. Wesley's use of false and misleading advertising to sell its services and deceptive and unfair trade practices once it has been employed have played a material and substantial part in inducing existing Diamond Resorts members to breach existing contracts and cease doing business with Diamond Resorts.

16. Wesley's misconduct gives rise to numerous violations of law, and Diamond Resorts bring this action to enjoin Wesley's continuing violations of law that harm Diamond Resorts and their customers, and to recover the damages Diamond Resorts have sustained due to Wesley's conduct.

## JURISDICTION, PARTIES, AND VENUE

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is presented under the Lanham Act, 15 U.S.C. § 1125(a).

18. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 in that the parties are completely diverse and the amount in controversy, including the value to Diamond Resorts of the requested declaratory and injunctive relief, exceeds $75,000.00.

19. This Court has supplemental jurisdiction over Diamond Resorts' state law claim under 28 U.S.C. § 1367 because that claim derives from a common nucleus of operative facts and is so related to the claim in the action within original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

20. Plaintiff Diamond Resorts U.S. Collection Development, LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 10600 West Charleston Boulevard, Las Vegas, Nevada and is a person or entity engaged in commerce within control of Congress ("U.S. Collection" or "Developer," as the context requires). The sole member of U.S. Collection is Diamond Resorts Developer and

7

Sales Holding Company, a Delaware corporation with its principal place of business at 10600 West Charleston Boulevard, Las Vegas, Nevada. U.S. Collection is a citizen of either Delaware or Nevada.

21.     Plaintiff Diamond Resorts Hawaii Collection Development, LLC is a limited liability company under the laws of Delaware with its principal place of business at 10600 West Charleston Boulevard, Las Vegas, Nevada and is a person or entity engaged in commerce within control of Congress ("Hawaii Collection," or "DRHC," as the context requires). The sole member of Hawaii Collection is Diamond Resorts Developer and Sales Holding Company, a Delaware corporation with its principal place of business at 10600 West Charleston Boulevard, Las Vegas, Nevada. Hawaii Collection is a citizen of either Delaware or Nevada.

22.     Plaintiff Diamond Resorts Management, Inc. is a corporation organized and existing under the laws of Arizona with its principal place of business at 10600 West Charleston Boulevard, Las Vegas, Nevada and is a person or entity engaged in commerce within control of Congress ("DRMI"). DRMI is a citizen of either Arizona or Nevada.

23.     Defendant Wesley Financial Group, LLC ("Wesley"), a Tennessee limited liability company, is company with its primary place of business located in Franklin, Tennessee. Its sole member is Charles McDowell, an individual domiciled in Tennessee. Wesley is a citizen of Tennessee.

24.     Defendant Charles William "Chuck" McDowell ("McDowell") is an individual domiciled in Tennessee. McDowell is a citizen of Tennessee.

25.     This Court may exercise personal jurisdiction over Wesley and McDowell because Wesley's principal place of business is in Tennessee and McDowell, the sole member of the limited liability company, is domiciled in Tennessee.

26.     Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Diamond Resorts' claims occurred in or their adverse effects were realized in this District. Diamond Resorts own and operate timeshare properties in this District, namely the Sunrise Ridge Resort in Pigeon Forge, Tennessee, and the Bent Creek Golf Village in Gatlinburg, Tennessee. Wesley's and McDowell's conduct giving rise to the claims set forth herein was directed to, occurred in and/or caused damage to Diamond Resorts in this District.

27.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202

## GENERAL FACTUAL ALLEGATIONS

### *Diamond Resorts*

28.     Diamond Resorts International, Inc. ("DRI") is one of the largest hospitality companies in the world with more than 420 branded and affiliated resorts and over 27,000 guest beds in 35 countries and destinations throughout the continental United States and Hawaii, Canada, Mexico, the Caribbean, Europe, Asia, Australia, and Africa.

29.     DRI is the indirect parent of the Diamond Collections and DRMI. Its subsidiary, DRMI, manages timeshare resorts. The Diamond Collections' subsidiaries market and sell vacation membership points – a kind of vacation "currency" for members to redeem – that provide members and guests vacations for life at over 420 managed and affiliated properties and cruise itineraries.

30.     DRI and its subsidiaries develop, own, operate, and manage vacation membership resorts and, through resort and partner affiliations, provide members with access to more than

109 managed resorts, more than 300 affiliated resorts, and dozens of cruise itineraries through THE Club® at Diamond Resorts International.

