UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DIAMOND RESORTS U.S. COLLECTION | ) | |
| DEVELOPMENT, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-251-DCLC-DCP |
| | ) | |
| WESLEY FINANCIAL GROUP, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Strike Certain Affirmative Defenses [Doc. 40], filed on December 22, 2020. Defendants subsequently filed a Response [Doc. 44] in opposition, to which Plaintiffs filed a Reply [Doc. 45]. The matter is now ripe for adjudication. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 40**] be **GRANTED IN PART and DENIED IN PART**.

## I.     BACKGROUND

The Court has previously set forth in detail Plaintiffs' claims and the facts alleged in the Complaint in its order denying Defendants' motion to dismiss on November 9, 2020. [Doc. 34]. For background, Plaintiff Diamond Resorts Management, Inc. manages timeshare resorts and Plaintiffs Diamond Resorts U.S. Collection Development, LLC and Diamond Resorts Hawaii Collection Development, LLC "market and sell vacation membership points." [Doc. 1 at ¶ 29]. Defendant Wesley Financial Group, LLC is a timeshare cancellation company and Defendant

Charles William McDowell, III is the founder and CEO of the company.[1]

Plaintiffs argue that Defendants' actions of directing Diamond's owners to stop making payments on their promissory notes, mortgages, and fees that they contracted to pay "have directly and proximately damaged Diamond Resorts in the form of the Diamond Owners' unpaid financial obligations, for Wesley's own pecuniary benefit." [*Id.* at ¶ 58]. Plaintiffs filed their complaint on June 8, 2020, asserting claims against Defendants for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), and violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101, et seq. [*Id.*].

Plaintiffs' Motion to Strike [Doc. 40], filed pursuant to Federal Rule of Civil Procedure 12(f), seeks to strike several of Defendants' affirmative defenses—namely, Affirmative Defenses 1–5, 9, and 11–16. The Court will address the parties' respective arguments regarding each challenged affirmative defense.

## II.    ANALYSIS

The Court has considered the parties' filings, and for the reasons explained below, the Court **RECOMMENDS** Plaintiff's Motion [**Doc. 40**] be **GRANTED IN PART and DENIED IN PART**.

Plaintiff has objected to the following affirmative defenses:

> First Defense: Plaintiffs engage in a systematic course of inequitable, unfair, dishonest, fraudulent or deceitful conduct in marketing, selling, financing, and managing timeshares. As a routine business practice, Diamond Resorts and its affiliates sell timeshare interests in a high-pressure environment laden with misrepresentation and deception.
>
> Wesley's timeshare cancellation services are focused on assisting timeshare owners who have been the victims of deceptive

---

[1] In the Report and Recommendation, the Court may collectively refer to Plaintiffs as "Diamond" and Defendants as "Wesley."

2

or improper conduct in exiting their timeshare interest. Plaintiffs' inequitable, unfair, dishonest, fraudulent, and deceitful conduct has harmed the consumers to whom Wesley offers and provides its services, and injunctive relief would allow Plaintiffs to continue engaging in misconduct in marketing, selling, financing, and managing timeshares. Put another way, Wesley only offers its services to, and is only able to obtain relief for, customers to whom Plaintiffs have lied and whom Plaintiffs have defrauded. As a result, Plaintiffs' claims for injunctive relief based on purported violations of the Lanham Act and the Tennessee Consumer Protection Act are barred in whole or in part by the doctrine of unclean hands.

Second Defense: Defendants reallege and incorporates by reference the allegations contained in their First Defense as if set forth herein. Any injury alleged by Plaintiffs as a result of Wesley's timeshare cancellation services has been caused in at least substantially equal part by the misconduct of Plaintiffs and their agents in marketing, selling, financing, and managing timeshares. As a result, Plaintiffs' claims for injunctive relief based on purported violations of the Lanham Act and the Tennessee Consumer Protection Act are barred in whole or in part by the doctrine of in pari delicto

Third Defense: Wesley engages in a timeshare cancellation service business and Wesley has a privilege to engage in the business practices and methods employed by it to assist its customers in severing their timeshare relationships in order to promote its financial and economic interests. Wesley does not use improper means in conducting its timeshare cancellation services. As a result, Plaintiffs' claims for injunctive relief based on purported violations of the Lanham Act and the Tennessee Consumer Protection Act are barred in whole or in part by Defendant's privilege to protect its economic interest.

Fourth Defense: Plaintiffs allege that their claims concern a matter involving competition between Plaintiffs and Wesley. Without employing wrongful means or creating or continuing an unlawful restraint of trade, Wesley assists timeshare owners in cancelling their timeshares with Plaintiffs for the purposes of advancing its business interests. As a result, Plaintiffs' claims for injunctive relief based on purported violations of the Lanham Act and the Tennessee Consumer Protection Act are barred in whole or in part by the privilege to compete.

