UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 3:20-CV-251-DCLC-DCP<br>) |
| WESLEY FINANCIAL GROUP, LLC, *et al.*, | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Modify Discovery Confidentiality Order [Doc. 82]. Defendant Wesley Financial Group, LLC ("Defendant") has responded in opposition to the motion [Doc. 87], and Plaintiffs filed a reply [Doc. 92]. The parties also filed supplemental briefs [Docs. 94 and 97], which the Court has considered. For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion [**Doc. 82**].

### I.  BACKGROUND

The Court has detailed the allegations in this case several times [Docs. 34, 62, and 63]. Relevant to the instant matter, Plaintiffs market, sell, and manage vacation destinations throughout the world [Doc. 103 ¶ 1]. Plaintiffs allege that Defendant is an unregulated business whose sole purpose is to cancel another business's valid and enforceable contracts [*Id*. ¶ 2]. Plaintiffs claim that Defendant has made a business of and monetized the tort of tortious interference with contract and that it targets and disrupts valid contracts between timeshare developers and their customers [*Id*.]. Plaintiffs allege false advertising under the Lanham Act, 15 U.S.C. § 1125(a), violations of

the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*., and engagement in unauthorized practices and conduct [*Id*. ¶¶ 82–130].

On July 20, 2021, the Court entered a protective order in this case [Doc. 63]. The parties agreed that a protective order was necessary, but they disagreed as to the parameters of the protective order—that is, whether the protective order should include an attorney's eyes only ("AEO") provision. Defendants wanted an AEO provision in order to protect the identity of their current customers [Doc. 63 p. 5]. Plaintiffs disagreed that an AEO provision was appropriate. The Court noted that the Middle District of Tennessee had recently addressed a similar issue with similar arguments, and the undersigned found the decision persuasive [*Id*. at 17 (citing *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00599, 2021 WL 679292, at *1 (M.D. Tenn. Feb. 22, 2021))]. Thus, the Court found that Defendants had established good cause for an AEO designation because the requested current customer information constituted especially sensitive information [*Id*.]. The Court directed the parties to meet and confer and to submit a protective order in accordance with the Court's ruling, and the Court entered the Protective Order on September 16, 2021 [Doc. 72].

The current dispute relates to the AEO provision in the Protective Order [*Id.*]. Relevant to the parties' dispute is Plaintiffs' Transitions Program ("Transitions Program"). Plaintiffs claim that they developed this program to provide their customers with an option to terminate their timeshare interests and as a response to the growing number of timeshare exit companies. Plaintiffs state that the Transitions Program allows owners to relinquish their timeshare interests without using a timeshare exit company. Plaintiffs explain, however, that in order to utilize this program, a timeshare owner cannot be associated with a timeshare exit company, noting that in order to relinquish their timeshares, owners must sign an affidavit ("Transitions Affidavit" or

2

"Affidavit") attesting that they have not paid any third-party consideration in an attempt to exit their timeshare interest. If the customer does not sign the Affidavit, he cannot terminate his timeshare.

Plaintiffs state that despite the above language, they have uncovered evidence that Defendant engaged in the subornation of perjury and the unauthorized business of law in relation to the Affidavit. Plaintiffs submit that the AEO provision was premised on the notion that it protected Defendant's legitimate business interests and that it would prevent harm to third parties. Plaintiffs state that the evidence that they have uncovered shows this notion to be false. In addition, Plaintiffs contend that Defendant is using the AEO provision to severely and unfairly prejudice their ability to prosecute this case. Plaintiffs request that the Court "modify the AEO Order to eliminate protection of the identities of all [Defendant's] 'clients' who qualify for, or are attempting to utilize, Transitions, and in doing so, modify the Confidentiality Order" [Doc. 82 p. 4].

Defendant counters that Plaintiffs' Affidavit is unconscionable and unambiguous and Plaintiffs are requesting that the Court "effectively decide the merits of this case without full discovery and without the procedural protections accompanying a dispositive motion or a trial" [Doc. 87 p. 1]. Defendant states that Plaintiffs seek to discover the identity of its current customers based on alleged illegal services provided to its former customers, whose identities have already been revealed. Defendant asserts that Plaintiffs' reasons for modifying the AEO provision are not justified.

