IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, DIAMOND RESORTS HAWAII COLLECTION DEVELOPMENT, LLC, and DIAMOND RESORTS MANAGEMENT, INC.,** | ) ) ) ) ) ) | No. 3:20-CV-00251 JUDGE CORKER MAGISTRATE JUDGE POPLIN |
| **Plaintiffs,** | ) ) | |
| **v.** | ) | |
| **WESLEY FINANCIAL GROUP, LLC, and CHARLES WILLIAM MCDOWELL, III,** | ) ) ) | |
| **Defendants.** | ) | |

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTIONS FOR SANCTIONS

On April 4, 2023, Wesley finally admitted that it is entirely dependent on Diamond to determine when a customer's account is closed. That admission, and the others at the hearing, established critical facts, obviated the need for additional discovery, and demonstrated conclusively that Diamond is entitled to sanctions under both if its motions. The revelations established that for years Wesley and its counsel have been violating two critical Orders in this case: the AEO Order [Doc. 63] and the Reconsideration Order [Doc. 103]. Wesley never had the ability to comply with those orders because it could not accurately identify its current customers; it therefore had no ability to accurately search for and designate AEO documents and customers.

The admissions at the hearing and other facts in the record further support the conclusion that Wesley's representations over the past two years relative to its AEO designations were false and that Wesley at least recklessly ignored its obligations to this Court and to Diamond. Wesley's violations were not a series of unfortunate events. Wesley performed inadequate searches, failed to

recognize its own failings on issues critical to this case, and ignored repeated warnings. It also had a clear motive to act the way it did; there are now millions of dollars in additional damages that Wesley would have successfully concealed had Diamond not diligently pursued Wesley's misconduct. Wesley's actions have severely prejudiced Diamond, resulted in hundreds of thousands of dollars in fees and have disrupted the proper resolution of this litigation. Severe sanctions are warranted.

## I. Wesley's Representations About AEO Designations Were False.

Wesley had a clear obligation under the AEO Order to only designate customers who still owned their timeshares, and to promptly remove those designations upon termination. [Doc. 128.] Wesley admitted at the hearing what Diamond had suspected all along—it could never do so:

> The Court: And how do you verify if it's a former client without assistance from Diamond?
>
> Mr. Quinn: Wesley can't…

[Doc. 169 at 60:6-8.] Despite this knowledge, Wesley represented the opposite for years:

- February 18, 2021 – In moving for AEO protection for its "current" customers, Wesley said that revealing "current" customers will subject Wesley to refund liability for over 1,500 such customers, knowing it could not ascertain whether its "current" customer still own their timeshares, implying Wesley knows who its "current" customers are. [Doc. 50.]
- Summer 2021 – Wesley disbanded its "closing" department, which contained the only people that even attempted to determine whether accounts were factually closed. [Doc. 169 at 61:11-17.] Wesley did not tell the Court. *See generally,* Docket.
- October 2021 – Wesley's provided its first "AEO" customer list. Wesley submitted a sworn declaration claiming this list was accurate, though we now know it could not have been. [Doc. 150-1 at ¶19.]
- June 9, 2022 – In opposing the Motion for Reconsideration, Wesley acknowledged its obligation to de-designate "once [Wesley's] services have been provided," identified a prior de-designation, and told the Court that it was de-designating another 100 or so customers "in the coming days," falsely suggesting that Wesley was basing its de-designations on facts. [Doc. 87.]
- July 2022 – Diamond told Wesley repeatedly that its AEO designations appeared wrong and proposed solutions to determine whether that was correct (which this Court ultimately adopted on April 4, 2023). [Doc. 142 at ¶6-7, Doc 142-5.] Wesley refused all suggestions and claimed its designations were correct. *Id.*

- August 11, 2022 – Wesley files a sworn declaration of Lauren Gray, a senior Wesley employee, stating that Wesley "would be forced to refund approximately $1.1 million in fees and forego an additional $250,000 in future payments" associated with current customers if the Court revised the AEO Order. [Doc. 97-1.] Many of those customers' timeshares had already been cancelled. [Doc. 161.]

- October 3, 2022 – Wesley produces new Salesforce exports which reflect hundreds of "current" customers whose timeshares were already cancelled. Wesley details how it created these spreadsheets in multiple declarations, all of which suggest that the underlying data is reliable, when it is not. [Docs. 131; 150-1; 150-2; 157-1].

