UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:20-CV-251-DCLC-DCP ) |
| WESLEY FINANCIAL GROUP, LLC, *et al.*, | ) ) |
| Defendants. | ) ) |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Determine Amount of Attorneys' Fees Pursuant to Order Awarding Discovery Sanctions [Doc. 202]. Defendant Wesley Financial Group, LLC ("Defendant Wesley") filed a response in opposition [Doc. 206], and Plaintiffs filed a reply [Doc. 213]. On November 18, 2024, the parties requested that the Court hold this motion in abeyance pending their efforts to resolve this case [Doc. 353]. The Court granted the parties' request and held the motion in abeyance until January 31, 2025 [Doc. 354]. The parties filed a status report on January 31, 2025, requesting additional time to complete their discussions about an early resolution [Doc. 355]. The Court also granted this request [Doc. 356]. On March 3, 2025, the parties filed a joint status report stating that they were unable to resolve this matter and that holding the motion in abeyance is no longer necessary [Doc. 357].

The motion is therefore ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion [**Doc. 202**]. The Court **AWARDS** Plaintiffs $55,749.82 in attorneys' fees.

I.  **BACKGROUND**

The instant filings relate to the Court's Memorandum and Order entered on September 29, 2023 [Doc. 194]. The Court is familiar with the underlying facts and will not review them in detail here [*See id.*]. In summary, the Court allowed Defendant Wesley to designate its current customers as Attorneys' Eyes Only ("AEO") [Doc. 63]. When current customers became former customers, Defendant Wesley was required to de-designate them [*Id.*]. Defendant Wesley committed several errors in designating its customers and reported to the Court that 764 customers should have been de-designated [Doc. 194 (citing Doc. 150)]. This error led to Plaintiffs' Second Motion for Sanctions [Doc. 139], the parties' Joint Motion to Amend the Scheduling Order and Continue the Trial ("Joint Motion") [Doc. 145], and a telephonic hearing before United States District Judge Clifton Corker [Doc. 149]. Given Defendant Wesley's issues with de-designating its customers, Judge Corker continued the deadlines and stayed the trial date [*Id.*]. Later, in response to Plaintiffs' Second Motion for Sanctions, Defendant Wesley reversed course and said that its errors with designations only affected 123 customers [Doc. 194 pp. 10–11 (citing Doc. 150)].[1] Plaintiffs then filed a motion requesting that the Court stay briefing on the Second Motion for Sanctions and asked that the Court set a hearing [*Id.* at 11 (citing Doc. 151)].

The parties appeared before the Court on April 4, 2023 [*Id.* at 11–12]. After hearing from the parties, the Court proposed to modify the Protective Order to allow certain individuals with Plaintiffs to review Defendant Wesley's AEO designations [*Id.* at 12 (citing Doc. 166)]. The parties agreed to that proposal [*Id.*]. That hearing lasted approximately four hours, excluding the

---

[1] In the instant motion, Plaintiffs state that their "post-hearing Court-directed investigation proved that of [Defendant] Wesley's roughly 1,900 'current' customers, all designated AEO, [Plaintiffs] had cancelled the timeshare contracts of approximately 700 of them" or in other words, "[t]he 123 customers [Defendant] Wesley wrongly maintained as AEO was about 18% right" [Doc. 202 p. 9 (citations omitted)].

hour that the Court and the parties took for a lunch break [*See* Doc. 169].

The Court's modification did not address Plaintiffs' requested sanctions [*Id*.]. "Given that this modification resolved the primary issue—Wesley's inaccurate designations—the Court allowed the parties to file supplemental briefs to explain what relief, if any, is appropriate" [*Id*.]. Plaintiffs thereafter sought sanctions in the form of attorneys' fees under Rule 37 of the Federal Rules of Civil Procedure [*Id*.]. The Court found sanctions appropriate, reasoning:

