UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:20-CV-00251-DCLC-DCP ) |
| WESLEY FINANCIAL GROUP, LLC, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Bench Trial Pursuant to Rule 39(a)(2) [Doc. 340], Defendants' Response in Opposition [Doc. 349], and Plaintiffs' Reply [Doc. 351]. For the reasons herein, the Court will grant Plaintiffs' motion.

**I. BACKGROUND**

Diamond Resorts is one of the world's largest hospitality companies, with hundreds of resorts that span thirty-five countries. [Second Am. Compl., Doc. 103, ¶ 26]. Plaintiff Diamond Resorts Management, Inc., "manages timeshare resorts" within Diamond Resorts's family of companies. [*Id.* ¶ 27]. Diamond Resorts's properties are "allocated into groupings of resorts called Collections," which include Plaintiff Diamond Resorts U.S. Collection Development, LLC, and Plaintiff Diamond Resorts Hawaii Collection Development, LLC. [*Id.* ¶ 29]. The U.S. Collection Development is a points-based program that offers their customers resorts throughout the United States, and Hawaii Collection Development is a points-based program that offers resorts in Hawaii, Nevada, and Arizona. [*Id.* ¶ 30].

Plaintiffs accuse Defendants Wesley Financial Group, LLC, and Charles William McDowell, III of "engag[ing] in a deceptive timeshare cancellation business" that induces

Diamond Resorts's timeshare owners to breach their contractual agreements with Diamond Resorts. [*Id.* ¶ 36]. "For this," Defendants allegedly "exact[] exorbitant, up-front fees." [*Id.* ¶ 3]. Plaintiffs bring suit against Defendants for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a),[1] for violation of the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-191 *et seq.*, and for the unauthorized practice of law and improper conduct, in violation Tennessee Code Annotated § 23-3-101 *et seq.* [*Id.* at 20–52]. In seeking relief for these claims, they request an injunction, monetary damages, the disgorgement of Defendants' profits, and attorneys' fees and costs. [*Id.* ¶¶ 102, 123, 132].

Defendants demanded a jury trial in response to Plaintiffs' allegations, [Answer, Doc. 105, at 1], but Plaintiffs have since notified the Court that they no longer plan to pursue "legal relief (*i.e.* a judgment for monetary damages)" and will instead pursue "equitable relief" in the forms of an injunction, disgorgement, attorneys' fees, and costs. [Pls.' Notice, Doc. 263, at 2]; *see* [Pls.' Mot. at 4 ("The only remedies still being sought in this case are injunctive relief, disgorgement, and an ancillary request for attorneys' fees and costs.")]. Plaintiffs now move the Court for a bench trial in pursuit of these forms of relief, and they urge the Court to strike Defendants' demand for a jury trial, claiming that Plaintiffs' "withdraw[al] [of] all requests for legal relief against Defendants" means "there is no right to a trial by jury." [Pls.' Mot. at 1]. Defendants oppose Plaintiffs' motion. Having carefully considered the parties' arguments, the Court is now prepared to rule on Plaintiffs' motion.

---

[1] Section 1125(a) states: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

## II. LEGAL STANDARD

"The right to a jury trial is guaranteed by the Seventh Amendment," *Allied Indus. Workers v. Gen. Elec. Co.*, 471 F.2d 751, 755 (6th Cir. 1973), which states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," U.S. Const. amend. VII. The Seventh Amendment's guarantee of the right to a jury trial "occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Allied Indus. Workers*, 471 F.2d at 755 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). The right to a jury trial, however, does not reside solely in the Seventh Amendment; it extends to statutes in which Congress has created that right. *See Curtis v. Loether*, 415 U.S. 189, 194 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.").

When determining whether a right to a jury trial exists for a particular cause of action, the Court does not first consult the Seventh Amendment; rather, in deference to the doctrine of constitutional avoidance, it considers whether a statutory source supplies the right to a jury trial. *See Tull v. United States*, 481 U.S. 412, 417 n.3 (1987) ("Before initiating the inquiry into the applicability of the Seventh Amendment, '[w]e recognize, of course, the 'cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" (alterations in original) (quotation omitted)); *see generally Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) (stating that "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision" (citation omitted)). If a statute does allow for a trial by jury, then the Court's analysis is at an

end. *See Curtis*, 415 U.S. at 194 ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies[.]"). But if it does not, then the Court must probe the Seventh Amendment.

