UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:20-CV-251-DCLC-DCP ) |
| WESLEY FINANCIAL GROUP, LLC, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Compel Plaintiffs to Answer Rule 30(b)(6) Deposition Questions to which Privilege Objections were Improperly Asserted [Doc. 372]. Plaintiffs responded in opposition to the motion [Doc. 400], and Defendants replied [Doc. 406]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.2(a). For the reasons set forth below, the Court **DENIES** the motion [**Doc. 371**].

I.    BACKGROUND

According to Defendants, "In 2018, [Plaintiffs] formed an internal group to monitor third-party exit companies" [Doc. 445-7 p. 5]. Defendants state that this "group met every other week and was called the Bi-Weekly TPE Leadership Group[,]" and that they "kept minutes of its meetings" [*Id.* (citation omitted)]. They assert that "[b]y early 2019, the TPE Leadership Group shared information about TPEs, including [Defendant] Wesley, with [American Resort Development Association]" ("ARDA") [*Id.* (citation omitted)]. In addition, Defendants claim, "By May 2019, members of the TPE Leadership Group were working with ARDA on presentations to

state attorneys general" [*Id*.]. Further, Defendants state that "[d]ocuments produced by ARDA indicate that by no later than May 2019, [Plaintiffs], directly or through ARDA, was asking state attorneys general to investigate and prosecute TPEs, including [Defendant] Wesley" [*Id*. (citation omitted)].

Following several discovery dispute hearings, Defendants served the Second Amended Notice of Rule 30(b)(6) Audio and Video Deposition of Plaintiffs [Doc. 370-1]. One of the topics noticed, Topic No. 30, related to the TPE Leadership Group:

> The TPE leadership group formed within Diamond, including but not limited to when it was formed, who were its members, how often it met, what notes or minutes of meetings were prepared and where they are maintained, and whether Wesley or McDowell was ever discussed at meetings or whether the group exchanged emails about Wesley or McDowell.

[*Id*. at 6].

The parties proceeded with deposing Bradford Harris, Plaintiffs' Rule 30(b)(6) witness, on July 18, 2024 [Doc. 397-1 SEALED]. During the deposition, Defendants asked whether the TPE Leadership Group discussed Defendant Wesley:

> Q. Was Wesley Financial Group ever discussed at a meeting of the TPE leadership group?
>
> MR. BACKMAN:·I'm going to object. Privileged. Other than the one e-mail that was produced in the case, we claimed privilege over these meetings and the substance of them throughout the lawsuit. We're going to maintain that. I'm going to instruct him not to answer.
>
> MR. STOVALL: My question for now is just, not what was discussed –
>
> MR. BACKMAN: Was Wesley discussed?
>
> MR. STOVALL: Was Wesley discussed?

2

> MR. BACKMAN: That is what was discussed. So I'm going to maintain my objection. You understand what I'm saying, in terms of what you're asking. Your question calls for factual information of what may or may not have been discussed at a meeting to be disclosed, the fundamental premise of your question. I'm going to maintain my objection and instruct him not to answer. But you have one e-mail where you already know the answer.
>
> . . .
>
> MR. STOVALL: I think Mr. Harris said that he found Wesley came up before then.
>
> MR. BACKMAN: I'm not sure that's what he said.
>
> MR. STOVALL: I think he said it was August.

[Doc. 445-7 pp. 6–7 (emphasis omitted) (quoting Doc. 397-1 p. 53 SEALED)].

Defendants then inquired about an email exchange that ARDA produced between it and Plaintiffs' employees, which is Exhibit 16 to Mr. Harris's deposition [Doc. 445-3]. The email largely relates to Defendant Wesley's advertisements [*Id*.]. During the deposition, the following exchanged occurred:

> Q. Was Wesley ever[] discussed at a meeting of the TPE leadership group?
>
> MR. BACKMAN: Outside the one e-mail, which you already have which has been produced because it was shared with a third-party, we're objecting as to privilege and I'm instructing him not to answer.
>
> BY MR. STOVALL:
>
> Q. Are you following that instruction?
>
> A. Yes.
>
> Q. So with respect to this e-mail, Mr. Backman said apart from, or aside from this e-mail. So let me ask you, did the group meet about this e-mail?