31. Accommodation choices at selected Diamond Resorts owned and managed resorts have been allocated into groupings of resorts called Collections, which include the U.S. Collection and the Hawaii Collection.

32. For example, the Diamond Resorts U.S. Collection – offered by Plaintiff U.S. Collection - is an ultra-flexible points-based program offering a variety of destinations primarily throughout the United States.  Members can select from more than 40 different resorts in places like Gatlinburg, Lake Tahoe, Sedona, Orlando, Hilton Head, Las Vegas and other destinations. Similarly, the Diamond Resorts Hawaii Collection – sold by Plaintiff Hawaii Collection – offers resort accommodations in locations such as Hawaii, Nevada and Arizona.

33. Customers who purchase vacation membership points from the Diamond Collections generally finance those purchases over time with Diamond Resorts as both the seller and lender. Such purchase money financing arrangements allow the Diamond Resorts owner to use their timeshare points for accommodations, air travel, cruises and the like, even though they have not fully paid for them. The purchase money financing payments, due monthly, are the first thing Wesley tells the Diamond Resorts owner to stop paying so that the owner can, instead, pay Wesley's exorbitant upfront fees. As a result, the Diamond Resorts owner uses their points for vacation accommodations without fully paying for them, and then they stop, at Wesley's instance, payment, meaning Diamond Resorts never gets fully paid for that sale.

34. Purchasers of vacation membership points from the Diamond Collection automatically become members of the members' association for their respective Collection.  The members' associations review and approve the operating budget, assess and collect and spend

4573025.1

annual assessments from members/owners, and pay taxes, utility costs, and other costs incurred on behalf of member/owners. Annual maintenance fees for a given year are generally billed by or on behalf of the members' associations during the previous fall and are due by January 1st.

35.     Customers who purchase Diamond Resorts vacation membership points also become members of THE Club® at Diamond Resorts International ("THE Club"). In addition to the resorts owned and/or managed by Diamond Resorts, THE Club has affiliations with many other resorts and hotels, which expand the portfolio of destinations at which members can stay when using their Collection points. THE Club augments the array of accommodation options it provides to Collection members by allowing the redemption of points for airline tickets, rental cars and other travel related services. Pursuant to the purchase agreement and governing documents, Collection members agree to pay annual fees for membership in THE Club as an attendant benefit of their timeshare interest.

36.     Diamond Resorts' owners' compliance with their contractual obligations (including timely and complete payments) are of utmost importance to Diamond Resorts' business.

37.     In addition, as with any business, customer relations are vital to Diamond Resorts.

38.     Diamond Resorts compete directly with other timeshare developers and marketers of vacation and travel products/services, who, like Diamond Resorts, target similar customers, namely existing timeshare owners (including especially existing Diamond Resorts owners) and prospective timeshare purchasers. Wesley competes with Diamond Resorts for Diamond Resorts own customers, promising to undo Diamond Resorts' contracts with their owners.

4573025.1

*Defendants' Fraudulent Scheme*

39.    Wesley is engaged in a timeshare cancellation scheme with no legitimate legal foundation designed to induce existing Diamond Resorts' owners to breach their agreements with, and related obligations to, Diamond Resorts and instead pay large, upfront fees to Wesley.

40.    McDowell, as Wesley's self-proclaimed founder, originated and devised Wesley's fraudulent scheme and has personally implemented or directed others to implement and execute Wesley's fraudulent scheme. McDowell directs and controls Wesley's activities which are the subject of this lawsuit and/or controls others whom McDowell has directed to do so. Accordingly, as used throughout this lawsuit, all actions attributable to Wesley are also attributable to McDowell, and he is equally responsible and liable to Diamond Resorts. Wesley and McDowell may, as the context dictates, be referred to collectively as "Wesley."

41.    Wesley's scheme is implemented by luring unwitting Diamond Resorts owners to hire Wesley through false and misleading marketing, including claims made in television, radio, and internet advertisements, as well as on its website https://timesharecancellations.com/ (the "Website"). The Website advertises "guaranteed timeshare cancellation." It further states "we know how to get out of a timeshare successfully." But Wesley does not have a legally cognizable method of actually accomplishing what Wesley promises.