Fifth Defense: Any loss or damage allegedly suffered by Plaintiffs, including to their reputation or goodwill, was caused or contributed to by individuals or entities over whom Defendants have no control.

3

There are a number of individuals and entities throughout the United States and beyond its borders who are extraordinarily critical of the timeshare industry, including with respect to sales and marketing practices, financial pressures exerted on timeshare members and their lineal descendants, and the discordance between timeshare products that are marketed and promoted versus the products that are received and are actually usable by the consumer. Damage to Plaintiffs' reputation and loss of goodwill is attributed, in whole or in part, to these other individuals or entities. As a result, in the event of an adverse finding on any Count in the Complaint, Defendants are not liable or, alternatively, are only liable for their pro rata share.

Ninth Defense: The Complaint is barred, in whole or in part, by Plaintiffs' failure to mitigate their damages.

Eleventh Defense: Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

Twelfth Defense: Plaintiffs' claims are barred by the First Amendment to the United States Constitution.

Thirteenth Defense: Plaintiffs do not have standing to assert the claims alleged in the Complaint.

Fourteenth Defense: Plaintiffs' claims are barred because Defendants' alleged statements were truthful, were not misleading or deceptive in any way, and constitute non-actionable opinion and puffery.

Fifteenth Defense: Plaintiffs' claims are barred because Plaintiffs have adequate remedies at law, have no substantial likelihood of success on the merits, will not suffer irreparable injury, and because the requested relief will not serve the public interest.

Sixteenth Defense: Plaintiffs' claims are barred because Plaintiffs have suffered no harm from the conduct alleged and, to the contrary, have likely received a financial benefit from the cancellation of the timeshare contracts at issue, which (upon information and belief) are subsequently resold for a profit.

[Doc. 35 at 11–14].

A.      Standard

Rule 12(f)(2) provides that the "court may strike from a pleading an insufficient defense or

any redundant, immaterial impertinent, or scandalous matter" and that the court may act "on motion made by a party . . . within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Motions to strike are viewed with disfavor and are not frequently granted. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). "Striking a pleading is considered 'a drastic remedy to be resorted to only when required for the purposes of justice' and it 'should be sparingly used by the courts.'" *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 966 (E.D. Tenn. 2009) (quoting *Brown & Williamson Tobacco Corp*, 201 F.2d at 822). Motions to strike generally "will be denied unless the allegations have 'no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Mayes v. Envtl. Prot. Agency,* No. 3:05–CV–478, 2006 WL 2709237, at *4 (E.D. Tenn. Sept. 20, 2006) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2004)), *cited in Almanza v. Baird Tree Serv. Co.*, No. 3:10-CV-311, 2012 WL 4758276, at *3 (E.D. Tenn. Oct. 5, 2012).

In determining the sufficiency of an affirmative defense, some courts apply what is known as the "*Twombly/Iqbal*" standards, requiring the application of a heightened plausibility pleading standard.[2] In other words, the courts applying the "*Twombly/Iqbal*" standards require an affirmative defense to provide enough notice to the opposing party that there is some plausible, factual basis for the asserted defense and not simply a suggestion of possibility that some defense may apply to the case. *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691 (N.D. Ohio April 28, 2010) (citing *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 650 (D.Kan. 2009)). As many courts have noted, however, there is a split amongst the districts courts as to whether the

---

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

standard set forth in *Twombly* and *Iqbal* is applicable to affirmative defenses. *Compare Ruff v. Credit Adjustment, Inc.*, No. 2:18-CV-351, 2018 WL 4019464, at *2 (S.D. Ohio Aug. 23, 2018) (declining to extend the *Twombly*/*Iqbal* pleading requirements to affirmative defenses), *with Doe by & through Doe v. Bd. of Educ. of Highland Local Sch. Dist.*, No. 2:16-CV-524, 2017 WL 3588727, at *3 (S.D. Ohio Aug. 21, 2017) ("These affirmative defenses contain no facts whatsoever, and therefore do not meet the plausibility standards laid out in *Twombly* and *Iqbal*.").