Defendant argues that in support of their position, Plaintiffs submitted an old policy that Defendant's former in-house counsel, Stephen Grauberger ("Grauberger"), created. Defendant states that Grauberger was terminated in June 2021, and Jarrad Lutton, the employee who

3

Case 3:20-cv-00251-DCLC-DCP   Document 106   Filed 10/07/22   Page 3 of 9   PageID #: 1314

implemented the policy, was terminated in August 2021. Defendant claims that it updated its policy several months ago and implemented wide-ranging changes to some of its practices. Defendant states that it has already disclosed (or will shortly disclose) the identity of the customers who received the old advice without any AEO designations. Defendant explains that it designates the identity of its customers as AEO until it has completed its services, at which time it de-designates their identities, allowing Plaintiffs to fully investigate the facts as they relate to those customers. Defendant argues that by granting Plaintiffs' relief, such will effectively be a dispositive ruling because Plaintiffs admit that disclosing the identity of Defendant's current customers will prevent it from accepting customers who qualify for the Transitions Program [*See* Doc. 87 p. 8]

Plaintiffs filed a reply [Doc. 92], asserting that Defendant did not deny its illegal actions. Plaintiffs state that Defendant's argument that it does not provide the same advice is irrelevant. Even if it did change its practice, Plaintiffs contend that this should not impact their motion. Plaintiffs state that Defendant's changes are not relevant to how it improperly obtained the use of an AEO designation. Plaintiffs state that Defendant's arguments regarding the purpose of the affidavit is irrelevant and ignores the harm that it causes to Plaintiffs and third parties.

Plaintiffs filed a Supplemental Brief [Doc. 94], stating that Defendant recently produced documents showing that it continues to provide the former advice that Defendant earlier represented it no longer utilized.

Defendant filed a response [Doc. 97] to the Supplemental Brief, asserting that out of the tens of thousands of emails produced on July 29, 2022, Plaintiffs were able to locate only two instances where Defendant's employees used outdated language to address questions about the Affidavit. Defendant states that it corrected the employees' actions and that Plaintiffs'

4

Supplemental Brief simply shows nothing more than the fact that its employees made mistakes.

**II.   ANALYSIS**

As mentioned above, Plaintiffs seek to modify the Protective Order as it relates to the AEO provision. "A protective order is always subject to modification or termination for good cause" *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009) (citations omitted). The party requesting modification has the burden to show good cause. *Id.* "In deciding whether to modify an existing protective order[,] the court must 'balance the potential harm to the party seeking protection against the requesting party's need for the information and the public interest served by its release.'" *Id.* (quoting *Manual For Complex Litigation, Fourth,* § 11.432). The court should also consider "the disclosing party's degree of reliance on the protective order when the disclosure was made." *Id.* (citation omitted). Whether to modify a protective order is left to the sound discretion of the court. *Id.*

As an initial matter, the Court observes that the parties' filings appear to go to the heart of this case—that is, whether Defendant's business practices are legitimate. But, in addressing whether to modify a protective order, the Court must balance the harm to Defendant verses Plaintiffs' need for the information. *Id.* As mentioned above, Plaintiffs request that the Court eliminate the AEO provision for two primary reasons: (1) Defendant's alleged illegal conduct, and (2) the AEO has prejudiced them. As to this first ground, Plaintiffs should already know the identity of Defendant's customers who received the previous advice. [*See* Doc. 87 p. 7] ("[The identity of all customers who received that advice either already has been or shortly will be disclosed without Attorneys' Eyes Only designation under the Court's existing Order."). But, Plaintiffs have presented evidence that supports their position that Defendant's former advice does not warrant an AEO designation, and therefore, to the extent that Defendant has not revealed such

5

identities, the Court **ORDERS** Defendant to fully review its AEO designations and provide a log containing the customers' names that received Defendant's old advice. Defendant **SHALL** provide the log containing the customers' names **within fourteen (14) days** of this Memorandum and Order.

The Court, however, declines to modify the AEO provision to eliminate the protection of the identities of all of Defendant's clients who qualify for, or are attempting to utilize the Transitions Program. It appears to the Court that Plaintiffs are requesting that the AEO provision be lifted as a sanction for Defendant's past practices. Defendant, however, represents that it no longer utilizes the former advice, and therefore, Plaintiffs have not presented good cause to lift the designation as to all current customers. The Court notes that in Plaintiffs' Supplemental Brief, they claim to have uncovered evidence that Defendant is still relying on its old advice and that the Court entered the AEO provision based on Defendant's misrepresentation that its business is legitimate. Defendant denies that it made any misrepresentations to the Court. Defendant stands by the legitimacy of its business model, which Defendant claims is the ultimate issue in this case. Defendant maintains that it has changed its policies and that based on its most recent supplemental production, Plaintiffs located two instances in which its employees used outdated language to address questions about Plaintiffs' Affidavit.