- October 21, 2022 – Wesley says it complies with the Reconsideration Order by searching AEO designated documents, and comparing it to a previously undisclosed list of "current" customers[1] which has not been produced in the case. *See generally,* First Motion for Sanctions; [Doc. 118.] Wesley's knew its AEO-branded documents and customer list were necessarily wrong. *Id.*

- December 19, 2022 In opposing to the First Motion for Sanctions, Wesley tells the Court that its prior designations were wrong, but now they have corrected them. [Doc. 130.]

- January 30, 2023 – Wesley tells Judge Corker the same thing; its designations were wrong, but now Wesley has corrected them. Discovery is extended as a result [Doc. 149.]

- February 14, 2023 – In opposing the Second Motion for Sanctions, Wesley says, contradicting what it said to the Court in January and December, that its designations were wrong. [Docs. 150.; 150-2] Wesley again says it's getting the designations right. *Id.*; [Doc. 150-1.]

- February 15, 2023 – Wesley "claws back" more than 500 customers, claiming they are "current," though Wesley now admits it did not know if these customers still owned their timeshares. [Doc 158.]

- March 16, 2023 – Wesley changes designations again, based on a "deep dive, manual review" process proposed in response to the Second Motion for Sanctions. [Docs. 158; 157-3] Wesley again claims the designations are right. *Id.* This review, albeit still not able to ascertain the only needed fact: is the timeshare cancelled, took, at most, just weeks (from the hearing in front of Judge Corker through the date of filing).Wesley does not explain why it has not done this since AEO was created in July 2021.

- March 22, 2023 – Wesley de-designates "debt" customers it claims are "current" but not "current" "zero-debt" customers [Docs. 157-4; 128.]; *see also* [Doc. 161, Section B; Doc. 160-1] (identifying 63 such customers and providing twenty (20) example Affidavit Advice emails for these customers)

On at least 14 separate occasions, Wesley had the obligation to tell the Court that it could not determine "current" from "former" without Diamond's help, but Wesley did not.

---

[1] Whatever this list was is still a mystery, as it was not produced, and has since been withheld based on a claim of privilege.

Additionally, from mid-2021 through late 2022 (at least), Wesley's standard operating procedure was to tell customers their timeshares were terminated (or about to be), congratulate them on the successful timeshare termination, tell them that Wesley would not be following up, and tell them that "confirmation of closure" was "solely for [the customer's] record purposes." [Doc. 163 at ¶8-9; Doc 163-3.] (providing 100 examples of such emails (there are hundreds more)). At the same time, Wesley told this Court and Diamond these same customers were "current." *See generally* [Doc. 157.]. So Wesley told its customers the precise opposite of what it told this Court and Diamond.

## II. Wesley's Violation of the Court's Orders Underlies Both Motions for Sanctions

### A. The First Motion for Sanctions.

In its Reconsideration Order, the Court refused to countenance Wesley's illegal Affidavit Advice with AEO protection, and ordered Wesley to de-designate AEO documents, and AEO recipients associated with that advice. Wesley concealed that its AEO designations were unreliable. But its search was much worse. Wesley intentionally chose to search only email even though Diamond's Motion for Reconsideration identified other mediums Wesley routinely used, especially audio files. [Doc. 119, Section (B).] Additionally, Wesley searched only a precise two-sentence phrase, again in the face of Diamond's numerous examples of other ways the illegal advice was delivered to the AEO designated customer. *Id.* Wesley ignored numerous warnings that its efforts were inadequate. Wesley's refusal to do the right search in relevant repositories demonstrates willful disregard of its obligations. *See Knight First Amend. Inst. at Columbia Univ. v. Centers for Disease Control & Prevention*, No. 20 CIV. 2761 (AT), 2022 WL 4124857, at *2 (S.D.N.Y. Sept. 9, 2022) (searching full phrases in lieu of using search terms is unreasonable and not substantially justified); *R & R Sails v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 528 (S.D. Cal. 2008) (imposing sanctions for "failure to search for and timely produce electronically-stored information"); *Zubulake v. UBS Warburg*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Counsel must take affirmative steps to monitor

compliance so that all sources of discoverable information are identified and searched.").