> Here, Wesley acknowledged that it made mistakes. As noted above, in December 2022, Wesley erroneously de-designated 764 customers. This led to Plaintiffs' Second Motion for Sanctions [Doc. 139], a joint motion to continue [Doc. 145], the parties attending a telephonic motion hearing before Judge Corker [Docs. 146 & 149], Wesley's response to Plaintiffs' second motion [Doc. 150], and Plaintiffs' Emergency motion to stay and related filings [Docs. 151, 152, 156]. The Court finds that Plaintiffs are entitled to an award of their reasonable attorneys' fees for these above matters. In addition, the Court addressed these matters, in part, at the April 4 hearing, and therefore, the Court awards Plaintiffs half their time spent preparing for and attending the hearing. The Court finds an award of reasonable attorneys' fees will remediate the prejudice Plaintiffs incurred by Wesley's erroneous de-designations.

[*Id*. at 26] (hereinafter, the "Sanctions Order"). The Court ordered the parties to meet and confer in an attempt to resolve the amount of attorneys' fees due, but if they could not agree, the undersigned directed Plaintiffs to file proof of their requested amount in the record [*Id*. at 26–27].

The parties could not agree, and therefore, the instant motion followed. Plaintiffs seek $62,973.00 in attorneys' fees [Doc. 202 p. 4]. Plaintiffs state that Defendant Wesley convinced the Court that an AEO order was necessary to protect its legitimate business [*Id*.]. They deny that Defendant Wesley has a legitimate business [*Id*.]. In obtaining the Protective Order, Plaintiffs assert, "[Defendant] Wesley had to know that it could not reliably verify that a Diamond timeshare contract had been cancelled and it concealed that from the Court in the motion practice leading to the confidentiality order" [*Id*. at 5]. According to Plaintiffs, they advised Defendant Wesley in

3

July 2022 that its designations were wrong and offered a similar remedy to the one that the Court fashioned in April 2023 [*Id.*]. Plaintiffs state that Defendant Wesley denied that its designations were wrong and rejected Plaintiffs' offer [*Id.*]. They explain the time incurred for drafting motions and attending hearings [*Id.* at 6–8]. Plaintiffs assert that "these matters dominated this litigation for several months" [*Id.* at 10]. As such, they submit that the amount of hours and billing rates are reasonable under the lodestar analysis [*Id.* at 13–18]. And, Plaintiffs argue, the lodestar amount should not be adjusted [*Id.* at 18–21]. In support of their request, Plaintiffs filed the Declaration of Phillip A. Silvestri [Doc. 202-1] and the Sworn Declaration of R. Culver Schmid [Doc. 202-2].

Defendant Wesley responds that there are a number of undisputed facts: (1) "that [it] voluntarily disclosed the discovery errors that are the subject of Plaintiffs' sanctions motion;" (2) "that [it] was forthcoming about how the errors were made;" (3) "that [it] agreed to file and participated in preparing a joint motion to extend discovery deadlines to address the de-designated information;" (4) "that [it] had agreed to the requested extension before Plaintiffs' sanctions motion was filed;" (5) "that the District Court granted the joint motion and extended the discovery deadlines only 11 days after the joint motion was filed" (6) "that [its] errors were the result of negligence and were not intentional" [Doc. 206 pp. 1–2 (citations and footnote omitted)]. Defendant Wesley states that the discovery errors involved the AEO designations, which this Court has allowed [*Id.* at 2]. It argues that "there was no merit in most of the positions Plaintiffs asserted in their [S]econd [Motion for] [S]anctions" [*Id.* at 3]. Defendant Wesley states that "the only bases for sanctions found by the Court to have merit were those [Defendant] Wesley did not contest: that [Defendant] Wesley had made mistakes in its designations and that the discovery deadline should be extended" [*Id.* (emphasis omitted)]. "In fairness[,]" Defendant Wesley contends, "the Court's award of attorneys' fees should be based on the amount of work reasonably required to bring those

4

matters to the Court's attention" [*Id*.].