Again, the Seventh Amendment preserves the right to a jury trial in "Suits at common law," U.S. Const. amend. VII, which means "suits in which *legal* rights were to be ascertained and determined," and not suits in which "equitable rights alone were recognized, and equitable remedies were administered." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998) (quotation omitted). The Seventh Amendment's promise of a jury trial therefore applies to "common-law causes of action" but not to causes of action "customarily heard by courts of equity or admiralty." *Id.* (quotation omitted). To determine whether legal or equitable rights are in play in any given action, the Court "must examine both the nature of the action and of the remedy sought," an examination that consists of a twofold inquiry. *Tull*, 481 U.S. at 417.

First, the Court compares the action to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," with the aim of ascertaining how the courts of England treated the action before the Seventh Amendment's ratification. *Id.* (citations omitted).[2] "[A]ctions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." *Id.* (citation omitted). "Where history does not provide a clear answer, [courts] look to precedent and functional considerations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 718 (1999) (citation omitted). Second, the Court "examine[s] the remedy sought and determine[s] whether it is equitable in nature." *Tull*, 481 U.S. at 417–18 (citations and footnote omitted). "Th[is] second inquiry is the more

---

[2] "This analysis applies not only to common-law forms of action, but also to causes of action created by congressional enactment," i.e., statutes. *Tull*, 481 U.S. at 417 (citation omitted).

important" of the two. *Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, 565 (1990) (citation and footnote omitted).

After performing this two-part inquiry, the Court has license under Federal Rule of Civil Procedure 39(a)(2) to strike a jury demand at any time if it determines that "there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2); *see CommmonSpirit Health v. HealthTrust Purchasing Grp., L.P.*, No. 3:21-cv-00460, 2022 WL 617113, at *2 n.2 (M.D. Tenn. Mar. 2, 2022) ("Rule 39 clearly gives the court the requisite authority to consider the defendant's motion [to strike the jury demand]," and "the court has no need to consider whether the motion also fits under Rule 12(f)."). The movant carries the burden of establishing that no right exists to a jury trial, *Trott v. Deutsche Bank, AG*, 2024 WL 1313040, at *8 (S.D.N.Y. Mar. 26, 2024), and "as the right of jury trial is fundamental," the Court "indulge[s] every reasonable presumption" in favor of finding a right to a jury trial, *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937) (footnote omitted).

### III. ANALYSIS

As an initial matter, the Court notes that Defendants maintain that they are entitled to a jury trial on only one of Plaintiffs' claims: the claim for false advertising under § 1125(a) of the Lanham Act. [Defs.' Resp. at 1, 7]. And narrower still, Defendants contend, under the Seventh Amendment, that they hold a constitutional right to have a jury hear only Plaintiffs' entitlement to disgorgement as it applies to Plaintiffs' claim of false advertising. *See* [Defs.' Resp. at 6 ("Defendants have a constitutional right to a jury because Plaintiffs' claim for *disgorgement* or accounting of profits seeks a remedy that is legal." (emphasis added)); *id.* at 10 ("The circumstances of this case confirm that Plaintiffs' *disgorgement* claim should be viewed as a

5

legal action." (emphasis added))]. The Court will therefore confine its analysis to the claim of false advertising and the remedy of disgorgement under the Lanham Act.

**A. Statutory Right to a Jury Trial under the Lanham Act**

Contending that disgorgement is equitable in nature, Plaintiffs start by pointing to the language in 15 U.S.C. § 1117(a) of the Lanham Act. [Pls.' Mot. at 5–6]. Defendants cite this same subsection of the Lanham Act to assert that disgorgement is instead legal in nature. [Defs.' Resp. at 4–6]. Section 1117(a) states:

> (a) Profits; damages and costs; and attorney fees
>
> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation ***under section 1125(a)*** or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and ***subject to the principles of equity***, to recover ***(1) defendant's profits***, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (emphasis added).[3]

---

[3] A separate subsection of the Lanham Act, 15 U.S.C. § 1116(a), governs the remedy of injunctive relief: "The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, ***according to the principles of equity*** and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office ***or to prevent a violation under subsection (a)***, (c), or (d) ***of section 1125*** of this title." 15 U.S.C. § 1116(a) (emphasis added).