> MR. BACKMAN: Same objection. The email is what it is. It's been produced. It ended up in possession of ARDA, and ARDA produced it. We all understand that. We have not wavered or are waiving our claim of privilege with respect to the discussions that took place during those meetings, and we're going to continue to make that objection. I'm instructing him not to answer.
>
> Q. What, if any attorneys, were part of the TPE leadership group?
>
> A. Jason Cohen and Corrine Gaxiola.
>
> Q. Was a purpose of the TPE leadership group to obtain legal advice from those attorneys or any others?
>
> MR. BACKMAN: I'm going to object on grounds of privilege and instruct him not to answer. Also don't think he's necessarily the person to discuss that. But it was an earlier deposition in this case maybe several where we did all this.
>
> MR. STOVALL: We did with Dave LaGassa; that's true. But what I'm trying to now – I mean, that was Mr. LaGassa's recollection as to plaintiff themselves. I'm trying now to figure out the basis for a foundational element for a privilege claim here.
>
> MR. BACKMAN: Understood. The witness wasn't prepared; it wasn't a topic. I don't think you would have made it anyway. Obviously the witness wasn't prepared to discuss what is or is not privileged or the basis for it. That is a legal objection that I'm making, and I'm going to maintain it.
>
> BY MR. STOVALL:
>
> Q. So as to my last question about whether one of the purposes was seeking legal advice, Mr. Backman instructed you not to answer. Are you following that instruction?
>
> A. Yes.

[Doc. 445-7 pp. 7–8 (footnote and emphasis omitted) (quoting Doc. 397-1 pp. 53–54 SEALED)].

Later, Defendants counsel asked questions about Plaintiffs retaining counsel to sue Defendants [Doc. 445-7 p. 8 (footnote omitted)]. The following exchange occurred:

Q. Was Diamond considering any litigation against Wesley Financial Group in April 2019?

MR. BACKMAN: Object to form. Privileged, actually. I'm going to instruct him not to answer.

BY MR. STOVALL:

Q. Are you going to follow that instruction?

A. Yes.

MR. STOVALL: Will you let him say whether he knows the answer one way or another?

MR. BACKMAN: No. What we were willing to do is let him tell the date the company hired lawyers to pursue the case we're all here on. That's the extent of it. But you don't get to know the company's thought processes, motivations, seeking legal advice about certain things or not at any point in time.

MR. STOVALL: My questions was about whether it was considering filing a lawsuit against Wesley, not any legal advice or any --

MR. BACKMAN: We'll agree to disagree. How about that? I think it calls for privileged communication. If a client comes to you for a consultation, it's privileged; right?

MR. STOVALL: The consultation is [-- w]hat is discussed[;] [the] date of the consultation may not be.

MR. BACKMAN: You asked the date that they first came to us, and he gave it to you. That's it.

MR. STOVALL: I know you've objected to the question whether Diamond was considering filing a lawsuit against Wesley in April 2019. We did that just now. He's going to follow that instruction. Just to be clear, and it may be a subtle distinction, but I want to know if he knows either one way or the other.

MR. BACKMAN: I don't think it works that way. I think the question, regardless of the answer, calls for privilege communication. But he's already told you the date was March of 2020.

> MR. STOVALL: When he hired Greenspoon –
>
> MR. BACKMAN: When he hired a law firm -- when the company hired a law firm to pursue claims against Wesley.
>
> MR. STOVALL: Right.
>
> MR. BACKMAN: March 2020.
>
> MR. STOVALL: Right. That's different from when it first considered suing Wesley.
>
> MR. BACKMAN: I don't think so, but it doesn't matter. We're getting far field. I think the question calls for privilege, so I'm instructing him not to answer.
>
> MR. STOVALL: You could decide to sue one day, but not hire until another.
>
> MR. BACKMAN: Okay.
>
> MR. STOVALL: But still you're standing by the objection for now?
>
> MR. BACKMAN: Yeah.

[Doc. 445-7 pp. 8–9 (emphasis omitted) (quoting Doc. 397-1 pp. 56–57)].