42.    On the "About Our Team" page, Wesley tells its prospective customers that if they are accepted as a client, they "will never be required to make another payment on [their] timeshare; [their] clients experience an immediate freedom." What Wesley does not have is any legally justified reason for telling the customers this.

12

43.     In its radio advertisements that have been broadcast in many different places and at different times throughout the country, Wesley also offers the misleading and deceptive "100% guarantee" that it will "cancel your timeshare legally."

44.     Wesley solicits customers through Facebook™ with deceptive, misleading and/or outright false statements designed to alarm timeshare owners, such as:

> Your Maintenance Fees Will Rise for Eternity
>
> According to America's Resort Development Association – timeshare maintenance fees rise by an average of 8% per year.
>
> That 'small' $500 per year payment will balloon into a much bigger $1,000 per year payment in only 8 years.
>
> And it will skyrocket to a massive $2,000 per year payment in 18.
>
> Don't forget: this is the same timeshare you are paying $500 per year for right now.
>
> You might think this won't matter because 18 years is a long time from now. But it will.

and

> Your Children WILL Receive Your Timeshare When You Pass
>
> Three words:
>
> "Contract in Perpetuity"
>
> I had to use google to learn what those three words mean.
>
> In fact – they use these words because they don't want you to know what they mean.
>
> Because if you did know – you wouldn't have signed the bottom line.
>
> "In perpetuity" simply means "forever."
>
> This means your children are stuck with your timeshare after you pass.
>
> Timeshare has infected your family tree – and will remain there forever…

13

45.     The Facebook™ advertising then goes on to offer the customer a package that includes information on "How to get rid of timeshare – legally & completely," something Wesley knows to be false as it has never had any process to "legally & completely" cancel a binding timeshare contract.

46.     Other advertisements on its Website state that Wesley "know(s) how to get out of a timeshare successfully," and that Wesley "guarantees that those people who are accepted as clients will have their timeshare terminated within the contractually agreed upon time period." Wesley's online advertising assures owners that "there are certain methods that a qualified timeshare owner can do or have done for them that can bring the timeshare companies virtually to their knees," proclaiming that "10,000 timeshare owners we have accepted over the past 8 years, our success rate has been 90%+."[4] None of this is true.

47.     Wesley offers misleading testimonials stating not only that its tactics will allow timeshare owners to legally cancel their contracts, but in many cases that Wesley has helped owners "[get their] money back" and "cancel [their] timeshare."[5]  Wesley makes these advertisements and offers these testimonials knowing that, in fact, it will simply advise its clients to breach their contracts, with no legitimate cause or legal justification, rather than offering them a legitimate exit method, or basis to obtain a refund or "cancel" their mortgage.

48.     Although neither McDowell nor the overwhelming majority of Wesley employees who provide advice about their legal rights and obligations to customers are attorneys, McDowell repeatedly and falsely makes statements that Wesley has legal expertise cancelling

---

4.      Wesleyfinancialgroup.typeform.com, Wesley Financial Group, LLC, You Can Get Rid of Your                                                                                                    Timeshare, https://wesleyfinancialgroup.typeform.com/to/EkcnAq?fbclid=IwAR3GFZZ2Rxo4WAlH3D4tS TrklTuBYOmJF6sbZOCmcBPpHt7l0o2uL9lQVjo (Accessed March 24, 2020).
5.      iSpot.tv, Martha Lill, Wesley Financial Group Actual Customer, https://www.ispot.tv/ad/IbK5/wesley-financial-group-martha-lill (Accessed March 27, 2019).

4573025.1

timeshare contracts: Wesley "know[s] all of the laws" and "you will get your money back." [6]  At the same time, Wesley actively discourages its prospective customers from seeking counsel of an attorney, knowing that Wesley could never justify the exorbitant up-front fee it charges were the customer to hire a lawyer.

49.     In fact, McDowell's mantra is that he has fought in Federal Court for the "right to help timeshare owners cancel their timeshares" and even states that he made a "MASSIVE legal investment" to "set the precedent" allowing them to do so.[7]  The lawsuit to which he repeatedly refers, however, arose out of McDowell's employment as a timeshare salesperson (and his alleged theft of corporate information) and had no bearing on whether the timeshare owners to whom he is targeting Wesley's false advertising have a legal right to cancel their contracts.