The Sixth Circuit has not weighed on this issue, but the Eastern District of Tennessee has held, "because the Supreme Court and the Court of Appeals for the Sixth Circuit have not expressly held that the heightened pleading standard applies to defenses, this Court declines to adopt such a standard." *Sewell v. Allied Interstate, Inc.*, No. 3:10-CV-113, 2011 WL 32209, at *6 (E.D. Tenn. Jan. 5, 2011). In this regard, the Court adopts the reasoning from several recent opinions within this District to again decline to apply the heightened plausibility pleading standard in *Twombly* and *Iqbal* to affirmative defenses. *See, e.g.*, *Doe No. 1 by & through Doe No. 2 v. Bojangles' Restaurants, Inc.*, No. 4:19-CV-26-TAV-SKL, 2019 WL 2251546, at *3 (E.D. Tenn. May 9, 2019) ("Given this Court's consistent, well-reasoned opinions on the issue and the Sixth Circuit's holding in *Montgomery*, the recent out-of-circuit authority cited by Plaintiff, *see GEOMC Co.*, 918 F.3d at 98, although also well-reasoned, does not persuade me this Court would now apply the *Twombly*/*Ashcroft* plausibility standard to affirmative defenses in the absence of binding authority requiring the application of that standard."), *report and recommendation adopted sub nom.*, *Doe No. 1 v. Bojangles' Restaurants, Inc.*, 2019 WL 2250270 (E.D. Tenn. May 24, 2019); *Beyer v. Faris Properties, LLC*, No. 3:18-cv-139-JRG-DCP, 2018 WL 7824534, at *2–3 (E.D. Tenn. Oct. 22, 2018) (declining to adopt a heightened pleading standard for affirmative defenses and finding that "the challenged affirmative defenses gave Plaintiff fair notice of the nature of the

offense"), *report and recommendation adopted by*, 2019 WL 1331737 (E.D. Tenn. Mar. 25, 2019).

Further, Federal Rule of Civil Procedure 8(c)(1) merely provides that in "responding to a pleading a party must affirmatively state any avoidance or affirmative defense." *See Ruff v. Credit Adjustment, Inc.*, No. 2:18-CV-351, 2018 WL 4019464, at *2 (S.D. Ohio Aug. 23, 2018) ("Declining to apply the *Twombly*/*Iqbal* standard to defenses is consistent with Rule 8."). At this time, "an affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff *fair notice of the nature of the offense*." *Sewell,* 2011 WL 32209*,* at *7 (quoting *Lawrence v. Chabot,* 182 F. App'x 442, 456 (6th Cir. 2006)) (other quotations omitted) (emphasis in *Sewell*).

### B.     Affirmative Defense Nos. 1 and 2

Plaintiffs seek to strike Defendants' unclean hands and *in pari delicto* defenses, which they characterize as follows: "Defendants assert that Diamond's dealings with its own customers—and Diamond's alleged deceptive or improper conduct with respect to the marketing, sale, financing, and management of timeshares—form the basis of Defendants' unclean hands and *in pari delicto* defenses." [Doc. 41 at 6]. Plaintiffs maintain that these affirmative defenses apply only to claims for equitable relief, as well as that these asserted defenses do not apply to Plaintiffs' claims for equitable relief under the TCPA and Lanham Act.

Here, Plaintiffs assert that Defendants' allegations are not relevant to any issue in this case. With respect to the unclean hands defense, Plaintiffs claim that they have not interacted with Defendants, as Defendants were not involved in the agreements between Plaintiffs and their customers. With respect to the *in pari delicto* defense, Plaintiffs assert that this defense is not proper as "Diamond and Defendants have not engaged with each other, or jointly participated in any act or scheme," as "Defendants' unlawful acts at issue in this case—its false advertising and

violations of TCPA—were not carried out with Diamond and Diamond was not involved." [*Id.* at 8]. In support, Plaintiffs note several unreported district court cases nationwide "involving suits by other timeshare developers against other timeshare exit companies" that have "stricken unclean hands defenses and made clear that such assertions are inappropriate and prejudicial." [*Id.* at 9].

Defendants respond that although Plaintiffs suffer no prejudice from their *in pari delicto* defense, Defendants "agree to withdraw this defense without prejudice since it is sufficiently covered and somewhat redundant to Defendants' first defense." [Doc. 44 at 11]. Regarding their unclean hands defense, Defendants assert that "Plaintiffs' unclean hands in their own advertising and dealings with their customers is a legitimate affirmative defense in this case." [*Id.* at 9]. Defendants first note that this affirmative defense is explicitly limited to Plaintiffs' claims for injunctive relief. Next, Defendants allege that Plaintiffs' "own misconduct towards timeshare owners," through their alleged false advertising, "will be an integral part of this case no matter the result" of the instant motion. [*Id.*].

Both parties admit that the doctrine of unclean hands "is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (internal citation omitted). Similarly, Defendants acknowledge that Tennessee law requires the same "harm to defendant" limitation set forth in the Florida district court cases. [Doc. 44 at 10].

However, Defendants maintain that Plaintiffs' claims extend beyond state law, and "[t]he doctrine of unclean hands is a recognized defense to Lanham Act claims." [*Id.*]; *see POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085 (C.D. Cal. 2016). Here, Defendants cite the traditional rule in Lanham Act cases finding a required nexus between the alleged misconduct

8

and the conduct at issue when the plaintiff has engaged in the same type of false advertising, but note that Plaintiffs have relied on the "expanded 'zone of interest' standing recently recognized by the Supreme Court in *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118 (2014)." [Doc. 44 at 10–11]. Therefore, Defendants claim that "there is a clear and necessary nexus between Plaintiffs' fraudulent inducement of timeshare contracts and the advertisements regarding Wesley's services; without Plaintiffs' fraud, Wesley would have no services to offer." [*Id.*]. Lastly, Defendants assert that these issues will be a focus of discovery regardless of the presence of this affirmative defense, and therefore Plaintiffs will not be prejudiced at this time.