For instance, Defendant states that as it relates to the email dated May 10, 2022, it verbally instructed the employee's team manager that the language was not in compliance with current policies and that only the approved language should be used in the future [Doc. 97 p. 3]. Defendant states that the employee has since corrected this issue [*Id*.]. In addition, Defendant states that with respect "to the March 18, 2022, a question about this language was circulated by a different Wesley employee" and that in response, "she was clearly instructed that this language

6

Case 3:20-cv-00251-DCLC-DCP Document 106 Filed 10/07/22 Page 6 of 9 PageID #: 1317

'has not been approved by Compliance' and that 'there is approved 3rd party affidavit verbiage in the classroom' that should be used instead" [*Id*. at 4 (citation omitted)]. Defendant maintains that it has changed its policies and states that Plaintiffs are using the discovery process to obtain *de facto* partial summary judgment and inflict million dollars of harm to it. In support of its position, Defendant filed the Declaration of Lauren Gray ("Gray"), its Vice President of Customer Operations [Doc. 97-1]. Gray states that she is "familiar with the process by which employees working the Resolutions Department (known as Resolutions Specialists) are trained to respond to certain situations" [*Id.* ¶ 3]. Gray states that the emails in Plaintiffs' Supplements Brief are inconsistent with Defendant's current policies [*Id*. ¶ 4]. Gray explains the steps Defendant took to change its policies and to "ensure that its employees follow the new approved language" [*Id*. ¶¶ 5–16]. Based on the evidence before it, the Court finds that it does appear that the two incidents that Plaintiffs relied on in their Supplemental Brief are isolated; however, should additional evidence come to light, Plaintiffs may bring it to the Court's attention.

Plaintiffs state that the AEO designation has also caused practical problems. For instance, Plaintiffs explain that they have requested that the Court enjoin Defendant's practices, and therefore, they are required to prove ongoing harm. Plaintiffs state that because they cannot conduct any research into their own records regarding what Defendant's clients are actually doing or saying because they do not know who the clients are, Defendant will be able to present its narrative relatively unchecked as it relates to certain customers. Thus, Plaintiffs state that the presentation of their case will be substantially limited to Defendant's former clients, which is unfair when this lawsuit seeks to enjoin Defendant's business practices.

In addition, Plaintiffs state that the AEO provision inhibits their ability to conduct discovery. Plaintiffs explain that their counsel is unable to communicate with them about

7

Defendant's current clients, and therefore, during depositions, Plaintiffs cannot refute a deponent's testimony using their own records. In a similar vein, Plaintiffs state that they also cannot confirm the veracity of a deponent's testimony.

As an initial matter, the Court notes that Defendant did not address Plaintiffs' argument that the AEO provision inhibits their ability to conduct discovery [*See* Doc. 87]; however, as stated above, Plaintiffs have the burden to show that the Protective Order should be modified, and the Court finds that Plaintiffs have not met their burden. As the Court has previously acknowledged, "An AEO designation is the most restrictive possible protective order, as it confines dissemination of discovery materials only to the opposing party's attorney and other consultants/experts specified in the agreement" [Doc. 63 p. 11 (quoting *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-CV-0993, 2012 WL 5948363, at *4 (S.D. Ohio Nov. 28, 2012)). The Court understands the practical problems that an AEO provision imposes. But, the Court has weighed these issues with the sensitive information in this case, which the undersigned also considered in the previous Memorandum and Order [Doc. 63]. *See Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 2009) (explaining that courts must balance "the difficulties imposed upon plaintiff against the need to protect the information from abuse by competitors"). Specifically, the Court noted that "disclosure to Plaintiffs would cause a serious competitive injury to Defendants—both in their business model and the loss of clients and fees—as well as to the third-party customers who would be unable to engage in Defendants' services to assist in the cancellation of their timeshare interests" [*Id*. at 17]. Further, in Defendant's Supplemental Brief, it explains the harm that will occur if Plaintiffs' motion is granted [Doc. 91 p. 4]. Defendant relies on Gray's Declaration in support of its position, which asserts as follows:

> 20. I have been asked to quantify the amount of harm that would be caused by the relief sought in Plaintiffs' Motion to Modify.

8

> 21. As party of my job responsibilities, I have the ability to view certain data contained in [Defendant's] proprietary databases.
>
> 22. Based upon my review of that data, it appears that [Defendant] would be forced to refund approximately $1.1 million in fees and forgo an additional $250,000 in future payments if it were forced to provide refunds to all zero debt customers who own a Diamond timeshare.

[Doc. 97-1 ¶¶ 20–22].

In light of the Court's previous finding and Gray's Declaration, Plaintiffs' arguments have not persuaded the Court that the issues with the AEO provision outweigh the competitive injury to Defendant. While Plaintiffs argue that they must show ongoing harm, the Court notes that Defendant de-designates the identity of its customers when its services conclude. With respect to Plaintiffs' challenges during the depositions, Plaintiffs may cross examine any deponents at trial or seek another deposition should circumstances warrant. Accordingly, the Court finds Plaintiffs' request not well taken at this time.

### III.  CONCLUSION

Accordingly, for the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Modify Discovery Confidentiality Order [**Doc. 82**].

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

9