The hearing provided more evidence of Wesley's intentional disregard of this Court's Orders. Six (6) months after the Court issued the Reconsideration Order, five (5) months after Diamond gave Wesley the list of AEO customers who received affidavit advice, and four (4) months after the First Motion for Sanctions, ***Wesley still, today, claims AEO protection for 63 separate customers who received Affidavit Advice***. [Docs. 161, 163 at ¶10(a), 163-2.] Diamond provided Wesley the names of each of these customers nearly (3) weeks ago and filed a brief highlighting this fact. Wesley acknowledged this during the hearing on April 4. *Id.*; [Doc. 169.] Wesley *still* ignores the Reconsideration Order, showing, again, complete disregard for this Court and its orders. *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 at *13, n.10 (S.D. Cal., Jan. 7, 2008) vacated in part, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008) ("[a]ttorneys' ethical obligations do not permit them to participate in an inadequate document search and then provide misleading and incomplete information to their opponents and false arguments to the court").

### B. The Second Motion for Sanctions.

Wesley's admission that its AEO designations are unreliable and their concealment of that from the Court, makes clear that the Second Motion for Sanctions should also be granted. Wesley portrays – really, concocts - a series of "inadvertent" mistakes in interpreting Salesforce data. Wesley's four (4) separate affidavits pointing to 'this code' and 'that datapoint' all ignore that Wesley could not determine the single fact central to its business: whether the timeshare is cancelled. The fact of the matter is that regardless of the codes Wesley created, even the most robust database reporting software cannot create facts; a database (such as Salesforce) is necessarily reliant on information that is put into it. But instead of being forthcoming with the Court, and admitting that it's data was inherently unreliable, Wesley portrayed its Salesforce data as fact.

Wesley also admits that it never tried to ensure its data was correct. Diamond warned Wesley

its designations were wrong. Wesley ignored it. Until six weeks ago, Wesley had not even developed a process to fix its data, even though that process was likewise doomed to fail (without Diamond's help). [Doc. 169 at 63:21-64:2.] Wesley also admitted that its review took, at most, 30 days to complete. *See generally* [Doc. 158]0. The fact that Wesley did not create a process any time during the twenty (20) months between July 2021 and March 2023 is particularly egregious, shows bad faith, and shows that Wesley simply did not care. *See, Qualcomm,* 2008 WL 638108 (ignoring explicit and implicit warning signs is indicative of bad faith).

### C. Understanding the True Impact of Wesley's Misconduct

At the April 4 hearing, Wesley blamed Diamond for not telling its counsel how to run a Boolean search back in October 2022: "we might not be here." [Doc. 169 at 44:16]. Wesley misses that the obligation to comply with both the AEO Order and the Reconsideration Order was Wesley's, not Diamond's. This is simply a lame excuse. But, say Diamond did Wesley's counsel's job and force-fed Wesley the search terms: the illegal advice recipients would have been discovered, but the false story that Wesley has told about its inability to manage its AEO designations would not. The April 4 revelation occurred only because Diamond filed the First Motion for Sanctions. And all that came after, namely Wesley's flip-flopping confidentiality changes, and its ultimate admission that its confidentiality designations were false, would never have happened. Instead, it took months of motion practice (including two motions for sanctions, the Emergency Motion, and the Motion for Protective Order), a delay of at least eight (8) months,[2] a lengthy hearing, and hundreds of thousands of dollars of costs to get this case to where it should have been in July 2021 had Wesley just told the Court the truth from the outset.

Diamond agrees with Wesley on one thing: we should not be here. But we are. And because

---

[2] More time is ultimately necessary because three months (3) of the eight (8) month discovery extension has now been wasted.

of Wesley, not Diamond. And the preliminary court ordered review of the more than 1,900 so-called and wrongly designated AEO accounts shows that Diamond has already cancelled nearly **half** – about 900 - of the customers' timeshares. This discovery represents, potentially, tens of millions of dollars of damages and substantial additional liability evidence. This only came to light because Diamond filed its motions for sanctions. The suggestion by Wesley that none of this was necessary is further evidence of bad faith.