Defendant Wesley acknowledges that the lodestar analysis is applicable here [*Id*. at 4 (citation omitted)]. It asserts, "Under Rule 37's plain terms, fees are awarded for work that not only was 'caused by' the discovery error at issue but that also was 'reasonable'" [*Id*. at 5 (citation omitted)]. Defendant Wesley states, "Interpreted in the light of the lodestar factors, that means work reasonably necessary to bring errors to the Court's attention and to seek appropriate relief" [*Id*.]. Instead of bringing the issues "to the Court's attention in a straightforward manner[,]" Defendant Wesley submits that "Plaintiffs elected to expend [time] making unfounded accusations against Defendants and defense counsel and asserting claims the Court found to be without merit" [*Id*. at 6]. Defendant Wesley outlines eight of Plaintiffs' positions, stating that the Court found against them [*Id*. at 8]. While Plaintiffs represent that they brought the issues with Defendant Wesley's designations to its attention in July 2022, Defendant Wesley asserts that Plaintiffs fail to explain why they did not pursue the procedures outlined in the Court's Discovery Confidentiality Order [*Id*. at 10 (citation omitted)]. Defendant Wesley also states that Plaintiffs failed to meet and confer on their Second Motion for Sanctions [*Id*.].

In addition, Defendant Wesley argues that "Plaintiffs' [instant] motion . . . disregards many of the Court's rulings and conclusions" [*Id*. at 11; *see also id*. at 12–13]. With respect to the novel and difficulty of the questions presented, Defendant Wesley "agrees that the voluminous nature of the information (more than two million documents) that [it] has been producing in discovery inherently involves some logistical complexity" [*Id*. at 14 (emphasis omitted)]. But, Defendant Wesley asserts, "Plaintiffs have made no showing whatsoever that they needed six different lawyers to bring the designation mistake to the Court's attention" [*Id*.]. Although the logistics of the discovery dispute were challenging, Defendant Wesley states that the underlying issue was not

5

Case 3:20-cv-00251-DCLC-DCP  Document 362  Filed 03/21/25  Page 5 of 17
PageID #: 8383

[*Id*. at 15].  Defendant Wesley outlines the reasons for which it believes the hours on drafting the motions and attending the hearings should be modified [*Id*. at 15–19].  In support of its position, Defendant Wesley filed the Affidavit of Counsel, Wayne Ritchie [Doc. 206-1].

Plaintiffs filed a reply asserting that Defendant Wesley's position, i.e., that the Court should not award fees for the claims that the Court denied, "has been repeatedly rejected by the United States Supreme Court, the Sixth Circuit, and this District" [Doc. 213 p. 2].  Plaintiffs state that "[Defendant] Wesley's [o]pposition mirrors the [p]arties' pre-motion discussions where [Defendant] Wesley did not . . . dispute the substance of any of [Plaintiffs'] time entries" [*Id*. at 3 (footnote omitted)].  They maintain that their fees are reasonable [*Id*. at 4–5].  They state that because they offered Defendant Wesley a similar proposal about modifying the Protective Order, Defendant Wesley's errors could have been avoided [*Id*. at 5–6].

## II.   ANALYSIS

The only issue before the Court is whether Plaintiffs' requested amount of attorneys' fees is reasonable.  The parties apply the lodestar analysis to Plaintiffs' fee request. *Clark v. Liberty Mut. Ins. Co.*, No. 1:22-CV-01089, 2023 WL 7034038, at *1 (W.D. Tenn. Sept. 12, 2023) (collecting cases that a lodestar analysis is applicable to a sanctions award), *aff'd sub nom. Clark v. Ohio Sec. Ins. Co.*, No. 23-5808, 2024 WL 4751143 (6th Cir. Nov. 12, 2024). The lodestar method is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).  The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Isabel*, 404 F.3d at 415–16 (cleaned up); *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (explaining that the above factors "provide[] a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees"). "The movant bears the burden of establishing the reasonableness of his claimed hourly rate." *S.B. by & through M.B. v. Lee*, No. 321CV00317, 2023 WL 6160615, at *9 (E.D. Tenn. Sept. 21, 2023) (citation omitted).