Under these subsections, and under the Lanham Act more broadly, Plaintiffs insist that "no court—*not even one*—has ever held" that the Lanham Act creates a statutory right to a jury trial. [Pls.' Reply at 1]. Defendants, implicitly, appear to acknowledge as much because they do not cite any case in which a federal court has held that Congress has enshrined a right to a jury trial in the Lanham Act. Instead, their argument, by their own admission, is "based on the language and structure of the Lanham Act," [Defs.' Resp. at 4], or in other words, based on statutory interpretation, [*id.* at 5–6]. But "[c]anons of construction need not be conclusive and are often countered, of course, by some maxim pointing in a different direction." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001); *see* Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons of About How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 399 (1950) (launching a now-famous attack against judicial canons of statutory interpretation and noting that for each canon of statutory interpretation, an opposite canon exists and "lead[s] in [a] happily variant direction[]").

In addition, and more importantly, the Lanham Act contains no mention of a right to a jury trial, and several district courts have recognized its silence on the subject. *See, e.g.*, *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 287–88 (D. Del. 2006) ("[T]he Lanham Act is silent on whether a cause of action for false advertising . . . requires trial by a jury." (citations omitted)); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 344 (D.N.J. 2001) ("[T]he language of [the Lanham Act] makes no mention of a trial by jury."); *Daisy Grp., Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 550 (S.D.N.Y. 1998) ("It is undisputed that the [Lanham Act] is silent on the issue of jury trial."). Congress has shown that it knows how to provide litigants with a right to a jury trial when it wants to, *see* 28 U.S.C. § 636(a)(3), (c)(1) (specifically granting Article I courts the authority to conduct jury trials); *id.* § 1411(a)

7

(explicitly providing for a jury trial of personal injury and wrongful-death claims); 42 U.S.C. § 1981a(c)(1) (stating that "any party may demand a trial by jury"), so its silence on that score in the Lanham Act is conclusive, *see Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling." (internal quotation marks omitted) (quoting *Griffith v. United States*, 206 F.3d 1389, 1394 (11th Cir. 2000))); *see also Lehman v. Nakshian*, 453 U.S. 156, 162–63 (1981) ("Congress . . . demonstrated that it knew how to provide a statutory right to a jury trial when it wished to do so," but in the statute at issue, "it failed explicitly to do so." (citations and footnote omitted)); *Matter of Grabill Corp.*, 967 F.2d 1152, 1155 (7th Cir. 1992) ("In other circumstances, Congress has seen fit to employ explicit language in providing for jury trial authority. . . . We are entitled to assume that Congress legislate[s] with care . . . and that had it intended to provide for jury trials in [the statute at issue], it would 'not [have] left the matter to mere implication.'" (citations and footnote omitted) (quoting *Palmore v. United States*, 411 U.S. 389, 396 (1973))); *cf. Gomez v. United States*, 490 U.S. 858, 875–76 (1989) ("The absence of a specific reference to jury selection in the statute . . . persuades us that Congress did not intend . . . to embrace this function."). The Court therefore rejects Defendants' contention that the Lanham Act's language and structure create a statutory right to a jury trial when the remedy of disgorgement is at issue under the Lanham Act.

### B. The Seventh Amendment

The Court now shifts its analysis to the Seventh Amendment, under which the parties strenuously dispute whether a jury must consider Plaintiffs' entitlement to disgorgement under the Lanham Act. Again, the Court's analysis is twofold, and it asks (1) whether claims for disgorgement under the Lanham Act "are analogous to 18th-century cases tried in courts of

8

Case 3:20-cv-00251-DCLC-DCP    Document 393    Filed 05/07/25    Page 8 of 18
PageID #: 9620

equity" and, more significantly, (2) whether claims for disgorgement under the Lanham Act are "equitable in nature." *Tull*, 481 U.S. at 417–18 (citation omitted). Plaintiffs focus most heavily on the second prong, contending that disgorgement is equitable in nature. [Pls.' Mot. at 5–8]. Plaintiffs also maintain that the Sixth Circuit, in *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235 (6th Cir. 1991), has already held that no right to a jury trial exists for a claim of disgorgement under the Lanham Act. [Pls.' Mot. at 4–5]. Defendants, however, argue that disgorgement is a legal, not equitable, remedy, both as a matter of law and under the circumstances of this case. [Defs.' Resp. at 6–10]. They also assert that *Ferrari* is "not dispositive." [*Id.* at 11].