On April 5, 2025, Defendants filed the instant motion [Doc. 372]. They state that Plaintiffs "asserted meritless privilege objections in response to two series of questions:" (1) "questions about when Plaintiffs discussed [Defendant] Wesley at meetings of an intra-company group formed to monitor companies that help people exit timeshares, referred to as 'third-party exit companies' (TPEs); and" (2) "questions about when Plaintiffs first considered litigation against [Defendant] Wesley" [*Id*. at 1]. They contend that because "Plaintiffs filed this lawsuit on June 7, 2020[,]" if they knew about Defendants' alleged practices before June 7, 2019, Plaintiffs' claims may be untimely [Doc. 445-7 p. 4]. Defendants assert that the information they sought during Mr. Harris's deposition is not protected by the attorney-client privilege [*Id*. at 12–16]. Further, they state that the work-product doctrine does not apply to the information they seek, but even if it did,

6

Defendants state that they have a substantial need for it [*Id*. at 16–20]. Defendants submit that "the types of information sought and objected to in Plaintiffs' Rule 30(b)(6) deposition are the same types of information that Plaintiffs would ordinarily need to provide to establish the privilege in any event" [*Id*. at 20–22]. Finally, Defendants assert that Plaintiffs waived any privilege by emailing ARDA, i.e. Exhibit 16 [Doc. 445-7 p. 22] and because Mr. Harris disclosed that "[Defendant] Wesley was discussed in the TPE leadership group meetings minutes he reviewed as part of his preparation" [*Id*. at 23 (citation omitted)].

For relief, Defendants request that in ten days, the Court order Plaintiffs to:

(i) Provide answers to depositions upon written questions and/or supplemental interrogatory answers in accordance with Rules 31 and 33 to answer the following questions asked during Plaintiffs' 30(b)(6) deposition:

> Q. Was Wesley Financial Group ever discussed at a meeting of the TPE leadership group?
>
> Q. Did the [TPE leadership] group meet about this e-mail [Exhibit 16 – TPE leadership group email forwarded to ARDA]?
>
> Q. Was a purpose of the TPE leadership group to obtain legal advice from those attorneys or any others?
>
> Q. Was Diamond considering any litigation against Wesley Financial Group in April 2019?

(ii) Produce redacted copies of: the TPE leadership group meeting minutes from the meetings in which Wesley was discussed and communications from within the TPE leadership group pertaining to Wesley; or confirm that no such materials exist other than Exhibits 16-21; and/or

(iii) Describe the nature of the documents, communications, or tangible things not produced or disclosed so the Court and Defendants can fairly analyze the basis for the privilege objections, including: the dates of the TPE leadership group meetings in which Wesley was discussed and the nature of the communications; and the dates, parties involved, and

7

> nature of other communications being withheld based on privilege as to when Plaintiffs' first considered filing suit against Wesley.

[*Id*. at 24–25]. "In the alternative," Defendants state that "Plaintiffs should be sanctioned with whatever relief under Rule 37 the Court finds appropriate for their failure to timely supplement responses" [*Id*. at 25]. They also request "[i]n addition to or in the alternative to any sanction imposed here, Plaintiffs should also be required to pay Defendants' reasonable expenses, including attorney's fees, caused by their failures" [*Id*.].

Plaintiffs respond in opposition to the motion [Doc. 400]. First, they argue that Defendants' motion is untimely, noting that this issue arose "in a least four depositions and in response to a request for production" [*Id*. at 15]. Plaintiffs contend that Defendants cannot show good cause to consider this motion [*Id*. at 15–16]. Second, they assert that the parties had an agreement about privileged communications and that the Court has already enforced that agreement [*Id*. at 16–17]. Third, Plaintiffs claim that Defendants' inquiries during Mr. Harris's deposition sought information protected by the attorney-client privilege and the work-product doctrine [*Id*. at 17–19]. This is true, Plaintiffs assert, even if the TPE Leadership Group's meetings were for mixed business and legal purposes [*Id*. at 19–20]. They deny that they have waived the privilege [*Id*. at 21–23]. Plaintiffs further argue that while Defendants claim that they need this information for their statute of limitations defense, the Middle District of Tennessee considered a similar issue and found each time "[Defendant] Wesley engages in a 'consumer transaction' . . . [it] has the potential to give rise to a separate cause of action" [*Id*. at 14 (citation and emphasis omitted)]. To the extent the Court is inclined to grant Defendants' request, Plaintiffs state that the Court should consider "[a]ny document review must be done by the Court in camera;" . . . [Defendant] Wesley must be made to identify and create a privilege log for every document it has withheld because it deemed

it privileged[,]" and that [Plaintiffs] must be given the reciprocal opportunity to contest [Defendant] Wesley's claims of privilege" [*Id*. at 2].