50.     When a timeshare owner reaches out to Wesley for advice, its representatives pepper the potential client with a barrage of questions under the pretext that Wesley is investigating whether the owner was lied to or mislead during the timeshare purchase process.

51.     The answers though are irrelevant. Wesley has no intention, or ability, to pursue any legal claims, legitimate or otherwise, on behalf of these owners.  Instead, Wesley hoodwinks the timeshare owner – Wesley's customer - so that it appears that Wesley is earning its exorbitant up-front fees.

52.     Wesley's actual "legal strategy" is neither "legal" nor a "strategy": it is a hoax. Wesley instructs timeshare owners, including, Diamond Resorts' owners, to breach their

---

6.      YouTube, Wesley Financial Group – Sell a Timeshare – How to Sell a Timeshare, https://www.youtube.com/watch?v=YKrXGohps-A (Accessed March 27, 2020)

7.      Wesleyfinancialgroup.typeform.com, Wesley Financial Group, LLC, You Can Get Rid of Your Timeshare – Here's what we're going to send you, https://wesleyfinancialgroup.typeform.com/to/EkcnAq?fbclid=IwAR3GFZZ2Rxo4WAlH3D4tSTrklTuBYOmJF6sbZOCmcBPpHt7l0o2uL9lQVjo (Accessed March 24, 2020).

4573025.1

agreements with Diamond Resorts by ***stopping*** payments to the company, hoping that it will result in foreclosure or forfeiture of the timeshare interest, a result with which Wesley has absolutely nothing to do. And what Wesley conceals from its customers – Diamond Resorts owners – is far more important: the resulting negative impact on the timeshare owner's credit rating and that Diamond Resorts, like any other creditor, could, and does, sue to collect the legitimate debts owed to it.

53.    The ruse continues when Wesley conceals its involvement by way of threat to the timeshare owner – if the timeshare owner reveals its relationship with Wesley, Wesley will terminate the exit contract and will keep the advance fees already paid but never earned:

> **THE TERMS, CONDITIONS AND EXISTENCE OF THIS SERVICE AGREEMENT ARE CONFIDENTIAL AND YOU AGREE NOT TO DISCLOSE TO ANY PERSON OR ENTITY (INCLUDING BUT NOT LIMITED TO ANY PERSONS WORKING FOR OR AFFILIATED WITH OR FOR THE TIMESHARE ENTITY) THAT) YOU HAVE ENTERED INTO THIS SERVICE AGREEMENT OR ANY OF THE TERMS THEREOF. ANY BREACH OF THIS PARAGRAPH 7.c. OR ANY BREACH OF PARAGRAPH 1.b. OF THIS SERVICE AGREEMENT OR ANY DISCLOSURE BY YOU TO ANY PERSON OR ENTITY THAT WFG OFFERS A 100% MONEY BACK GUARANTEE IN THE EVENT YOUR PURCHASE AGREEMENT IS NOT TERMINATED WILL GIVE WFG THE RIGHT TO IMMEDIATELY TERMINATE THIS SERVICE AGREEMENT BY WRITTEN NOTICE TO YOU AND WFG WILL NOT BE REQUIRED TO REFUND ANY PORTION OF THE FEE TO YOU DUE TO THE BREACH OF THIS PARAGRAPH 7.c. OR THE BREACH OF PARAGRAPH 1.b.**

54.    Wesley instructs the timeshare owner to communicate directly with the timeshare company with cookie-cutter forms of emails given to the timeshare owner by Wesley with the repeated admonition to keep Wesley's involvement secret.  For instance:

> On Fri, Oct 19, 2018, 3:12 PM Raven Ford <raven.ford@wesleyfinancialgroup.com> wrote:
>
> Good afternoon,
>
> Please copy & paste the following email into a new email. Do not cc me or include any identifying text. Use the subject: SECOND TRY
> Send the email to developer███████████
> ─────────────────────────────────────
> ███████████
> **Owner no.** ██████████
>
> **To whom it may concern,**
>         **We are quite displeased with the experience we have had as owners of a ██████**
> **timeshare.**
>         **There is nothing about this property that is investment-like.**

16

55.     Wesley does, from time to time, emerge from its veil of secrecy, but in an even more nefarious way. Wesley employees blatantly lie to the timeshare developer: the Wesley employee calls the timeshare developer, impersonating the owner, spoofing the owner's caller IDs and using phone apps to disguise their voices.