Plaintiffs reply that Defendants' "only tenuous authority is from district courts in California and New York, applying different standards and on entirely distinguishable facts." [Doc. 45 at 2]. Plaintiffs assert that their alleged wrongful conduct is not "sufficiently similar" to their claims against Defendants, as "Defendants do not allege that Plaintiffs engaged in false advertising relating to timeshare exit or cancellation services that have harmed Defendants in the timeshare exit or cancellation industry." [*Id.* at 3]. Plaintiffs continue to maintain that Defendants had no relationship to Plaintiffs' customers at the time of the alleged wrongdoing at the heart of Defendants' unclean hands defense. Plaintiffs claim that Defendants were not harmed by the supposedly wrongful conduct, as well as raise the issue that despite Defendants lacking standing to "seek damages for any harm supposedly suffered by Plaintiffs' customers because of Plaintiffs' sales practices," they will attempt to "seek discovery relating to Plaintiffs' sales to its customers." [*Id.* at 4]. Accordingly, Plaintiffs assert that Defendants' unclean hands affirmative defense cannot succeed, is extremely prejudicial, and "the evidence to be supposedly adduced is not relevant." [*Id.* at 5].

First, the Court notes that the parties agree that the unclean hands defense is explicitly limited to Plaintiffs' claims for injunctive relief. With respect to Plaintiffs' claims under the TCPA, the defense of unclean hands "must be confined to the particular matter in litigation and the conduct complained of must have injured the party making the complaint." *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *7 (Tenn. Ct. App. May 13, 2003); *see, e.g.*, *Fuller v. Cmty. Nat'l Bank*, No. E2018-02023-COA-R3-CV, 2020 WL 1485696, at *4–5 (Tenn. Ct. App. Mar. 27, 2020). "Defendants acknowledge that Tennessee law applies the same 'harm to defendant' limitation invoked in the Orders cited by Plaintiffs." [Doc. 44 at 10].

"The doctrine of unclean hands may be asserted as an affirmative defense to equitable claims in an action under the Lanham Act." *Derminer v. Kramer*, No. 04-CV-74942-DT, 2005 WL 8154857, at *10 (E.D. Mich. July 14, 2005); *see, e.g.*, *N. Am. Rescue, Inc. v. Bound Tree Med., LLC*, No. 2:09-CV-255, 2010 WL 1258113, at *4 (S.D. Ohio Mar. 25, 2010). Regarding Plaintiffs' Lanham Act claims, both parties also agree that the present case does not present typical false advertising Lanham Act claims, which are usually seen between direct competitors. Rather, Plaintiffs bring suit under the expanded "zone of interest" standing recognized by the Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Id.* at 129 (quoting 15 U.S.C. § 1125(a)(1)). In *Lexmark*, the Supreme Court determined that a statutory cause of action under the Lanham Act extends to plaintiffs "whose interests 'fall within the zone of interests protected by the law invoked,'" *id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and "whose injuries are proximately caused by violations of the statute," *id.* at 132. *See, e.g.*, *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1105 (S.D. Cal. 2018) (general discussion of the

Lanham Act and *Lexmark*).

However, regardless of the zone of interest set forth in *Lexmark*, the defense of unclean hands applies to a Lanham Act claim and is established by a showing that "the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claim." *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 665–66 (W.D. Wash. 2009). "The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction upon which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." *Kaiser Trading Co. v. Associated Metals and Minerals Corp.,* 321 F. Supp. 923, 936 (N.D. Cal. 1970), *cited in Campagnolo*, 258 F.R.D. at 666.[3]

"The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1383 (6th Cir. 1995) (citation omitted). "There must be a nexus between the alleged misconduct and the conduct that is at issue in the case." *Coca-Cola Co. v. O-company N.V.*, No. 3-08-0745, 2009 WL 10728548, at *3 (M.D. Tenn. May 11, 2009). Further, "[t]he doctrine of unclean hands requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a

---

[3] Courts addressing an unclean hands defense in the context of Lanham Act claims have found that "[a]n unclean hands defense requires that the Defendants show they were injured by Plaintiff[s]' conduct." *Pediamed Pharms., Inc. v. Breckenridge Pharm., Inc.*, 419 F. Supp. 2d 715, 727 (D. Md. 2006); *see, e.g.*, *Inmuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344, 1358 (S.D. Fla. 1997); *see also Fields v. BasTech, Inc.*, No. 3:19-CV-135, 2020 WL 3173145, at *4 (S.D. Ohio June 15, 2020) ("Similarly, the equitable defense of unclean hands may apply where '(1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing.'") (quoting *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015)) (addressing unclean hands defense in FMLA action). However, the Court was unable to find—and the parties did not directly address—applicable Sixth Circuit authority on a similar personal injury requirement.