### III. Wesley's Pattern of Deception Warrants Significant Sanctions.

"[U]nless Rule 37 is perceived as a credible deterrent rather than a 'paper tiger,' the pretrial quagmire threatens to engulf the entire litigative process." Where, as here, a party "continually professe[s] full compliance--falsely and [ ] without making a reasonable inquiry" such misconduct "constitutes such gross negligence as to rise to intentional misconduct" and significant sanctions are warranted.[3] *Metro. Opera Ass'n v. Local 100*, 212 F.R.D. 178, 220 (S.D.N.Y. 2003). Though the Court has the full panoply of sanctions enumerated in Rule 37(b)(2)(A) available to it, all of which are likely warranted, the sanctions Diamond requested in its Second Motion for Sanctions fit the crime. At a minimum, an award of fees and costs, and extension of the discovery deadline, is warranted as the discovery contemplated by Judge Corker has been stalled. *Seena Int'l, Inc. v. One Step Up, Ltd.*, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) ("The mildest sanction is an order to reimburse the opposing party for expenses…monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice" such as this) (cleaned up).

Substantial sanctions are warranted under these circumstances. For example, in *Metro.*

---

[3] While the Court has the authority to sanction both client and attorney, the Court may apportion costs as it deems fit, and Diamond is ambivalent as to apportionment, so long as Diamond does not suffer from Wesley's misconduct. *Phipps v. Accredo Health Grp., Inc.,* 2017 WL 685579, at *4 (W.D. Tenn. Feb. 21, 2017) ("[c]ounsel and counsel alone ha[s] at all times an affirmative, non-delegable duty to conduct a reasonable inquiry to ensure that Defendant's discovery responses [including compliance with this Court's Orders, are] complete and correct.")

*Opera Ass'n, Inc.*, *supra,* the Court entered an adverse liability judgment, as well as monetary sanctions, where defendants made a series of false statements about "simple but material matters," including "falsely denying [the] existence" of certain documents called for by plaintiff's discovery requests, 212 F.R.D. 178 at 225, and where their attorneys responded to complaints of inadequate production with "continuing representations of full compliance" that were "so lacking in a reasonable basis as to rise to the level of bad faith." *Id.* at 224. In *Qualcomm*, Qualcomm and its attorneys were sanctioned millions of dollars in attorney fees and costs pursuant to Rule 37(b). 2008 WL 66932 at *20. In reaching that award, the court noted that Qualcomm failed to establish any "substantial justification for its failure" to search obviously relevant repositories, and "[t]he fact that Qualcomm did not perform [] basic searches... indicate[d] that Qualcomm intentionally withheld the documents" and demonstrated "an organized program of litigation misconduct and concealment." *Id.* *9 (S.D. Cal. Jan. 7, 2008). And Wesley can present no substantial justification for its concealment of the fundamental flaw in the AEO process upon which it insisted.

Similarly in *Goudy v. Cummings*, counsel failed to timely disclose documents and exhibited dilatory and evasive conduct in response to further inquiries as to these failures which unnecessarily delayed the litigation. 2017 WL 1077550, at *12 (S.D. Ind. Mar. 22, 2017). The Court sanctioned counsel for his indifference toward discovery obligations and lack of candor to the Court, despite finding that counsel exhibited no malice or ill *Id.*; *see also Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137, 2021 WL 2043188, at *9 (E.D. Tenn. May 21, 2021) (finding Party's lack of candor 'deeply troubl[ing],' and noting that such conduct is "sanctionable *at best.*') (emphasis original).

In *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 101–02 (D.N.J. 2006), the Defendants engaged in conduct that included, like here, knowingly failing to search and produce responsive documents, causing Plaintiffs to have to duplicate case preparation, causing repeated motion practice and wasted time when "good faith compliance with the Federal Rules of Civil Procedure

would have made such continuous costly intervention unnecessary," and "concealing Defendants' non-compliance [ ] by systematically ignoring adverse rulings" among others. *Id.* at 102-111. Additionally, defendants "disingenuously claim[ed] that they could not understand clear orders of the Magistrate Judge, [ ] submitt[ed] false and misleading statements in court papers, affidavits, and testimony" and stated that data was "just discovered" when it had been known for an extended period of time. *Id.* The court awarded nearly all of the remedies available pursuant to Rule 37, except default, fined defendants for their misconduct, and awarded fees and costs associated with all associated motions, and discovery that had to be redone as a result of the defendants' violations. *Id.*