In Attorney Silvestri's Declaration, Plaintiffs set forth their attorneys' rates and the time requested:

| Timekeeper | Drafting/Motion Hours | Hearing Hours[2] | Rate | Total Requested |
|---|---|---|---|---|
| Richard Epstein | 6.8 | 28.5 / 2 | $500 | $10,525 |
| Jeffrey Backman | 14.7 | 2.7 | $425 | $6,821.25 |
| Eliot New | 11.9 | NA | $400 | $4,760 |
| Phillip Silvestri | 55.6 | 36.7 / 2 | $400 | $29,580 |
| Andrew Gantz | 18.3 | NA | $300 | $5,490 |
| Robert Vance | 12.2 | 12.9 / 2 | $295 | $5,796.75 |

[Doc. 202-1 ¶ 16]. In total, Plaintiffs seek $62,973.00 [*Id*. ¶ 17]. Specifically, they ask:

> [R]eimbursement for 60.2 hours associated with the Second Motion for Sanctions [Doc. 139], 11.1 hours for the motion to extend [Doc. 145], 4.8 hours associated with the hearing with Judge Corker [Doc. 149], 44.4 hours related to [Defendant] Wesley's Opposition to the Second Motion for Sanctions and resultant filings [Docs. 150–52, 156], and 80.8 hours related to the April 4 hearing (which, again

---

[2] As Plaintiffs state, the chart reflects the "total hours expended for the lawyers for the April 4, 2023 hearing[,]" but "the fee request seeks payment for only one-half of the time for preparation and appearance at the hearing" [Doc. 202 p. 10 n. 5].

7

reimbursement is required at only 50%).

[*Id.* ¶ 18]. Plaintiffs' total time requested pursuant to the Sanctions Order is 201.3 hours [*See id.*]. According to Attorney Silvestri's Declaration:

> The time reflected in Exhibit 1-A [above] is significantly less than time actually expended, and the fees Diamond has paid. In compiling this exhibit, I took an extremely critical view of the time incurred, and excluded time entries collaterally related the motions and hearing but which contributed to the final product, removed timekeepers not formally admitted to this case even though contributing to the work product, time of the third or more lawyers participating in internal strategy discussions in which more than two timekeepers were present, and travel time.

[*Id.* ¶ 14].

Defendant Wesley states that "Plaintiffs' total fee award should be based on 50.5 hours" [Doc. 206 p. 19].[3]

### A. Second Motion for Sanctions [Doc. 139]

As noted above, Plaintiffs seek 60.2 hours associated with the Second Motion for Sanctions [Doc. 202-1 ¶ 18]. They state that their "Second [M]otion for [S]anctions was prompted by [Defendant] Wesley's out-of-the-blue admission that its AEO designations were largely wrong" [Doc. 202 p. 5]. Plaintiffs assert that they "sought to mitigate the damage [Defendant] Wesley had caused, which required extensive efforts to try and understand what, exactly had gone wrong" [*Id.* at 6]. According to Plaintiffs, "this was not a simple discovery dispute, and involved matters, that

---

[3] Defendant Wesley does not challenge Plaintiffs' counsels' hourly rates [Doc. 206 p. 19]. Given no opposition, the evidence of each attorney's relevant skills [*see* Doc. 202-1 ¶¶ 4–9; *id.* at 9–28], and this complex litigation [*see* Doc. 202-2 ¶ 6], the undersigned adopts Plaintiffs' counsels' hourly rates.

Further, while Defendant Wesley states that Plaintiffs' fee award should be reduced to 50.5 hours, Plaintiffs' attorneys bill at different hourly rates. Thus, Defendant Wesley's proposal is not helpful to the Court in determining the amount of reasonable attorneys' fees.

8

. . . go to the heart of the issues in this case and potentially involved millions of dollars in damages" [*Id.*].

Defendant Wesley suggests a more reasonable time is 16 hours given that "seven of the eight claims advanced by Plaintiffs were unsuccessful" [Doc. 206 pp. 15–16].