    1. <u>Comparison to 18th Century Actions</u>

  In attempting to satisfy the first prong of the analysis, Plaintiffs acknowledge that "the right to [a] jury trial ultimately hinges on whether the remedy sought is considered legal or equitable based on how it was treated historically," [Pls.' Mot. at 4], and they cite *Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017), [*id.* at 6]. In *Osborn*, the Sixth Circuit considered the "historical treatment of" disgorgement as a "remedy prior to the enactment of the Seventh Amendment," and it observed that "in 18th century chancery courts, what [modern-day courts] now call disgorgement was embodied in the remedies of 'accounting, constructive trust, and restitution,'" which "were almost universally recognized as being within the ambit of courts of equity." 865 F.3d at 462 (quotation omitted). In short, the Sixth Circuit, through its historical analysis, confirmed that England's 18th-century courts treated claims of disgorgement, or their remedial analogs, as equitable in nature, and it held that "a jury trial was not required for Plaintiff's . . . claims" because "actions seeking disgorgement of ill-gotten gains are equitable in nature." *Id.* at 461 (citing *Chauffeurs*, 494 U.S. at 570).

9

But the more pertinent, context-specific issue is how the England's 18th-century courts treated *actions* for trademark-related disputes when parties sought disgorgement as a remedy in those actions. *See Tull*, 481 U.S. at 417 ("First, we compare the statutory *action* to 18th-century *actions* brought in the courts of England prior to the merger of the courts of law and equity." (emphasis added) (citations omitted)). Specifically in the context of trademark-infringement actions, the Sixth Circuit has recognized that, "prior to statutory protection for trademarks," English and American courts "treated the damages portion of such suits as an equitable action in the nature of an accounting." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 364 (6th Cir. 1985).[4] And "[c]onsistent with this history of trademark law," *id.*, the Lanham Act allows for disgorgement "subject to the principles of equity" for claims of false advertising under § 1125(a), 15 U.S.C. § 1117(a).

In Defendants' view, though, any insight into how English courts treated trademark-infringement actions is meaningless because Plaintiffs' claim is not for trademark infringement but false advertising. [Defs.' Resp. at 7, 11]. Defendants argue, without citing case law, that false-advertising claims "are analogous to common law actions against injurious falsehoods," [*id.* at 7], and relying on a state-court case, they maintain that "equity had no jurisdiction to hear" these types of claims, [*id.* (quoting *Preston Hollow Cap. LLC v. Nuveen LLC*, No. CV 2019-0169-SG, 2019 WL 3801471, at *9 (Del. Ch. Aug. 13, 2019))].

But the Supreme Court has acknowledged that "the Lanham Act treats false advertising as a form of unfair competition," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572

---

[4] "Despite this pervasive equity background," the Sixth Circuit went on to state that "the damages or accounting aspect of trademark infringement actions are considered legal actions for purposes of the jury trial clause of the Seventh Amendment." *Tandy Corp.*, 769 F.2d at 364. This statement concerns the second prong of this Court's two-part inquiry—that is, whether the remedy of disgorgement is equitable in nature—and the Court will go on to address it under that prong.

10

Case 3:20-cv-00251-DCLC-DCP    Document 393    Filed 05/07/25    Page 10 of 18
PageID #: 9622

U.S. 118, 136 (2014), and unfair competition is analogous to trademark infringement, *see Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("[W]e use the same test to decide whether there has been trademark infringement" or "unfair competition[.]" (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992))); *see also AstraZeneca*, 444 F. Supp. 2d at 288 ("[F]alse advertising under the Lanham Act is a statutory tort, most similar to common law causes of action for false advertising and *trademark infringement*.'" (emphasis added) (citation omitted)). In the end, the Court need only "determine whether the particular issues, or *analogous* ones, were decided" in law or in equity "at the time the Seventh Amendment was adopted," *City of Monterey*, 526 U.S. at 718 (emphasis added), and trademark-infringement actions are sufficiently analogous to false-advertising actions under the Lanham Act, *Lexmark Int'l*, 572 U.S. at 136; *Audi AG*, 469 F.3d at 542. The Sixth Circuit has already performed the relevant historical analysis of trademark-infringement actions, *Tandy*, 769 F.2d at 364, as well as the relevant historical analysis for the remedy of disgorgement, *Osborn*, 865 F.3d at 462, and consistent with these analyses, this Court concludes, as it must, that a claim of disgorgement in the trademark-infringement context is "analogous to 18th-century cases tried in courts of equity," *Tull*, 481 U.S. at 417 (citation omitted).