Defendants filed a reply [Doc. 406]. They claim that the information they seek—that is, the date and general subject matter of meetings—is not protected and relevant [*Id*. at 3–6; *see also id*. at 13–16]. Defendants argue that their motion is timely under the circumstances [*Id*. at 6–10]. They do not seek a comprehensive privilege log [*id*. at 11–12] and argue that the parties' agreement related to "privileged communications without outside counsel (i.e., Greenspoon Marder)" [*Id*. at 12]. According to Defendants, "[T]he Court also hasn't ruled that the parties never had to produce privilege logs based on a prior agreement" [*Id*.]. Further, Defendants maintain that Plaintiffs waived the privilege [*Id*. at 16–18]. Finally, Defendants argue that the Middle District of Tennessee case that Plaintiffs rely on is different than this case [*Id*. at 18–22].

## II. ANALYSIS

The parties' filings raise several issues. First, whether Defendants' motion is timely. Second, whether the parties had an agreement about privilege logs. Third, whether Defendants seek information protected by the attorney-client privilege. Fourth, if the information is protected, whether Plaintiffs have waived that protection. Because the undersigned finds the first and second issues dispositive, the Court need not address the remaining issues.

### A. Timeliness

Plaintiffs argue that this is not the first time that they have asserted privilege with respect to the TPE Leadership Group inquiries [Doc. 400 pp. 5–12]. They argue that on December 19, 2023, Defendants deposed Mr. Harris in his personal capacity and asked questions about the TPE Leadership Group [*Id*. at 6]. During that deposition, Plaintiffs' counsel instructed Mr. Harris not to answer questions about the substance of the TPE Leadership Group's meetings [*Id*.]. Plaintiffs

9

state that on February 2, 2024, Defendants deposed David LaGassa ("Mr. LaGassa"), Plaintiffs' former employee who oversaw the loan portfolio and who was the head of the TPE Leadership Group [*Id*. at 6–7]. In referring to the TPE Leadership Group, Mr. LaGassa testified, "[W]e did this to sort of seek the advice and direction of our legal counsel during that time" [*Id*. at 7 (citation and emphasis omitted)]. Plaintiffs' counsel stated, "[T]he content of those meetings is protected by attorney/client privilege, and I'm going to instruct you not to provide the content of those communications" [*Id*. (citation omitted)]. He also asserted the privilege when Defendants asked whether Defendant Welsey was discussed at those meetings [*Id*. at 7–8 (citation omitted)].

Plaintiffs state that later, on February 12, 2024, they responded to Defendants' Twelfth Set of Request for Production of Documents, "which sought 'all documents relating to the TPE [L]eadership [G]roup formed within [Plaintiffs], including but not limited to emails, presentations, memos, notes, and recordings" [*Id*. at 9]. They responded, in part, that the "TPE Leadership Group . . . consists of executive-level [Plaintiffs] employees and members of [their] legal department that specially addressed legal strategy associated with TPEs" and that "[a]ll documents and communications associated with this group are categorically privileged" [*Id*. (citation and emphasis omitted)].

The following week, Plaintiffs state, Defendants deposed Ms. Kalber, Plaintiffs' former head employee at the customer service department [*Id*. at 10]. During that deposition, Plaintiffs' counsel noted that the TPE Leadership Group's communications were privileged [*Id*.; *see also id*. at 11]. About a month later, on March 21, 2024, Defendants deposed Ms. Wara, who handled Plaintiffs' branding efforts [*Id*. at 12]. During that deposition, Plaintiffs' counsel stated that he would object to the content of the TPE Leadership Group meetings, but Defendants could ask her about Exhibit 16 [*Id*.].

Based on the above, Plaintiffs argue, "The objections [they] made during [Defendant] Wesley's examination of [Mr.] Harris after the close of discovery are identical to those made well before the close of discovery in at least four depositions and in response to a request for production" [*Id*. at 15]. Plaintiffs therefore argue that this motion is untimely [*Id*.]. They submit that the Court may consider an untimely motion for good cause, but Defendants have failed to show good cause here [*Id*. at 15–16].