56.     Wesley's veil of secrecy is a uniform, and essential, business practice, employed not only against Diamond Resorts, as described here, but also against most every other timeshare developer. Wesley must secrete itself because it knows that Diamond Resorts will not knowingly engage with an unregulated, advance fee business, the only function of which is to perpetrate tortious interference, that defrauds its own customers, making hollow promises and guarantees it has no way to keep, and makes its customers lie. For the unfortunate timeshare owner who contracts with Wesley, Wesley *can and does* deliver on what it *does not* promise: default, foreclosure or forfeiture and resulting credit score impact.

57.     Wesley's scheme starts with false and deceptive advertising followed by unfair and deceptive conduct: false promises of relief, deceptive communications with Diamond Resorts forcing Diamond's owners to lie to Diamond about Wesley's involvement and false assurances to Diamond Resorts' owners that they no longer owe any obligations to Diamond Resorts.

***Defendant's Actions Have Damaged Diamond Resorts***

58.     Lured by Wesley's false advertising and hollow promises, Diamond Resorts' owners have contracted with Wesley and, at Wesley's instruction, stopped making payments on their Diamond Resorts promissory notes and mortgages, and/or stop paying maintenance and other fees the owners contracted to pay. Wesley has engaged in false advertising in violation of the Lanham Act.  Wesley's actions have directly and proximately damaged Diamond Resorts in

the form of the Diamond Owners' unpaid financial obligations, for Wesley's own pecuniary benefit.

59.     All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

60.     Diamond Resorts have retained the law firms of Greenspoon Marder LLP and Woolf, McClane, Bright, Allen & Carpenter, PLLC to represent them in this action and are obligated to pay reasonable attorneys' fees and costs incurred herein.

<u>**COUNT I**</u>
**FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)**

61.     Diamond Resorts reallege and reincorporate the allegations contained in paragraphs 1 through 60 above as if more fully set forth herein.

62.     This is a cause of action for unfair competition through false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and is within this Court's jurisdiction.

63.     Section 43(a) of the Lanham Act provides a cause of action for unfair competition through false advertising.

64.     Diamond Resorts are engaged in commerce within the control of Congress because they have cognizable commercial interests in their reputation, and fall within the zone of interest protected by 15 U.S.C. § 1125(a).

65.     Wesley's "timeshare cancellation" services are offered in and its related false and misleading advertisements travel in interstate commerce.

66.     Wesley willfully and deliberately makes false or misleading advertisements on its website, by television and radio, social media, and through other means, and falsely guarantees that it will legally relieve Diamond Resorts' owners of their timeshare obligations if Wesley is retained.

18

67. Wesley does not offer its "service" to customers in any market other than timeshare. So Wesley has purposefully inserted itself into the same marketplace in which Diamond Resorts operate—the timeshare industry consisting of existing timeshare owners. Wesley's false advertising is directed to Diamond Resorts' existing owner base, the same market to which Diamond Resorts provide their products and services and to which they market.

68. Wesley advertises to Diamond Resorts' existing owner base in order to persuade them to do business with Wesley instead of with Diamond Resorts, and to divert monies due and owing to Diamond Resorts instead to Wesley.

69. Accordingly, Wesley is in direct competition with Diamond Resorts for Diamond Resorts' owners.

70. Wesley made material false or misleading statements in interstate commerce in connection with commercial advertising or solicitation as described above and by, *inter alia*:

   a) producing false and misleading advertising and soliciting Diamond Resorts' owners through such advertising and other means which deceives Diamond Resorts' owners into believing that they may cancel their timeshare interest without any legal basis or reason;

   b) dishonestly inducing Diamond Resorts' owners into retaining Wesley based on Wesley's advertised "100% guarantee" of "cancelling" timeshares, while actively discouraging the prospective customer from consulting or hiring a lawyer, when Wesley – not a law firm and not utilizing lawyers - cannot actually fulfill the guarantee because it has no legal means of doing so or cannot fulfill the guarantee using legitimate legal methods and/or without detriment to the Diamond Resorts owner;

19

c)  misrepresenting that Wesley – which is neither a law firm nor utilizes lawyers - has legal and other relevant skills and experience to have Diamond Resorts' owners' contracts cancelled when it has no such skills and experience;

d)  misrepresenting that Wesley will perform a service, when it has no intention of doing so, and may instead attempt to procure a cancellation through inaction and/or foreclosure; and

e)  misrepresenting that Wesley will procure a cancellation legally and/or legitimately.