11

complaint." *Performance Unlimited*, 52 F.3d at 1383 (citation omitted). "[T]he doctrine is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *Id.* (quoting *American Hosp. Supply Corp. v. Hosp. Prod., Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986)).

Defendants cite to the Central District of California's decision in *POM Wonderful LLC v. Coca-Cola Co.*, 166 F. Supp. 3d 1085 (C.D. Cal. 2016) and the Southern District of New York's decision in *Haagen-Dazs, Inc. v. Frusen GladJe Ltd.*, 493 F. Supp. 73 (S.D.N.Y. 1980), while acknowledging that the "traditional rule" that a nexus has been found when the plaintiff has engaged in the same kind of false advertising as the defendant "does not apply perfectly to these facts." [Doc. 44 at 11]. However, the Court finds that the instant case is more analogous to the cases cited by Plaintiffs involving "suits by other timeshare developers against other timeshare exit companies" where district courts have struck unclean hands defenses. *See* [Doc. 41 at 9].

For example, in *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, the Middle District of Florida addressed similar false advertising Lanham Act claims brought by the plaintiffs (timeshare developers) against defendants (characterized as timeshare exit companies) and struck the defendants' unclean hands defenses as legally insufficient, stating that "allowing Defendants to assert the affirmative defense of unclean hands may serve to confuse the issues and prejudice Plaintiffs." *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-CV-1542-ORL-31-DCI, 2019 WL 7423511, at *2 (M.D. Fla. Feb. 7, 2019); *see also Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-CV-1542-ORL-31-DCI (M.D. Fla. June 28, 2018) [Doc. 118 (Second Amended Complaint)]; *see, e.g.*, *Bluegreen Vacations Unlimited Inc. v. Timeshare Termination Team, LLC*, No. 20-CV-25318, 2021 WL 2476488, at *5 (S.D. Fla. June 17, 2021) (striking the defendants' unclean hands affirmative defense "because the Systema

12

Defendants cannot assert unclean hands based on a third party's alleged injury—in this case, the Bluegreen [timeshare] owners," as the defendants are not "personally harmed by Plaintiffs' treatment of the Bluegreen owners, nor have Systema Defendants cited any authority to support their contention that the allegations fall within their roles as agents for the Bluegreen owners"); *Wyndham Vacation Ownership, Inc. v. Reed Hein & Associates*, No. 6:18-cv-2171-ORL-31-DCI (M.D. Fla. Dec. 11, 2019) [Doc. 156] ("striking unclean hands defense where "it concerns allegedly wrongful conduct directed to the timeshare owners," not the alleged timeshare exit company defendants, as it "did not harm [the defendant] in any way, and will serve to confuse the issues or otherwise prejudice Plaintiffs") (also raising Lanham Act false advertising claims).

Ultimately, the Court finds that Defendants' unclean hands affirmative defense is legally insufficient and should be stricken. Defendants cannot establish a nexus between the alleged misconduct and the relevant false advertising claims in the present case. Here, the Court agrees with the rationale of the Middle District of Florida that any alleged wrongdoing by Plaintiffs during the initial sale of the timeshare interests is not relevant to the Lanham Act false advertising claims. *See, e.g.*, *Orange Lake Country Club*, 2019 WL 7423511 at *2 ("[W]hether Plaintiffs had unclean hands in dealing with their timeshare owners is not an issue as it pertains to Defendants' affirmative defense of unclean hands."). The Sixth Circuit requires that the alleged misconduct must "relate *directly* to the transaction about which the plaintiff has made a complaint." *Performance Unlimited*, 52 F.3d at 1383 (citation omitted and emphasis added). Plaintiffs' dealings with its own customers are not the subject matter of the lawsuit and allowing Defendants to proceed with this affirmative defense will be significantly prejudicial to Plaintiffs. Accordingly, the Court finds that Defendants' unclean hands affirmative defense should be stricken as insufficient.