Much like the above cases, Wesley repeatedly misrepresented the scope of its compliance with this Court's Orders. Specifically with regard to the AEO Order, Wesley

- misrepresented that it was fully complying with its obligations to *only* designate documents and individuals as AEO when they still owned their timeshares, while (1) knowing that it could never comply with that obligation, and (2) actively seeking to avoid the information it used to even feign compliance with its obligations;
- made these representations to counsel at various points in the litigation when Diamond challenged the accuracy of Wesley's designations;
- made similar representations in numerous pleadings and sworn declarations, knowing these representations were misleading, at best; and Wesley.
- demonstrated that it never intended to comply with the AEO Order by only devising a reasonable compliance protocol just six (6) weeks ago, and completing the review required in less than thirty (30) days.

As to the Reconsideration Order, Wesley demonstrated its violations, and intent not to comply by:

- intentionally searching a universe of documents that it knew was incomplete.
- utilizing a search protocol that was designed not to find responsive documents;
- claiming that the Court's Reconsideration Order did not require it to disclose "debt" customers who received Affidavit Advice when the Reconsideration Order was unequivocal;
- acknowledging its obvious violation by de-designating "debt" customers long after briefing on the First Motion for Sanctions was complete, and not moving to supplement briefing;
- re-designating 63 "zero debt" customers as AEO, that Wesley knew received Affidavit Advice; and
- not amending its disclosures relative to these 63 customers in the three (3) weeks since

> Diamond identified this violation and identified every one of these customers by name (and provided documentary evidence of Wesley's violations as to many).

Wesley refused to admit its misconduct until it could no longer deny it. None of Wesley's explanations - strained readings of this Court's Orders, blaming Diamond for its non-compliance, or purportedly relying on data it knew to be unreliable, while representing that data as fact - demonstrate any substantial justification for Wesley's actions. Rather Wesley's actions demonstrate a pattern of litigation misconduct and concealment that requires significant sanctions. And even were the Court to conclude that Wesley's actions resulted from inattentiveness, neglect, carelessness, or the like, sanctions are still warranted. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ("Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance...."); *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642–43 (7th Cir. 2011) (Basic negligence is sufficient for an award of fees and costs. "[A] showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction."); *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir. 1985) ("We have consistently held that sanctions may be imposed for negligent failures to provide discovery.").

### IV. Conclusion.

The Court must grant Diamond's First and Second Motions for Sanctions and award Diamond its fees and costs associated with the Motions for Sanctions and related filings and recommend that the pre-trial deadlines be extended for the three (3) months Diamond has lost. The Court should likewise admonish Wesley that further violations its Orders will not be tolerated and will subject Wesley to even greater sanctions.

Respectfully submitted this 18th day of April 2023.

/s/ *Phillip A. Silvestri, Esq.*
Gregory C. Logue, BPR No. 012157
Robert L. Vance, BPR No. 021733
Woolf, McClane, Bright, Allen & Carpenter, PLLC
P.O. Box 900
Knoxville, TN 37901
Telephone: (865) 215-1000
glogue@wmbac.com
bvance@wmbac.com

Richard W. Epstein, *Admitted pro hac vice*
Jeffrey Backman, *Admitted pro hac vice*
B. Eliot New, *Admitted pro hac vice*
Greenspoon Marder LLP
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 491-1120
Facsimile: (954) 343-6958
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com
eliot.new@gmlaw.com

Phillip A. Silvestri, Esq., *Admitted pro hac vice*
Greenspoon Marder LLP
3993 Howard Hughes Pkwy., Ste. 400
Las Vegas, NV 89169
Telephone: (702) 978-4249
Facsimile: (954) 333-4256
phillip.silvestri@gmlaw.com

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2023, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

John E. Quinn, Esq.
Aubrey B. Harwell, Jr., Esq.
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
aharwell@nealharwell.com
jquinn@nealharwell.com

Wayne A. Ritchie II, BPR #013936
James R. Stovall, BPR # 32512
Samantha I. Ellis, BPR # 036709
Ritchie, Dillard, Davies & Johnson, P.C.
606 West Main Street, Suite 300
Knoxville, TN 37902
war@rdjs.law
jstovall@rdjs.law
sellis@rdjs.law

*Counsel for Defendants*

/s/ Phillip A. Silvestri, Esq.