Courts have disagreed on whether unsuccessful claims in a motion should result in a reduction of time, *cf. PepsiCo v. Cent. Inv. Corp.*, 216 F.R.D. 418, 421 (S.D. Ohio 2002) ("Next, the Court finds no merit in the contention that [the defendant's] fees related to the motion for sanctions should be reduced because it did not get the relief it sought. This is not an application for fees by a civil rights litigant in which the Court must gauge the plaintiff's degree of success versus the relief sought."), *with Outdoor Prod. Innovations, Inc. v. Jest Textiles, Inc.*, No. 1:18 CV 2457, 2020 WL 13470888, at *1 (N.D. Ohio June 11, 2020) (disagreeing with the holding in *Pepsico*). Under these circumstances, however, the Court declines to make reductions. Specifically, Defendant Wesley's arguments paint an incomplete picture of what occurred. When Plaintiffs filed the Second Motion for Sanctions, they did so based on Defendant Wesley's inaccurate representation that they incorrectly designated approximately 764 customers as AEO [*See* Doc. 139]. It was only later and in response to the Second Motion for Sanctions that Defendant Wesley provided details into the error and explained that its errors only affected 123 customers, not the 764 customers they previously identified. Plaintiffs' claims, therefore, in the Second Motion for Sanctions did not fail because they were meritless—they failed because Defendant Wesley reversed course. The Court therefore does not find that Plaintiffs are using sanctions "as a limitless trove for obtaining fees." *Outdoor Prod. Innovations, Inc.*, 2020 WL 13470888, at *1.

In other words, this was not a straightforward discovery matter. Indeed, although Defendant Wesley has not pointed to any specific unreasonable time entries, the Court has reviewed them [*see* Doc. 202-1 pp. 29–30] and notes that Plaintiffs incurred approximately $22,586.00 in attorneys' fees for it [*id*.].[4] It appears that Attorney Silvestri spent the majority of the time on drafting the motion [*See id*.]. The Court has reviewed the Second Motion for Sanctions [Doc. 139], which in substance, spans two pages, and the Memorandum of Law [Doc. 140], which in substance, spans seventeen pages. The memorandum, however, includes several exhibits, some of which are declarations [*See* Docs. 140-2, 140-3]. The Court also notes that many attorneys worked on this matter, and the time entries include instances of internal correspondence and strategy. But here, the Court declines to make reductions given that these entries are minimal compared to the substance of the motion. In light of the length of the filings and the complexity and unusual nature of this issue, the Court finds the time incurred reasonable. *Cf. Outdoor Prod. Innovations, Inc.*, 2020 WL 13470888, at *1.

B. **Joint Motion to Amend Scheduling Order and Continue Trial ("Joint Motion") [Doc. 145]**

Plaintiffs seek 11.1 hours for drafting a motion to extend discovery [Doc. 202-1 ¶ 18.]. They state that the motion "needed to be particularly robust because the [p]arties' prior requested extension had initially been denied, and when it was ultimately granted, Judge Corker cautioned the [p]arties that future requests would be met with strict scrutiny" [Doc. 202 p. 6]. They explain that the 11.1 hours involved "in large part[,] back-and-forth negotiation with [Defendant] Wesley, requiring extensive revisions on both sides" [*Id*.].

---

[4] The Court arrived at this figure as follows: Attorney New's 10.9 hours at $400 per hour + Attorney Silvestri's 28.8 hours at $400 per hour + Attorney Ganz's 10.7 hours at $300 per hour + Attorney Epstein's 2.0 hours at $500 per hour + Attorney Backman's 1.5 hours at $425 per hour + Attorney Vance's 6.3 hours at $295 per hour [Doc. 202-1 pp. 29–30].

10

Defendant Wesley responds that this motion "was a stipulated, straightforward motion" [Doc. 206 p. 16]. It states that much of the time was spent on "Plaintiffs' demands that their allegations of serious, intentional misconduct be included in the text without [Defendant] Wesley agreeing to them" [*Id.*]. Defendant Wesley suggests that Plaintiffs be awarded 4 hours for this motion [*Id.*].