### 2. The Nature of the Remedy Sought

Next, under the second prong of the two-part inquiry, the Court examines whether claims for disgorgement under the Lanham Act are "equitable in nature." *Id.* at 418. Again this part of the inquiry is "the more important" of the two, *Chauffeurs*, 494 U.S. at 565 (citation and footnote omitted), and under it, the parties' central dispute is whether *Ferrari* is dispositive. In *Ferrari*, the Sixth Circuit determined that a defendant was "not entitled to a jury trial" in a trademark-infringement action under the Lanham Act because the plaintiff had "requested only

11

Case 3:20-cv-00251-DCLC-DCP    Document 393    Filed 05/07/25    Page 11 of 18
PageID #: 9623

equitable relief," specifically "an injunction and disgorgement of profits." 944 F.2d at 1248. Plaintiffs argue that *Ferrari* "ma[kes] clear" that a claim of disgorgement under the Lanham Act is equitable in nature, [Pls.' Reply at 2], whereas Defendants maintain that *Ferrari* is off point because it "was about trademark infringement, not false advertising," [Defs.' Resp. at 11].

*Ferrari* is dispositive. Again, false advertising and trademark infringement are both variants of unfair competition, *Lexmark Int'l*, 572 U.S. at 136; *Audi AG*, 469 F.3d at 542; *AstraZeneca*, 444 F. Supp. 2d at 288, so they are analogous in substance. They are also analogous in the redress they offer—meaning that the remedies available under § 1117(a) of the Lanham Act, including the remedy of disgorgement, are identical for false advertising and trademark infringement. *See Gnesys, Inc. v. Greene*, 437 F.3d 482, 488–89 (6th Cir. 2005) (recognizing that § 1117(a) "concerns false representation by those engaged in commerce" and "is not limited to trademark issues" (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28–29 (2003))).

The Court therefore is loath to accept Defendants' restrictive reading of *Ferrari*, and other courts, too, have not taken a provincial reading of *Ferrari*. *See, e.g.*, *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358 (11th Cir. 2019) ("The two Courts of Appeals that have addressed this precise question—the Sixth and Ninth Circuits—have agreed with our conclusion that a claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, that the Seventh Amendment's guarantee of a jury trial does not apply." (citing *Ferrari*, 944 F.2d at 1248)); *Lucky's Detroit, LLC v. Double L Inc.*, No. 09-14622, 2014 WL 4854982, at *3 (E.D. Mich. Sept. 30, 2014) ("Defendant has asked for a jury trial, but it appears that the remaining damages sought by Defendant are the

disgorgement of Plaintiff's profits, if any. As the disgorgement of profits is an equitable remedy, Defendant is not entitled to a jury trial on that issue." (citing *Ferrari*, 944 F.2d at 1248)); *see also Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 471–472 (6th Cir. 2022) (relying on *Ferrari* for the principle that, in a suit under the Lanham Act, "an accounting of profits has traditionally been viewed as an equitable remedy," and "several cases have noted that parties lack a right to a jury trial for an accounting of profits" (citing *Ferrari*, 944 F.2d at 1248)).