Defendants acknowledge that "motions to compel are often filed in advance of the close of discovery," but they note that "there are circumstances where a motion to compel is appropriate and properly granted after the discovery period has closed" [Doc. 406 p. 6]. They claim that Plaintiffs' Rule 30(b)(6) deposition occurred after the discovery deadline and that "Plaintiffs[] contributed to this delay" [*Id*. at 8]. Defendants contend that "the Court expressly stated that these privilege issues would need to be addressed by appropriate motions after the [Rule] 30(b)(6) deposition occurred" [*Id*.]. While Plaintiffs point out that other witnesses were asked questions about the TPE Leadership Group's meetings, Defendants argue that their argument "ignores a critical distinction between the depositions: none of those earlier lay witnesses had an affirmative obligation to be prepared to testify on the topics for which Plaintiffs have claimed privilege" [*Id*. at 9 (citation omitted)]. According to Defendants, "Plaintiffs do not cite any authority to support their argument that [Defendant] Wesley has waived any right to pursue this issue by waiting to hear the responses of a [Rule] 30(b)(6) witness" [*Id*.]. Defendants state that one of the topics was about the TPE Leadership Group [*Id*. (citation omitted)]. And at the April 3–4 hearing, the Court noted that "any privilege objections would need to be addressed 'by an appropriate motion after the deposition is concluded'" [*Id*. at 10 (citation omitted)]. Defendants' final point is that following

11

the deposition, the parties attempted to settle this case and asked for a stay, which was lifted in Spring 2025 [*Id.*].

The parties acknowledge that "[a] district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Willis v. New World Van Lines, Inc.*, 123 F.Supp.2d 380, 401 (E.D. Mich. 2000)). Indeed, as the United States Court of Appeals for the Sixth Circuit has recognized, "In a number of cases, courts have denied discovery motions filed after the close of discovery." *Id.* (collecting cases); *see also Ecolab, Inc. v. Ridley*, No. 1:22-CV-050, 2023 WL 11762603, at *2 (E.D. Tenn. May 5, 2023) ("A motion to compel filed within days of the close of discovery is plainly untimely." (collecting cases)). Denying a motion to compel as untimely may be appropriate "where the moving party had the information it needed to file the discovery motion and its late filing would prejudice the other party." *Pittman*, 901 F.3d at 642 (citation omitted).

Even so, the parties also acknowledge, "Courts may choose to consider an untimely motion to compel on its merits if there is good cause, or if the circumstances of the case warrant such consideration." *Sensat v. Sw. Airlines Co.*, No. 17-CV-12468, 2018 WL 11312204, at *3 n. 6 (E.D. Mich. Oct. 11, 2018) (citations omitted); *see also FedEx Corp. v. United States*, No. 08-2423, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011) ("Numerous courts, including this court, have found that absent special circumstances, motions to compel discovery filed after the close of discovery are untimely." (collecting cases)).

The Court has carefully considered the facts of this matter. The Court acknowledges that on April 3–4, 2024, it addressed a number of discovery disputes between the parties, one of which included the scope Defendants' Rule 30(b)(6) notice [*See* Doc. 309]. The Court discussed Topic

12

30 at the April 3 hearing, and Plaintiffs stated that it involved their general counsel's office [Doc. 305 p. 83]. Defendants responded that whether they were discussed at a meeting and the date of that discussion "without going into details, that's the kind of information that would be on a privilege log anyway" [*Id*. at 84]. Plaintiffs argued, "[T]he fact of the communication is not privileged but any content of the communication, that question invades content" [*Id*.]. The Court directed the parties to proceed with the question, Plaintiffs could make their privilege assertions, and "then we'll address with appropriate motions" [*Id*.]. Following the hearing, in its order, the Court noted: "Plaintiffs stated that these topics implicate actions taken by their general counsel's office and/or their counsel" [Doc. 309 p. 7]. "The Court found that any privileged matters need to be addressed by an appropriate motion after the deposition is concluded" [*Id*.]. The Court also addressed related discovery disputes on June 12, 2024 [Doc. 328], and the deposition ultimately commenced on July 17, 2024—after the discovery deadline. These facts weigh in favor of considering the merits of the motion.