Wesley has not stopped its false advertising, which continues to evolve. So, this enumeration is not intended to be exhaustive; other false and misleading statements are detailed in the Introduction and General Factual Allegations of this Complaint. Additional false advertising is expected to be identified by continuing investigation and through discovery, which Diamond Resorts will then include in this claim and for which Diamond Resorts will seek relief.

71.    Wesley's statements guaranteeing that they will relieve timeshare owners, including Diamond Resorts' owners, of their timeshare obligations if they are retained are false or misleading or made in bad faith. Wesley has no basis or legitimate method to exit or cancel a timeshare contract and its guarantee to do so is false.

72.    Wesley deceived, or had the capacity to deceive, consumers, thereby having a material effect on consumer decisions to retain and pay for Diamond Resorts' timeshare interests and resulting in damages to Diamond Resorts in the form of cessation of payments and defaults in the financial obligations due to Diamond Resorts.

4573025.1

73. Wesley's deception is material and likely to influence and, in fact, did influence the decisions of Diamond Resorts' owners who stopped making payments to Diamond Resorts based on Wesley's false and misleading advertising.

74. At all times relevant herein, McDowell managed and controlled Wesley's operations, and therefore directed Wesley's marketing and advertising decisions and is personally responsible and liable for them.

75. As outlined above, Diamond Resorts suffered an injury to commercial interests, have lost sales in the form of cessation of payments on sales already made and defaults in the attendant owner financial obligations, and have suffered harm in fact to their business reputation (for which Diamond Resorts **does not** separately seek monetary damages) as a result of Wesley's false and misleading advertising.

76. Wesley's actions have been willful and make this case exceptional under 15 U.S.C. § 1117(a).

77. By this action, Diamond Resorts seek the following specific relief:

a) Enjoining Wesley, McDowell and Wesley's other officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them from:

i. Engaging in false and misleading advertising;

ii. Engaging in deceptive or unfair trade practices;

iii. Advertising that Wesley can cancel timeshare interests without any legal basis or reason;

iv. Guaranteeing timeshare cancellation or exit;

21

    v.   Stating or suggesting that timeshare owners may discontinue payment of obligations associated with timeshare ownership;

    vi.   Misrepresenting that Wesley has skills and experience to have timeshare contracts cancelled;

    vii.   Misrepresenting that Wesley has a method or process that guarantees timeshare cancellation or exit; and

    viii.   Misrepresenting that Wesley will procure a timeshare contract cancellation legally and/or legitimately.

This enumeration is not exhaustive, incorporates what has been alleged in the Introduction and General Factual Allegations of this Complaint, and will be supplemented in response to Wesley's evolving false advertising and by what is revealed in discovery.

b) Requiring Wesley to cease broadcasting, take down, and destroy all such false, misleading, and deceptive materials;

c) Directing Wesley to file with this Court and serve on Diamond Resorts within fifteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which Wesley has complied with the injunction;

d) Requiring Wesley to provide notice of such injunction by posting the Order on the websites used by Wesley and any websites which refer to and/or link to the websites used by Wesley;

22

e) A Judgment in favor of Diamond Resorts and against Wesley and McDowell for statutorily allowed monetary damages attributable to the stopped payments and defaulted financial obligations;

f) A Judgment in favor of Diamond Resorts and against Wesley and McDowell for treble damages (*see* 15 U.S.C.A. § 1117(a));

g) A Judgment in favor of Diamond Resorts and against Wesley for the recovery of Wesley's profits (*see* 15 U.S.C.A. § 1117(a)); and

h) A Judgment in favor of Diamond Resorts and against Wesley for costs of suit, expenses, and attorneys' fee incurred in this action.

**WHEREFORE**, Diamond Resorts respectfully demand judgment in their favor and against Wesley and McDowell and request permanent injunctive relief, damages, attorneys' fees and costs, and such additional and further relief as this Court deems just and proper.

## COUNT II
### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN. §§ 47-18-101, *et seq*.

78. Diamond Resorts reallege and reincorporate the allegations contained in paragraphs 1 through 60 and paragraph 70 and subparts above as if more fully set forth herein.