## C. Defendants' Privilege Defenses (Affirmative Defenses Nos. 3 and 4)

Plaintiffs seek to strike Defendants' Affirmative Defenses Nos. 3 and 4, claiming that the law does not recognize a privilege to compete using false advertising or unfair and deceptive acts. However, Plaintiffs maintain that in this defense, Defendants are claiming that they were privileged to compete with Diamond, while also denying that "Wesley is in direct competition with Diamond Resorts for Diamond Resorts' owners." *See* [Doc. 1 at ¶ 69]; [Doc. 35 at ¶ 69]. Plaintiffs assert that while Defendants allege that they do not use improper or wrongful means, "defendants do not sell timeshare[s] or manage[ ] timeshare resorts," and thus this is not a traditional competition case. [Doc. 41 at 10]. Plaintiffs claim that none of the three instances in which a party may claim a privilege to procure the breach of a contract recognized in *Edwards v. Travelers Ins. Of Hartford, Conn.*, 563 F.2d 105, 121–22 (6th Cir. 1977), are applicable in the present case. Lastly, Plaintiffs maintain that Defendants are not asserting "classic" affirmative defenses, "admitting Diamond's allegations then pleading in avoidance of them," but rather, "Defendants are denying that they did anything wrong." [Doc. 41 at 11]. Plaintiffs argue that these denials are not affirmative defenses and should be stricken as insufficient. [*Id.*].

Defendants respond that while Plaintiffs "are correct" that "these are not 'classic' affirmative defenses," they "have been careful and deliberate to state its defense with specificity for notice purposes." [Doc. 44 at 7]. Defendants cite the Sixth Circuit's discussion that the difference between an affirmative defense and a denial is "sometimes difficult to discern," but that the failure to raise an affirmative defense causes it to be waived. *See Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986). Defendants maintain that they included these defenses out of an abundance of caution. Defendants further claim that these are relevant issues for trial, and Plaintiffs are not prejudiced by their inclusion. Lastly, Defendants cite to the broad

14

latitude provided under Federal Rule of Civil Procedure 8 and request that the Court deem these affirmative defenses as denials.

In their reply, Plaintiffs assert [Doc. 45 at 5] not only that these affirmative defenses should be stricken as denials, but also that no privilege could apply in the present case. Plaintiffs repeat their arguments that this is not a case where Defendants advertised that their product is better than Plaintiffs, as well as that "Defendants' challenged advertisements do not offer to sell timeshare[s] or manage timeshare resorts." [*Id.*]. Therefore, Plaintiffs maintain that "there is no scenario where a privilege would enable Defendants to engage in false advertising prohibited by the Lanham Act or deceptive acts violative of the Tennessee Consumer Protective Act." [*Id.* at 6].

"When a defendant mislabels a specific denial as a defense, the proper remedy is to treat the claim as a denial, not to strike it." *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. Sept. 25, 2018); *see, e.g.*, *FAST SRL v. Direct Connection Travel LLC*, 330 F.R.D. 315, 319 (S.D. Fla. Aug. 30, 2018); *Joe Hand Promotions, Inc. v. Ridgway*, No. 6:14–cv–03401, 2015 WL 1321477, at *2–3 & n.3 (W.D. Mo. Mar. 24, 2015); *Cox v. Stone Ridge at Vinings, LLC*, No. 1:12-CV-02633-AT, 2012 WL 12931994, at *3 (N.D. Ga. Oct. 23, 2012) ("However, where a defendant mistakenly labels a denial as an affirmative defense, 'the proper remedy is not to strike the claim, but instead to treat the claim as a specific denial.'") (internal citation omitted); *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1086 (W.D. Mich. 1997) (declining "to closely analyze which defenses are true affirmative defenses and which amount to mere denials of plaintiff's case," as "[b]ecause the penalty for not asserting an affirmative defense is waiver, it is prudent for a defendant to state defenses as affirmative defenses if in doubt whether they could be raised by a denial").

Here, the Court agrees with Defendants that Plaintiffs are not prejudiced by the pleading of these defenses, as they are aware of the issues that Defendants intend to raise. "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted). Specifically, "[t]he function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Id.* (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)) (other quotations omitted). Therefore, the Court will not strike Affirmative Defenses Nos. 3 and 4 at this time and will instead treat them as denials.

### D.    Defendants' Denial of Causation (Affirmative Defense No. 5)

Plaintiffs maintain that Defendants' Fifth Affirmative Defense, which both parties characterize as Defendants' denial of causation, should be stricken. Plaintiffs assert that Defendants "again seek to interject conduct occurring only between Diamond and its customers which did not touch or involve Defendants." [Doc. 41 at 11]. Additionally, Plaintiffs claim that this is a denial, rather than an affirmative defense. Therefore, Plaintiffs seek for this affirmative defense to be stricken as insufficient.

Defendants respond that "the fact that some of Wesley's customers had already decided to terminate their relationship with or payments to Plaintiffs or already lost any goodwill they felt towards Plaintiffs goes toward causation of damages," and "causation of damages remains a prerequisite for injunctive relief, as it determines the likelihood of success on the merits." [Doc. 44 at 12]. Therefore, Defendants claim that "[t]his is a legitimate defense to Plaintiffs' claims, which need not be stricken on the mere technicality that it is, strictly speaking, a denial rather than a classic affirmative defense." [*Id.*].