The Court has reviewed Plaintiffs' time entries relating to the Joint Motion [*See* Doc. 202-1 pp. 29–30] and notes that Plaintiffs incurred approximately $4,545.50 for attorneys' fees on this filing [*see id.*].[5] The Court finds some of the time entries unreasonable. The Joint Motion was eleven pages in substance [Doc. 145], most of which outlined the case's history. While the Court declines to reduce the time for drafting the motion in light of the parties' acknowledgment that there was some back-and-forth between them about revisions, the Court finds that some of the time entries spent for strategizing, review, and internal correspondence—on a Joint Motion— unreasonable. The Court therefore reduces this time by 20% to account for this work, which results in a reduction of $909.10.

### C. Hearing before Judge Corker [Doc. 149]

Plaintiffs seek 4.8 hours associated with the January 30, 2023, hearing before Judge Corker [Doc. 202-1 ¶ 18.]. They state that two attorneys and local counsel attended and prepared on behalf of Plaintiffs [Doc. 202 p. 5.].

Defendant Wesley states that the telephonic conference before Judge Corker "was relatively brief" and that it "would have been much shorter but for one of Plaintiffs' counsel spending a significant amount of time attempting to give an overview to the District Court of the

---

[5] The Court arrived at this figure as follows: Attorney Silvestri's 6.7 hours at $400 per hour + Attorney Epstein's 1.5 hours at $500 per hour + Attorney Backman's 2 hours at $425 per hour + Attorney Vance's 1.9 hours at $295 per hour [Doc. 202-1 pp. 29–30].

11

allegations of intentional wrongdoing" [Doc. 206 p. 16]. Defendant Wesley proposes 1.5 hours for this telephone call [*Id*.].

The Court has reviewed the billing entries for preparing and attending the January 30 hearing before Judge Corker [*see* Doc. 202-1 p. 30] and notes that Plaintiffs incurred approximately $1,862.50 in attorneys' fees for this hearing [*see id*.].[6] According to Attorney Ritchie's Affidavit, the hearing lasted approximately 35 minutes [Doc. 206-1 ¶ 3], which is consistent with Plaintiffs' counsels' billing entries [*see* Doc. 202-1 p. 30.]. Given that the hearing was on a straightforward Joint Motion, the Court finds the participation of multiple attorneys excessive. In light of the time entries demonstrating Attorney Backman and Attorney Silvestri primarily prepared for the hearing [Doc. 202-1 p. 30], the Court will reduce Plaintiffs' award by $375 (which accounts for the 1.0 hour that Attorney Vance billed at $295 and the .2 that Attorney Silvestri billed at $400 for discussing the matter with Attorney Vance).

> D. **Opposition to the Motion for Sanctions and Related Filings [Docs. 150–152, 156]**

Plaintiffs seek 44.4 hours related to Defendant Wesley's opposition to the Second Motion to Compel and the related filings [Doc. 202-1 ¶ 18]. Plaintiffs state that "[Defendant] Wesley's opposition reversed course and again changed its story about its AEO designations" [Doc. 202 p. 7]. Plaintiffs explain that they "immediately began analyzing [Defendant] Wesley's response, and attempting to draft [the r]eply in support of its Motion for Sanctions, but given [Defendant] Wesley's ever-changing excuses, it became clear that discovery would likely be necessary to get to the bottom of what happened" [*Id*.]. Plaintiffs state that "[t]his necessitated [their] [m]otion to

---

[6] The Court arrived at this figure as follows: Attorney Backman's 1.9 hours at $425 per hour + Attorney Silvestri's 1.9 hours at $400 per hour +Attorney Vance's 1 hour at $295 per hour [Doc. 202-1 p. 30].

[s]tay . . . and associated response and reply" [*Id*.]. They seek over 44 hours "associated with dealing with the fall-out of Wesley's revelatory [o]pposition and resultant motion practice" [*Id*. (citation omitted)].