In any case, Defendants' argument fails for another reason. Unlike the first prong of the two-part inquiry, the second prong requires the Court to focus on the *remedy* sought, not the underlying cause of action—i.e., false advertising versus trademark infringement—that serves as the catalyst for the remedy. *Compare Tull*, 481 U.S. at 417 ("First, we compare the statutory *action* to 18th-century *actions* brought in the courts of England prior to the merger of the courts of law and equity." (emphasis added) (citations omitted)), *with id.* at 417–18 ("Second, we examine the *remedy* sought and determine whether it is legal or equitable in nature." (emphasis added) (citations omitted)). The Supreme Court, the Sixth Circuit, and a chorus of other courts have stated, without qualification, that disgorgement is an equitable remedy. *See Liu v. SEC*, 591 U.S. 71, 80 (2020) ("[D]isgorgement . . . simply 'restor[es] the status quo,' thus situating the remedy squarely within the heartland of equity." (second alteration in original) (footnote and quotation omitted))); *Chauffeurs*, 494 U.S. at 570 ("[W]e have characterized damages as equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits.'" (second alteration in original) (quotation omitted)); *Osborn*, 865 F.3d at 461 ("The weight of authority holds that actions seeking disgorgement of ill-gotten gains are equitable in nature." (citations omitted)); *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 423 (6th Cir. 2010)

13

("A prevailing plaintiff in a trademark infringement case may, under certain circumstances, recover a defendant's profits subject to the principles of equity." (citing 15 U.S.C. § 1117(a)); *see also Hard Candy*, 921 F.3d at 1358 ("[A] claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore . . . the Seventh Amendment's guarantee of a jury trial does not apply." (citing *Ferrari*, 944 F.2d at 1248)).

Even so, Defendants argue that disgorgement is not always an equitable remedy. They cite language from the Sixth Circuit's opinion in *Tandy*, in which the Sixth Circuit stated that "[d]espite this pervasive equity background [in trademark actions], the damages or accounting aspect of trademark infringement actions are considered legal actions for purposes of the jury trial clause of the Seventh Amendment." *Tandy*, 769 F.2d at 364. In making this statement, the Sixth Circuit relied on the Supreme Court's decision in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). *Tandy*, 769 F.2d at 364; *see* [Defs.' Resp. at 8 (noting that the Sixth Circuit in *Tandy* was "[r]elying on *Dairy Queen*")]. In *Dairy Queen,* the Supreme Court held that "a plaintiff, by asking in his complaint for an equitable accounting for trademark infringement, could not deprive the defendant of a jury trial on contract claims subsumed within the accounting." *Chauffeurs*, 494 U.S. at 589 (Kennedy, J., dissenting). In short, *Dairy Queen* was an action for compensatory damages. *See Feltner*, 522 U.S. at 346 (describing *Dairy Queen* as an "action for damages for trademark infringement"); *Curtis*, 415 U.S. at 198 (referring to *Dairy Queen* as a "damages action[]").

Plaintiffs, however, assert that they are no longer pursuing compensatory damages, so Defendants, by invoking *Dairy Queen*, appear to be skeptical of this assertion—and to call on the Court to be just as skeptical. *See* [Defs.' Resp. at 10 (arguing that "Plaintiffs' disgorgement claim is functionally equivalent to a claim for legal damages" and "is a proxy for [Plaintiffs']

damages")]. In *Dairy Queen*, the Supreme Court was itself skeptical of Dairy Queen's claim because it had shades of a breach-of-contract claim and a trademark-infringement claim all in one, but the Supreme Court declined to resolve the "ambiguity" in this claim because it was certain that Dairy Queen's request for a "money judgment" was "wholly legal in its nature however the complaint [was] construed." *Dairy Queen*, 369 U.S. at 476–77.

Like the Supreme Court in *Dairy Queen*, this Court, at this time, declines to resolve whatever ambiguity, if any, resides in Plaintiffs' claims for false advertising and disgorgement because the Lanham Act confines Plaintiffs' proof to "sales." *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only[.]"). In other words, evidence of compensatory damages arising from any breach of contract will be off the table at trial. Defendants, too, acknowledge that the Lanham Act does not require admission of evidence of compensatory damages for breach of contract, recognizing that "one important difference" between compensatory damages and the disgorgement of profits is that, "[f]or disgorgement, 'the plaintiff shall be required to prove defendant's sales only[.]'" [Defs.' Resp. at 6 (quoting 15 U.S.C. § 1117(a))]. Still, the Court remains mindful that Plaintiffs accuse Defendants of inducing Diamond Resorts's timeshare owners to breach their contracts with Diamond Resorts. [Second Am. Compl. ¶ 36]. At least some of the evidence of Defendants' sales will, presumably, consist of the fees—i.e., the sales—that Defendants allegedly charge these owners upon advising them how to breach their contracts. *See* [*id.* ("[Defendants are] engaged in a deceptive timeshare cancellation business designed to induce existing Diamond Resorts' owners to breach their agreements with, and related obligations to, Diamond Resorts, and instead pay large, upfront fees to [Defendants].")].