But there are other facts that do not support Defendants' timeliness. Defendants did not file their motion until April 5, 2025 [Doc. 372]. Defendants explain that the case was stayed from November 2024 until March 2025. Indeed, on November 18, 2024, the parties asked the Court to hold all matters in abeyance pending settlement negotiations [Doc. 353]. This was extended to March 3, 2025 [Doc. 356]. Defendants do not explain, however, why they did not file this motion in August, September, October, or November 2024. During that timeframe, the parties were actively engaged in motion practice [*See, e.g.*, Docs. 332, 336, 337, 344].

And, as Plaintiffs' point out, this was not a new issue. Indeed, in December 2023—eight months before Defendants asked Plaintiffs' Rule 30(b)(6) witness—they asked similar questions to Mr. Harris in his personal capacity, and Plaintiffs objected. On February 2, 2024, they also asked

13

Case 3:20-cv-00251-DCLC-DCP   Document 474   Filed 09/24/25   Page 13 of 20
PageID #: 19166

questions to Mr. LaGassa, and Plaintiffs objected. On February 23, 2024, Defendants asked questions to Ms. Kalber, and Plaintiffs objected. And on March 21, 2024, Defendants asked questions to Ms. Wara, and Plaintiffs stated, "Hold on, [Ms. Wara], so we are not going to talk about any of the subject of what you did or didn't do with the TPE Leadership [G]roup. [Defense counsel] was just asking if it exists. He knows that I'm going to object and instruct you not to answer about anything you did with regard to that" [Doc. 400 p. 12].

Defendants argue that these "lay witnesses [did not] ha[ve] an affirmative obligation to be prepared to testify on the topics for which Plaintiffs have claimed privilege" [Doc. 406 p. 9]. Granted, but on February 12, 2024, Plaintiffs served their response to RFP No. 10, which sought, "Produce all documents relating to the TPE [L]eadership [G]roup within [Plaintiffs], including but not limited to emails, presentations, memos, notes, and recordings [Doc. 400-4 at 3]. Plaintiffs objected:

> Additionally, the "TPE leadership group" that Wesley is referring to consists of executive level Diamond employees, and members of Diamond's legal department, that specially addressed legal strategy associated with TPEs, all of which Wesley is aware of. All documents and communications associated with this group are categorically privileged. It is not proportional to the needs of this case to require Diamond to search for, and log, such documents and communications.

[*Id*. at 4]. Notably, RFP No. 10 sought similar documents that Defendants seek here: "Produce redacted copies of: the TPE Leadership [G]roup meeting minutes from the meetings in which Wesley was discussed and communications from within the TPE leadership group pertaining to Wesley; or confirm that no such materials exist other than Exhibits 16–21" [Doc. 445-7 p. 25].

As the undersigned has noted on several occasions [*see, e.g.*, Doc. 361], the Court has entered many Scheduling Orders [*see* Docs. 33, 60, 78, 112, 149, 181], and all discovery was set to finally conclude on March 29, 2024 [Doc. 181]. Even then, the Court allowed some discovery,

such as Plaintiffs' Rule 30(b)(6) deposition to proceed after this deadline in light of the disputes about Defendants' Rule 30(b)(6) notice. But Defendants waited to raise this dispute with the Court, despite knowing about it in December 2023. And even after they took the Rule 30(b)(6) deposition in July 2024, they waited until April 2025 to file the instant motion.

Under these circumstances, the Court finds Defendants' request untimely.

### B.     The Parties' Agreement

According to Plaintiffs, "Early in this case, the [p]arties agreed that privileged communications were excluded from discovery and documents for which a claim of privilege attends would not be logged" [Doc. 400 p. 5]. Plaintiffs state that "[Defendant] Wesley has already tried to set aside the [p]arties' agreement last year so [it] could obtain essentially the same information that [Defendant] Wesley seeks in its [m]otion" [*Id.*]. In support of their argument, Plaintiffs rely on an exchange that occurred during the June 12, 2024, discovery dispute hearing:

> **MR. STOVALL**: I think that the dispute that remains relates to privilege log.
>
> . . .
>
> That's right, so they have produced. We proposed some search terms and they have produced documents. Plaintiff's position and Mr. Ritchie brought it up is that there was an agreement that neither side would have to log communications, and now I am asking them to log communications. So I stand accused today, Your Honor, of breaching the agreement or trying to modify it, and here's what I have tried to explain to plaintiffs, an email before today and further today. When that earlier agreement about a log was made, this, these requests had not been served and were not part of the discussion, and what I had told plaintiff's counsel, again, before today and again today, if there is a set of requests that you sent to us where you think the fact of the communication and privilege documents have been withheld and the fact and date of the communication alone would be relevant to a claim or defense, we will, we are willing to, we're not seeking only a unilateral or one-way modification.
>
> I'm not asking today for plaintiffs to log all of their withheld communications. It's only communications responsive to a discrete