79. This is a cause of action for violations of the Tennessee Consumer Protection Act, T.C.A. §§ 47-18-101, *et seq.* ("TCPA"), against Wesley and McDowell, including false advertising and unfair and deceptive acts and practices in the conduct of trade or commerce.

80. Diamond Resorts are "person[s]" engaged in "trade" or "commerce" as defined by T.C.A. §§ 47-18-103(14) and (20).

81. Diamond Resorts have suffered an ascertainable loss as a result of the use or employment by Wesley of unfair or deceptive acts or practices described in § 47-18-104(b).

23

82.     Wesley has engaged in unfair or deceptive acts or practices in the form of both false advertising and conduct in the pursuance of its business that is both unfair and deceptive. McDowell devised, managed and controlled Wesley's operations, and therefore directed Wesley's marketing and advertising decisions and the way Wesley conducts its business.

83.     Wesley's false advertising and its unfair and deceptive conduct is directed to Diamond Resorts' existing customers.

84.     Wesley advertises to Diamond Resorts' existing customers in order to persuade them to engage Wesley, to dishonor their existing contracts with Diamond Resorts, and to divert monies from Diamond Resorts to Wesley.  By doing so, Wesley promises that its customers will resolve their debts owed to Diamond Resorts "on terms more favorable . . . than the terms of the contract" between the owner and Diamond Resorts. T.C.A. § 47-18-5502(8). As a result, Wesley offers "debt-management services" (T.C.A. § 47-18-5502(10)) without registering or otherwise complying with the Tennessee Uniform Debt-Management Services Act, T.C.A. §§ 47-18-5501, *et seq.*

85.     Wesley has engaged the unfair and deceptive acts or practices described in the Introduction and General Factual Allegations of this Complaint and as set forth in the following enumeration:

    a)   engaging in false and misleading advertisements, including but not limited to suggesting that it has expertise regarding legal or otherwise legitimate methods of canceling or terminating timeshare contracts, including mortgages and other related contracts when it does not;

24

b) falsely assuring prospective customers that Wesley has legal and other relevant experience while, at the same time, actively discouraging prospective customers from consulting with or hiring a lawyer;

c) instructing or suggesting that owners not pay Diamond Resorts, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with its timeshare;

d) stating or implying to Diamond Resorts' owners there is no penalty or other legal consequence for not paying Diamond Resorts, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with its timeshare;

e) having concealed that it has no legitimate methods to fulfill the promises it has made, intentionally taking no action on behalf of Diamond Resorts' owners after entering into a contract with them, or otherwise attempting to procure an exit through inaction and/or foreclosure after Diamond Resorts owners stop paying Diamond Resorts;

f) exposing its customers to adverse credit reporting and potential adverse tax consequences;

g) entering into secrecy agreements with Diamond Resorts' owners, or otherwise deliberately obscuring their role in advising Diamond Resorts' owners to stop paying or otherwise breach their timeshare or related contracts;

h) ghostwriting unsupported and often fallacious claims to be sent by the Wesley customer to Diamond Resorts, while insisting, under extreme penalty, that the customer lie about Wesley's involvement:

i)  contractually obligating, under threat of forfeiture of exorbitant pre-paid fees, customers to lie to Diamond about their engagement of Wesley;

j)  impersonating Diamond Resorts' owners, spoofing their caller IDs;

k)  providing "debt-management services" while failing to comply with and violating the Tennessee Uniform Debt-Management Services Act, T.C.A. §§47-18-5501, *et seq.*; and

l)  otherwise engaging in knowingly unlawful, fraudulent, false, unfair and deceptive practices.

These acts constitute a violation of T.C.A. § 47-18-104(b)(5), (7), (8), (9), (12), (14), (15), (19), (21), and (22). Wesley has not stopped its false advertising, which continues to evolve, nor its unfair and deceptive conduct. So, this enumeration is not intended to be exhaustive; other false and misleading statements and unfair and deceptive conduct are detailed in the Introduction and General Factual Allegations of this Complaint. Additional false advertising and unfair and deceptive conduct is expected to be identified by continuing investigation and through discovery, which Diamond Resorts will then include in this claim and for which Diamond Resorts will seek relief.

86.    Wesley knew or should have known that the above conduct was unconscionable, unfair, false, and deceptive.

87.    Wesley intended that its words and conduct would induce another to rely and act on them, specifically, consumers such as Diamond Resorts' owners.