Plaintiffs reply that Defendants attempt to claim that they "cannot be liable because non-parties caused supposed damages that Plaintiffs do not seek," which is not a defense to any asserted cause of action. [Doc. 45 at 6]. Rather, Plaintiffs maintain that Defendants are attempting to conduct discovery of individuals who are critical of the timeshare industry, which leads to a discovery fishing expedition and would mislead the jury from the asserted causes of action.

Ultimately, for the same reasons stated above, the Court will decline to adopt the drastic remedy set forth under Rule 12(f) to strike the affirmative defense at this time and will instead treat it as a denial. In support, the Court notes the liberal standard set forth in Rule 8. The Court finds that Plaintiffs have not established sufficient prejudice to strike the affirmative defense at this time.

**E.      Defendants' Failure to Mitigate (Affirmative Defense No. 9)**

Plaintiffs move to strike Defendants' Ninth Affirmative Defense regarding the failure to mitigate, claiming that "Defendants have not articulated any basis for this defense, and none can be inferred from the context." [Doc. 41 at 12]. Plaintiffs claim that "[e]ven if a duty to mitigate can be imputed here, Diamond cannot reasonably mitigate that which is purposefully being concealed." [*Id.* at 12–13]. Therefore, Plaintiffs claim that Defendants have failed to provide fair notice and the affirmative defense is insufficient.

Defendants respond that the affirmative defense provides the required fair notice and that they are not required to plead the basis of the defense. Additionally, Defendants claim that "[t]o the extent Plaintiffs could have, but failed, to re-sell the timeshare interests relinquished by Wesley's customers, Plaintiffs' damages would be limited." [Doc. 44 at 13].

Plaintiffs reply that "[a] failure to mitigate defense is unavailable in Lanham Act claims, regardless of whether monetary damages are sought." [Doc. 45 at 7]. Therefore, Plaintiffs claim

that the affirmative defense should be stricken as to the Lanham Act claim, and "[t]he mitigation defense, if at all, may apply to a claim for monetary relief under the Tennessee Consumer Protection Act." [*Id.*].

The Court does not find Defendants' Ninth Affirmative Defense to be redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f). Further, the Court finds that Plaintiffs have not shown that this affirmative defense cannot succeed under any circumstances. *Jeeper's of Auburn v. KWJB Enterp., LLC*, No. 10-13682, 2011 WL 1899195, at \*1 (E.D. Mich. Mar. 16, 2011) (a defense is insufficient if "as a matter of law, the defense cannot succeed under any circumstances"). Ultimately, the Court finds that the appropriate course of action is for the parties to proceed with discovery on Defendants' allegations as opposed to striking them under Rule 12(f); *see Cane Creek Sod Contractors, L.L.C. v. Pub. Bldg. Auth. of City of Sevierville*, No. 3:10-CV-66, 2010 WL 11562023, at \*3 (E.D. Tenn. Dec. 17, 2010) (finding defendant properly pled affirmative defense that the plaintiff failed to mitigate damages, as "[w]hether there is a factual basis for the Defendants' affirmative defense should be addressed during the discovery process, not through a motion to strike").

## F. Defendant's Laches Defense (Affirmative Defense No. 11)

Plaintiffs maintain that Defendants' affirmative defense of laches has not been adequately pled at this time and it is not applicable. First, Plaintiffs note that "laches is an equitable defense generally inapplicable to claims which have a statute of limitations," and "[t]hus, it cannot bar [Plaintiffs'] claims under the TCPA, which is a legal claim with an expressly stated statute of limitations." [Doc. 41 at 13]. Additionally, Plaintiffs claim that "Defendants have failed to sufficiently allege laches because Defendants have not alleged any delay, they have not alleged any prejudice, and neither of those elements can be inferred form the context." [*Id.* at 13–14].

18

Defendants respond that they have provided fair notice of laches, as "this type of one-line affirmative defense is perfectly acceptable and similar defenses have been upheld as sufficient." [Doc. 44 at 14]. Additionally, Defendants assert that Plaintiffs acknowledge that laches is a legitimate affirmative defense to a claim under the Lanham Act. Plaintiffs reply that the facts of the present case "do not suggest any basis for the defense," and thus Defendants have not provided fair notice. [Doc. 45 at 8].

In the Sixth Circuit, "we recognize a strong presumption against asserting a laches defense to shorten a statute of limitations." *Operating Eng'rs Local 324 v. G&W Constr. Co.*, 783 F.3d 1045, 1054 (6th Cir. 2015) (finding in an ERISA § 515 action when the suit is brought within the applicable statute of limitations, the laches defense raised by defendants was insufficient as a matter of law under Rule 12(f)) (citing *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 233 (6th Cir. 2007)). The Court has "cautioned that 'only rarely' might a laches defense bar relief before the applicable statute of limitations has run." *Id.*; *see also City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 589 (6th Cir. 2001) ("Having already concluded that the City brought the claim within the applicable statute-of-limitations period, the doctrine of laches has no role in this case.").