Defendant Wesley submits that its response to the Second Motion for Sanctions "led to Plaintiffs making additional filings and requesting a hearing, which ultimately led to the Court's solution of the AEO issue, and which mooted Plaintiffs' motions" [Doc. 206 p. 17.]. Instead of addressing the "matters in a straightforward manner[,]" Defendant Wesley asserts that Plaintiffs "continu[ed] to advance the seven claims and positions found by the Court to lack merit" [*Id*.]. With respect to the discovery that Plaintiffs sought due to its errors, Defendant Wesley states that it was cooperative with Plaintiffs [*Id*.]. It contends that Plaintiffs should be awarded "no more than 8 hours of time" for reviewing Defendant Wesley's filings and submitting a request for a hearing [*Id*.].

The Court has reviewed the time entries [*see* Doc. 202-1 pp. 30–31] and notes that Plaintiffs incurred approximately $17,037.00 in attorneys' fees on these issues [*See id*.].[7] Defendant Wesley's opposition [Doc. 150] was approximately fourteen pages in substance, but it included two declarations and email correspondence [Docs. 150-1 to 150-3]. Plaintiffs' Emergency Motion was approximately six pages in substance [Doc. 151] but includes an email [Doc. 151-1]; Defendant Wesley's response thereto was approximately seven substantive pages [Doc. 152]; and the reply was five pages in substances [Doc. 156].

After reviewing the time entries, the Court finds that some of the time entries are

---

[7] The Court arrived at this figure as follows: Attorney Silvestri's 18.2 hours at $400 per hour + Attorney Ganz's 7.6 hours at $300 per hour + Attorney Backman's 9.3 hours at $425 per hour + Attorney New's 1 hour at $400 per hour + Attorney Vance's 5 hours at $295 per hour + Attorney Epstein's 3.3 hours at $500 per hour [Doc. 202-1 pp. 30–31].

13

unreasonable. For example, four attorneys billed to review Defendant Wesley's opposition—Backman, Epstein, Silvestri, and Vance [Doc. 202-1 pp. 20–22]. While the Court acknowledges that Defendant Wesley's opposition was significant to the case, it is not clear to the undersigned why it was necessary that four attorneys review it. Further, there are too many instances (i.e., over 20 entries) relating to internal correspondence/communications and strategy [*See id.*].

Given the multiple billing entries, the Court has not endeavored to reduce the time on a line-by-line basis. *See Howe v. City of Akron*, 705 F. App'x 376, 382–83 (6th Cir. 2017) ("Requiring the district court to parse the bills in even greater detail would be tantamount to requiring a complete audit. This court has approved the across-the-board approach to fee determinations in the past."). The Court finds a 10% reduction (or $1,703.70) appropriate. The Court declines to make further reductions given that Defendant Wesley's opposition reversed the case's course, and some internal conferences and strategies sessions were warranted.

### E. Time for the April 4, 2023 Hearing

Plaintiffs' time entries reflect 80.8 hours related to preparing for and appearing at the April 4, 2023 hearing, before the undersigned [Doc. 202-1 p. 7]. Pursuant to the Sanctions Order, however, Plaintiffs are only seeking half this time [Doc. 202 p. 8]. They argue, "The significance of this hearing cannot be overstated" [*Id.* at 7]. According to Plaintiffs, Defendant Wesley acknowledged at the hearing that it cannot determine when Plaintiffs terminate contracts [*Id.*]. Plaintiffs state that "[t]his admission ultimately obviated the need for [them] to present the substantial majority of the evidence that it had prepared, and essentially mooted [their] motion for sanctions" [*Id.*].