15

If the Court discovers either ahead of trial or during trial that Plaintiffs are embracing theories of breach of contract to arrive at lost profits, the Court will have no compunction about vacating this Order and convening a jury for the trial. *See Dairy Queen*, 369 U.S. at 472–73 ("[W]here both legal and equitable issues are presented in a single case . . . . the right to a jury trial of legal issues [cannot] be lost" by a plaintiff's co-mingling of the legal issues with the equitable issues, even if the legal issues are only "incidental" to the equitable issues.); *Black & Decker Corp. v. Positec USA Inc.*, 118 F. Supp. 3d 1056, 1066 (N.D. Ill. 2015) ("The Lanham Act's creation of an alternative evidentiary regime—one meant to facilitate the recovery of a plaintiff's loss—should not strip a party of its constitutional right to what is otherwise essentially a request for damages."). In the proposed pretrial order, the Court expects Plaintiffs to take particular care in articulating their theory of the case as it relates to lost profits. The Court will resolve any doubts in favor of a jury trial. *See Allied Indus. Workers*, 471 F.2d at 755 (stating that the Seventh Amendment's guarantee of the right to a jury trial "occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care" (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)); *Black & Decker*, 118 F. Supp. 3d at 106 ("[T]he 'federal policy favoring jury trials is of historic and continuing strength,' and the risk of error is greater when denying rather than recognizing a constitutional right." (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963))).

Finally, Defendants raise various supplemental arguments to counter Plaintiffs' request for a bench trial, but none of them is persuasive. First, Defendants question Plaintiffs' decision to suddenly "drop[] their damages claims after nearly four years of litigation," asserting that it is an underhanded tactic and that Defendants want to avoid a jury "because of the difficulties of proving those damages" and because "they know how much they are disdained by the public."

16

[Defs.' Resp. at 13–14]. Rule 39(a)(2), however, imposes no deadline on Plaintiffs for the filing of a motion to strike a jury demand. *See Dawson v. Assured Partners, NL, LLC*, No. 1:17-cv-00676, 2021 WL 1854884, at *11 (S.D. Ohio May 10, 2021) ("Rule 39(a)(2) does not establish a deadline for the filing of a motion to strike the jury demand." (citation omitted)); *Police & Fire Ret. Sys. of City of Detroit v. Watkins*, No. 08-12582, 2013 WL 817929, at *2 (E.D. Mich. Mar. 5, 2013) ("Rule 39(a)(2) does not limit the time by which a party must object to a jury demand, and a motion to strike a jury may be filed at anytime[.]")). Second, Defendants argue that "disgorgement is best viewed as legal, not equitable," because § 1117(a) of the Lanham Act describes an award of profits as "compensation," [Defs.' Resp. at 11 (quoting 15 U.S.C. § 1117(a))], but they cite no case law for this argument, *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)). And third, Defendants invite the Court to exercise its discretion to empanel an advisory jury, *see* Fed. R. Civ. P. 39(c)(1) ("In an action not triable of right by a jury, the court . . . may try any issue with an advisory jury."), but they do not adequately explain why an advisory jury—at taxpayer expense—is necessary when Plaintiffs have satisfied the Supreme Court's legal requirements for a non-jury trial. Having satisfied these requirements, Plaintiffs are entitled to a trial without a jury.

## IV. Conclusion

As the movants under Rule 39(a)(2), Plaintiffs have met their burden of establishing their entitlement to a non-jury trial on the equitable remedies that they seek under the Lanham Act: an injunction, disgorgement of Defendants' profits, and attorneys' fees and costs. Plaintiffs'

17

Motion for Bench Trial Pursuant to Rule 39(a)(2) [Doc. 340] is therefore **GRANTED**. The trial, which remains set for Monday, April 20, 2026, at 9:00 a.m., will be a bench trial for equitable relief. Defendants' demand for a jury trial is hereby **STRICKEN**.

    **SO ORDERED:**

s/ Clifton L. Corker
United States District Judge