> set of requests with a specific date cutoff more than a year before the filing of the lawsuit. And the reason I'm asking for a log is not to cause them burden, you know, for the sake of causing burden. The issue is communications with counsel could be some of the most important, most relevant communications to a limitations defense. When they hired -- when did they hire, when did they consider hiring counsel, when did they think about suing Wesley. That's directly relevant to our limitations defense. Here's another example. We know they formed within the company a third-party exit company, TPE leadership group that met every other week. There were lawyers who attended at least some of those meetings, and I understand that they're going to claim the minutes and agendas and communications at those meetings are all privileged. Okay, but the fact that Wesley was discussed by the TPE leadership group is itself independently relevant to the limitations defense. I am not aware of a similar set of requests or parallel I mean, not similar, parallel. I'm not aware of a set of requests to Wesley to which we've withheld privileged documents where the date of those communications would itself be relevant, and but I told them before. If you think there is, please let me know. We'll consider it. We will log. If there are communications like that, we will log those, but we don't need --I'm not trying to redo the entire agreement, but with -- if they don't log these requests and some of the most important communications could be, you know, concealed from view. If they were talking to a lawyer before a year, it's not -- that doesn't mean we get the emails. It doesn't mean that, but the smoking gun that showed they slept on their rights could be an email to a lawyer, and a privilege log would show that.

[Doc. 329 pp. 161–63].[1]

Plaintiffs' counsel responded:

> **MR. BACKMAN**: So the privilege log would reveal privileged information? That's what I'm hearing. You can't use a privilege log as evidence, so let's start with that premise, but you work backwards from there. We're going to list them as privileged. They are in fact privileged. The other side gets to say that that means that we talked about something that nobody presumably knows about and then we can't defend ourselves because those things were privileged. This concept of a log related to these types of communications the way in Mr. Stovall is intending to use it is, is just -- it doesn't make a lot of sense to me, but here's the bigger point. He has admitted that we

---

[1] The Court has not edited this paragraph for typographical errors.

had an agreement, so you don't get to have a carve-out all of a sudden.

All of the requests were served, Your Honor. All of the requests were served after the parties had the agreement that they don't have to log communications that are privileged. I mean, the notion that it's, well, we just figured out the statute of limitations specific requests for production last month and now we want to amend the agreement. Well, we don't want to amend the agreement. We don't want to, and it's an agreement, and so presumably if it's going to be amended, both parties should have to agree to it. We don't agree to it, but here's the thing. If Your Honor wants to grant his request, we do not agree that it's a limited topic. Everyone's logging everything because there's no longer an agreement, and that's how we view it.

And do I have in my mind right at the moment specific examples? No. I can think of one that I'll throw out there for a second, but I don't know them all because I don't know what's on the log. I don't know what they're withholding. I don't know who the lawyers are in-house, outside, third parties. . . . but in this case we don't have a single log with a single in-house lawyer at Wesley. We know they've had many. We don't have a single log with a single communication with outside lawyers either. They have not done it. We don't know what's being withheld. We have not asked for one.

. . .

We all had an agreement, and now for one side show where they're otherwise getting some 200-plus emails where they know the dates, they know about this committee that he referenced, they know about all that. They have some emails on that that aren't privileged, we're going to blow up the whole thing? That's not how this works. There was an agreement. We should have an agreement. We don't agree to blow up the agreement.

[*Id*. at 163–65].[2]

Following the June 24, 2024 hearing, the Court noted as follows:

The Court has not reviewed the parties' agreement. To the extent, however, an agreement exists, Plaintiffs are not required to produce a privilege log containing outside counsels' communications. To the extent an agreement does not exist, Plaintiffs shall produce a privilege log **within fourteen (14) days** of this Order.

---

[2] The Court has not edited this paragraph for typographical errors.

17

Case 3:20-cv-00251-DCLC-DCP   Document 474   Filed 09/24/25   Page 17 of 20
PageID #: 19170

[Doc. 328 pp. 7 & 16].