88.    Wesley's conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers and businesses alike.

89.    Wesley's conduct constitutes unfair and deceptive acts and practices affecting the conduct of trade and commerce, all in violation of TCPA.

90.     As a direct and proximate result of Wesley's, unfair, false, and deceptive conduct outlined above, Diamond Resorts' owners have been harmed and Diamond Resorts have been damaged in the form of stopped payments and defaulted financial obligations.

91.     Wesley's wrongful conduct induced Diamond Resorts' owners to stop making payments to Diamond Resorts even though they are required to do so by legally enforceable contracts.  Diamond Resorts have been damaged in the amounts due and owing to them by virtue of the Diamond Resorts' owners stopped payments of purchase money, maintenance, and/or tax payments at the instruction of Wesley.

92.     Diamond Resorts have a clear legal right or interest in being free from Wesley's false advertising and unfair and deceptive conduct above that has harmed Diamond Resorts, and will result in future harm to Diamond Resorts if Wesley is not enjoined.

93.     Wesley is continuing to engage in the false advertising and unfair and deceptive conduct described above, and there is therefore a strong likelihood that Diamond Resorts will suffer irreparable harm on an ongoing basis, and any remedy at law to stop Wesley's perpetuation of the unconscionable, false, deceptive, and unfair conduct is inadequate.

94.     An injunction serves the public purpose.

95.     By this action, Diamond Resorts seek the following relief:

   a) Enjoining Wesley from engaging in false and misleading advertisements, including but not limited to suggesting that it has expertise regarding legal or otherwise legitimate methods of canceling or terminating timeshare contracts, including mortgages and other related contracts;

27

b) Enjoining Wesley from instructing or suggesting that Diamond Resorts' owners not pay Diamond Resorts, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with its timeshare;

c) Enjoining Wesley from stating or implying to Diamond Resorts' owners there is no penalty or legal consequence for not paying Diamond Resorts, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with its timeshare;

d) Enjoining Wesley from instructing Diamond Resorts' owners not to use Diamond Resorts' timeshare properties;

e) Enjoining Wesley from entering into secrecy agreements with Diamond Resorts' owners, or otherwise deliberately obscuring their role in advising Diamond Resorts' owners regarding attempts to limit or reduce their timeshare ownership;

f) Enjoining Wesley from instructing Diamond Resorts' owners not to communicate with Diamond Resorts;

g) Enjoining Wesley from impersonating Diamond Resorts' owners;

h) Enjoining Wesley from intentionally taking no action on behalf of Diamond Resorts' owner after entering into a contract with Diamond Resorts' owners, or otherwise attempting to procure an exit through inaction and/or foreclosure after Diamond Resorts' owners stop paying Diamond Resorts, the owner's mortgagee, or other companies to whom the owner owes obligations in connection with its timeshare;

i) Enjoining Wesley from engaging in acts or conduct covered by the Tennessee Uniform Debt-Management Services Act, T.C.A. §§47-18-5501, *et seq.*;

28

j)  Enjoining Wesley from engaging in knowingly unlawful, fraudulent, false, and deceptive practices;

k)  A Judgment in favor of Diamond Resorts and against Wesley and McDowell for actual damages (*see* T.C.A. § 47-18-109(a)(1));

l)  A Judgment in favor of Diamond Resorts and against Wesley and McDowell for treble its actual damages (*see* T.C.A. § 47-18-109(a)(3)); and

m) A Judgment in favor of Diamond Resorts and against Wesley and McDowell for costs of suit, expenses, and attorneys' fee incurred in this action (*see* T.C.A. § 47-18-109(e)(1)).

**WHEREFORE**, Diamond Resorts respectfully demand judgment in their favor and against Wesley and McDowell, and request permanent injunctive relief, damages, attorneys' fees and costs, and such additional and further relief as this Court deems just and proper.

Respectfully submitted this 8th day of June, 2020.

WOOLF, McCLANE, BRIGHT,
ALLEN & CARPENTER, PLLC

By: s/Robert L. Vance_____
    Robert L. Vance (BPR #021733)
    Gregory C. Logue (BPR #012157)
Post Office Box 900
Knoxville, Tennessee  37901-0900
(865) 215-1000
bvance@wmbac.com
glogue@wmbac.com
*Attorneys for Plaintiffs*

29