However, the Court finds Defendants' affirmative defense of laches, as currently pled, sufficient and concludes it should not be stricken. Federal Rule of Civil Procedure 8(c)(1) merely provides that in "responding to a pleading a party must affirmatively state any avoidance or affirmative defense." *See Ruff v. Credit Adjustment, Inc.*, No. 2:18-CV-351, 2018 WL 4019464, at *2 (S.D. Ohio Aug. 23, 2018) ("Declining to apply the *Twombly/Iqbal* standard to defenses is consistent with Rule 8."). At this time, "an affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff *fair notice of the nature of the offense.*" *Sewell v. Allied Interstate, Inc.*, No. 3:10-CV-113, 2011 WL 32209, at *6 (E.D. Tenn.

19

Jan. 5, 2011) (quoting *Lawrence v. Chabot,* 182 F. App'x 442, 456 (6th Cir. 2006)) (other quotations omitted) (emphasis in *Sewell*). The Court finds that the laches defense provides Plaintiffs fair notice of the affirmative defense. *See Beyer v. Faris Properties, LLC*, No. 3:18-cv-139-JRG-DCP, 2018 WL 7824534, at *2–3 (E.D. Tenn. Oct. 22, 2018) (declining to adopt a heightened pleading standard for affirmative defenses and finding that "the challenged affirmative defenses gave Plaintiff fair notice of the nature of the offense"), *report and recommendation adopted by*, 2019 WL 1331737 (E.D. Tenn. Mar. 25, 2019).

Although the Court acknowledges Plaintiffs' arguments regarding the TCPA claim, the Court declines to strike the affirmative defense at this time. *See, e.g.*, *Salinas v. O'Reilly Auto., Inc.*, No. 3:04-CV-1861-B, 2005 WL 8158372, at *3 (N.D. Tex. June 16, 2005) ("The Court recognizes that the majority of case authority rejects the sufficiency of laches as a defense against a claim filed at law and subject to a statute of limitations. Nevertheless, given the high standard of review for 12(f) motions to strike, the Court will not attempt to resolve this unsettled legal issue here, especially because Salinas will suffer no prejudice as a result, and she will have the opportunity to test this defense again once the record has more fully developed in this case.").

### G. First Amendment Defense (Affirmative Defense No. 12)

Plaintiffs challenge Defendants' affirmative defense that their claims are barred by the First Amendment, claiming "there is no First Amendment protection for *false* advertisements, or for *deceptive or unfair* statements." [Doc. 41 at 14]. Plaintiffs cite to the Sixth Circuit's holding in *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2004) that the First Amendment is not a defense to misleading speech under the Lanham Act. Plaintiffs maintain that "[t]here is no set of circumstances where Diamond proves its claims, yet Defendants' prove—as an avoidance defense—that its commercial speech was truthful and therefore protected by the First

20

Amendment." [*Id.* at 15].

Defendants respond that they do not contest that the "First Amendment does not protect speech that violates the Lanham Act and such speech is not protected by the First Amendment;" however, Defendants claim that this defense should be read as a denial putting Plaintiffs "on notice that Defendants intend to show their advertisements are truthful, and, therefore, protected by the First Amendment." [Doc. 44 at 14].

Due to the reasoning detailed above,[4] as well as the liberal pleading standard under Federal Rule of Civil Procedure 8, the Court declines to strike the affirmative defense related to the Defendants' First Amendment arguments. Rather, the Court finds that such defense should be construed as a denial, rather than stricken.

### G. Remaining Defenses (Affirmative Defense Nos. 13–16)

Plaintiffs move to strike Defendants affirmative defense of lack of standing (No. 13), defense of truth (No. 14), and denials of harm (Nos. 15 and 16). Plaintiffs assert that Defendants have not provided fair notice of the basis for the defenses, and merely deny elements of Plaintiffs' claims.

However, the Court finds that Defendants have provided fair notice under Federal Rule of Civil Procedure 8. Moreover, the Court finds that these defenses are not redundant, immaterial, impertinent, or scandalous. As detailed above, this District has held that the *Twombly/Iqbal* standard does not apply to the pleading of affirmative defenses. Therefore, the Court will continue to construe these defenses as denials, and Plaintiffs' request to strike these affirmative defenses is not well-taken. Ultimately, Plaintiffs have failed to demonstrate the type of prejudice requiring

---

[4] *See supra* Section IV(C).

the drastic remedy of striking a defense, especially when the parties have yet to complete discovery.

## III.    CONCLUSION

Accordingly, for the reasons set forth above, the Court **RECOMMENDS**[5] that Plaintiff's Motion [**Doc. 40**] be **GRANTED IN PART and DENIED IN PART**.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

22