Defendant Wesley responds that "the time for Plaintiffs' counsel spent preparing to advance the seven claims[,] which the Court rejected would not be reasonable or fair" [Doc. 206

14

Case 3:20-cv-00251-DCLC-DCP   Document 362   Filed 03/21/25   Page 14 of 17
PageID #: 8392

pp. 17–18]. "[It] acknowledges that it may be the Court's intention to allow Plaintiffs' counsel half of the time they were in attendance for the April 4 hearing without regard for the particular arguments made at the hearing itself since Plaintiffs' counsel needed to be present, at a minimum, to discuss the issues, and ultimately, to hear and agree to the solution devised by the Court" [*Id*. at 18]. If so, Defendant Wesley "submits that 9 hours of in-court time (half of the 18 total hours—6 for each Plaintiffs' three counsel), plus an additional 4 hours for half of the two out-of-town attorneys' travel time, for a total of 13 hours is reasonable for the hearing itself [*Id*.].

With respect to preparing for the hearing, "[Defendant] Wesley submits that the lion's share of Plaintiffs' preparation time was expended on claims that the Court rejected—including but not limited to the demonstrative exhibit prepared in an effort to advance claims of intentional misconduct and to eliminate AEO designations from the Discovery Confidentiality Order" [*Id*.]. According to Defendant Wesley, "at most, two full days—16 hours—would be a reasonable amount of time to prepare for the hearing overall and, accordingly, 8 hours is an appropriate amount of time to award as half of the preparation time for the hearing as provided in the Court's [Sanction] Order [*Id*. at 18–19].

The Court has reviewed Plaintiffs' counsels' time entries [*see* Doc. 202-1 pp. 31–32] and notes that Plaintiffs incurred appropriately $33,883.00 in attorneys' fees for preparing and attending the hearing [*See id*.].[8] As noted above, the Court awarded Plaintiffs half of their time for preparing and attending the hearing [Doc. 194 p. 26], and therefore, they only seek approximately $16,941.50. The Court observes that the April 4 hearing lasted approximately 4

---

[8] The Court arrived at this figure as follows: Attorney Silvestri's 36.7 hours at $400 per hour + Attorney Epstein's 28.5 hours at $500 per hour + Attorney Backman's 2.7 hours at $425 per hour + Attorney Vance's 12.9 hours at $295 per hour [Doc. 201-2 p. 31–32]. Half of this amount equals $16,941.50.

hours—half of which is 2 hours [*See* Doc. 169].[9] Despite that, Plaintiffs' counsel requests that the Court award it approximately 40 hours—five workdays—for time spent preparing for and attending the hearing.

With respect to the preparation, although the Court has noted that the hearing was not long, the undersigned acknowledges that the brevity of the hearing was due to the Court's proposal to modify the Protective Order, thereby obviating the need for the parties to argue over the other matters for which they prepared (i.e., Plaintiffs' request for discovery into Defendant Wesley's errors). But five workdays to prepare for a hearing wherein counsel had already billed for reviewing and analyzing all the pertinent filings appears unreasonable.

As noted above, the Court has carefully reviewed all the time entries for the April 4 Hearing [*See* Doc. 202-1 pp. 31–32]. Much of the time was spent on internal communications, including with Attorney Backman, who did not attend the hearing, and preparing demonstrative exhibits that the Court found to be unhelpful. Considering the number of entries for the April 4 Hearing, the Court has not endeavored to reduce them by line item. *See Howe*, 705 F. App'x at 382–83. But given the magnitude of the hearing and the complexity of the issues, the Court will only reduce the hours by 25% of the requested amount of $16,941.50, or a $4,235.38 reduction.

## III. CONCLUSION

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Determine Amount of Attorneys' Fees Pursuant to Order Awarding Discovery Sanctions [**Doc. 202**]. Specifically, the Court has subtracted $909.10 for the Joint Motion, $375 for the hearing before Judge Corker, $1,703.70 for the Opposition and related filings,

---

[9] Specifically, the hearing started at 9:30 and concluded at 2:30, but the Court and the parties took an hour lunch break [Doc. 169].

and $4,235.38 for the April 4 hearing from Plaintiffs' requested amount of $62,973.00.  The Court

**AWARDS** Plaintiffs $55,749.82.

    **IT IS SO ORDERED.**

                               ENTER:

                               _____
                               Debra C. Poplin
                               United States Magistrate Judge