Plaintiffs argue, "No privilege logs were produced—again confirming the existence of an agreement" [Doc. 400 p. 14]. They argue that "the [p]arties agreed that documents they believed to be privileged were excluded from discovery and need not be logged" [*Id.* at 16]. Plaintiffs state that now Defendants request that Plaintiffs provide information that "is more detailed than [Rule] 26(b)(5) requires" [*Id.*]. In addition, Plaintiffs contend that while Defendants demand a privilege log, "[n]owhere do[] Defendant[s] recognize that such a step must be reciprocal" [*Id.*].

Defendants reply that they are not "asking for a comprehensive privilege log" [Doc. 406 p. 11]. "Rather," they state, "Defendants are asking for a fundamental, highly-relevant, and very narrow non-privileged information: the dates that Plaintiffs' TPE leadership group discussed [Defendant] Wesley and when Plaintiffs began considering litigation against [Defendants]" [*Id.*]. Defendants explain that "[t]his information can be provided in any number of ways," and that "Defendants have suggested several forms of doing so in their request for relief, including providing the type of information that would be on a privilege log to support their assertions" [*Id.*]. They assert, "While Plaintiffs call it a 'privilege log,' Defendants' request at its core is that Plaintiffs provide appropriate information supporting their privilege assertions and provide the non-privileged information" [*Id.*]. According to Defendants, "[Their] discussion of privilege logs in their motion was to provide another example of why the information sought is not privileged—the information is so basic that it is the type of information that is ordinarily required to be disclosed on a privilege log and when making a showing of privilege" [*Id.* at 11–12].

In addition, Defendants claim that Plaintiffs "distort what this 'agreement' was" [*Id.*]. They contend that "the parties agreed that certain privileged communications with outside counsel (i.e., Greenspoon Marder) as well as documents evidencing those communications wouldn't need to be

18

logged. They didn't agree that the parties were wholly relieved of their burden to show privilege and that such privilege assertions couldn't be tested if need be" [*Id.*]. Further, while Plaintiffs rely on the Court's June 2024 Order to support their position, Defendants state that the Court's ruling applied to outside counsels' communications [*Id.*].

"Courts will enforce discovery agreements reached between two parties." *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 WL 1857080, at *5 (E.D. Mich. Apr. 23, 2019) (citing *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. and Prod. Liab. Litig.*, No. MD 16-2695, 2018 WL 3972909, at *11 (D.N.M. Aug. 18, 2018)), *report and recommendation adopted by* No. 15-13842, 2019 WL 1790250 (E.D. Mich. Apr. 24, 2019); *see also Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 478 (S.D. Ohio 2014) ("[Rule] 29 permits the parties to make agreements about discovery."). "[T]he Court has an obligation to read any purported written discovery agreement fairly and reasonably, and to place the burden of persuasion on the party asserting that an agreement has been reached." *Libertarian Party of Ohio*, 302 F.R.D. at 478 (citation omitted).

As the undersigned previously noted, "The Court has not reviewed the parties' agreement" [Doc. 328 pp. 7 & 16].[3] And the Court's June Order only referenced outside attorneys' communications [*Id*]. But still, the parties' attorneys represented to the undersigned at the June 2024 hearing that there was an agreement. Defendants argue that the agreement was for outside counsel only. But in the context of that discussion, Defendants brought up the TPE Leadership Group's communications, noting that they were relevant and that Defendants would consider logging communications if Plaintiffs served parallel requests. Indeed, Defendants counsel stated,

---

[3] Given that, it is not clear if this is a written agreement. "It is not clear whether agreements about discovery are still required to be in writing" in light of the 2007 amendments to Rule 29. *Bricker v. R & A Pizza, Inc.*, No. 2:10-CV-278, 2011 WL 3941982, at *5 (S.D. Ohio Sept. 6, 2011). The parties have not addressed this issue, so the Court need not decide it.

19

Case 3:20-cv-00251-DCLC-DCP   Document 474   Filed 09/24/25   Page 19 of 20
PageID #: 19172

"I'm not trying to redo the entire agreement[.]" [Doc. 329 p. 163]. In light of these representations to the Court, the undersigned declines to redo any agreement.

## III. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' Motion to Compel Plaintiffs to Answer Rule 30(b)(6) Deposition Questions to which Privilege Objections were Improperly Asserted [**Doc. 372**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge