| | |
|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>WESLEY FINANCIAL GROUP, LLC, *et al.*,<br><br>    Defendants. | No. 3:20-CV-251-DCLC-DCP |

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Strike Antonio L. Argiz's Supplemental Report as Untimely [Doc. 451-4]. Defendants responded in opposition to the motion [Doc. 457-6]. Plaintiffs filed a reply [Doc. 465]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons stated below, the Court **GRANTS** the motion [**Doc. 461-4**].

### I. BACKGROUND

On January 29, 2024, the Court entered an Order, adopting the parties' Stipulation to Extend Expert Disclosure Deadlines [Doc. 225]. Relevant here, the parties agreed, and the Court ordered, that Defendants would submit their expert disclosures on February 21, 2024 [Doc. 223 p. 1]. On February 21, 2024, Defendants served Antonio Argiz's ("Mr. Argiz") expert report ("First Report") [Doc. 452-40]. Defendants retained Mr. Argiz to provide an opinion on "Plaintiffs' claim of economic harm" [*Id.* ¶ 2 (footnote omitted)]. He opined:

> 19. Plaintiffs' failure to produce the requested discovery by the Defendants precludes an appropriate evaluation of whether Wesley caused the claimed economic harm.

> 20. Public documents and discovery provided to me did not suggest that Diamond suffers significant financial harm from its existing customers who stop making payments on timeshare loans.
>
> 21. Diamond Resorts' business model benefits from the recapture and resale of vacation owner interest (VOI) points.

[*Id.* ¶¶ 19–21]. Similarly, he stated:

> 28. Without access to relevant financial or operating documentation regarding the Wesley customer timeshare loans at issue or Diamond Resorts' business model and financial results, I or other experts will not be able to appropriately evaluate whether any economic harm was caused by Wesley's conduct.
>
> 32. From my inquiries of Counsel, I was advised that not all of Plaintiffs' discovery has been received. With Plaintiffs' failure to produce these types of financial and operational documentation, an independent expert cannot analyze nor determine whether Plaintiffs[] incurred any economic harm allegedly caused by Wesley's conduct and related services provided to Diamond Resorts' customers.

[*Id.* ¶¶ 28, 32 (footnote omitted)].

On November 1, 2024, Defendants served another report by Mr. Argiz ("Second Report") [Doc. 452-41]. In the Second Report, he "perform[ed] a hypothetical portfolio analysis of the expected cash inflows that Diamond would receive from reselling all Wesley VOI Points from the Schedule with resold VOI financial loans" [*Id.* ¶ 43]. He opines:

> Based on my review of the Schedule and the Plaintiffs' discovery produced to me with results from the hypothetical analyses requested by Counsel, the Schedule does not support a reasonably certain conclusion that the Plaintiffs sustained financial or economic harm or losses due to Wesley's alleged conduct.

[*Id.* ¶ 67].

Plaintiffs move to strike Mr. Argiz's Second Report [Doc. 451-4]. They argue that the Second Report is not a proper supplement under Rule 26(e) of the Federal Rules of Civil Procedure

[*Id*. at 6–9]. In addition, they submit that Defendants' untimely disclosure of the Second Report is not harmless or substantially justified [*Id*. at 9–16].

Defendants respond in opposition to the motion [Doc. 457-6]. They outline the parties' discovery disputes and the Court's hearings addressing them [*Id*. at 11–18]. Defendants argue that the relevant factors weigh in favor of denying Plaintiffs' request [*Id*. at 19–23]. To the extent that the Court is inclined to strike the Second Report, Defendants request an extension of time under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure [*Id*. at 24–26].

Plaintiffs filed a reply, stating that Defendants "effectively concede[] that [Mr.] Argiz's Second Report [Doc. 452-51] is untimely and not a proper supplement under Rule 26(e)" [Doc. 465 p. 2 (emphasis omitted)]. They argue that Defendants' request under Rule 6 in a response brief is procedurally improper [*Id*. at 3–4]. But regardless, they claim that Defendants have not established excusable neglect for an extension [*Id*. at 4–9]. In addition, they assert that Defendants have not shown substantial justification and/or harmlessness for the late disclosure [*Id*. at 9–15].

## II. ANALYSIS

As an initial matter, Rule 26(e)(2) of the Federal Rules of Civil Procedure sets forth the rule for supplementing discovery, including expert disclosures. Fed. R. Civ. P. 26(e)(2). While Defendants discuss the duty to supplement [*see* Doc. 457-6 pp. 18–19, 23–24], they do not argue that the Second Report is a supplementation. Given that, the Court finds the Second Report is not a supplemental report under Rule 26(e)(2), and therefore, it is untimely. *See also Am. Nat. Property & Cas. Co. v. Stutte*, No. 3:11-CV-219, 2015 WL 2095868, at *4 (E.D. Tenn. May 5, 2015) ("If the three possible conclusions are 'yes', 'no', and 'I can't be sure' and one goes from 'I can't be sure' to 'no', as [the expert] did, he has rendered a different opinion.").

The Court will now turn to whether Mr. Argiz's Second Report should be excluded.

A.     Rule 37

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (explaining that Rule 37 requires "absolute compliance with Rule 26(a)" (Citations omitted)). The burden to show substantial justification or harmlessness is on the potentially sanctioned party. *Roberts*, 325 F.3d at 782.

The Sixth Circuit has identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless" as follows: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) (quoting *Russell v. Abs. Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). "District courts have broad discretion in applying these factors and need not apply each one rigidly. The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)).

The first factor considers the surprise to Plaintiffs. Plaintiffs argue that they are "profoundly surprised by this late disclosure" [Doc. 451-4 p. 9]. They assert that Defendants served the Second Report nine months after their disclosure deadline and seven months after discovery

4

had closed [*Id.*]. Plaintiffs state that "it is clear [Defendants] knew [they] needed to seek leave to obtain an extension if [they] wanted [Mr.] Argiz to render opinions like he did, but [they] failed to do so" [*Id.* at 10]. For example, Plaintiffs submit, Defendants disclosed another expert, Loren Naidoo, who claimed he needed more information to render his opinions [*Id.*]. The parties stipulated to an extension, which the Court adopted, and Mr. Naidoo presented his new opinions [*Id.*]. Plaintiffs argue that did not occur with Mr. Argiz's Second Report [*Id.*].

Defendants respond that "[Plaintiffs] could not have been unduly surprised by the substantive material provided in [Mr.] Argiz's [Second] Report because [he] used new information which was provided by [Plaintiffs] following the Order requiring [Plaintiffs] to do so" [Doc. 457-6 p. 20]. They argue that "Plaintiffs repeatedly objected to providing critical discovery of their financial information, despite maintaining their claims under the [Tennessee Consumer Protection Act]" [*Id.*].

Plaintiffs reply that they have no opportunity to depose Mr. Argiz about his opinions and that "his opinions are not 'simple math' that [Plaintiffs] can mechanically calculate on [their] own" [Doc. 465 p. 10]. They claim that "[Defendants] fail[] to address the surprise to [Plaintiffs] that [Defendants] would attempt to rely on an expert report when [they] did not seek an extension of [their] expert deadline so that [they] could obtain the documents [Defendants] or [Mr.] Argiz believed were required to effectively render expert opinions" [*Id.* at 10–11 (citation omitted)]. According to Plaintiffs, "[C]ourts find the mere failure to disclose an expert in a timely manner to be sufficient surprise to the opposing party to favor exclusion" [*Id.* (citation omitted)].

The Court finds this factor weighs in favor of exclusion. Defendants disclosed the Second Report nine months after the deadline to do so, and it contains new opinions. While Defendants argue that Plaintiffs were not unduly surprised because Mr. Argiz used new information that was

5

provided later, Defendants never asked for an extension of the expert disclosure deadline. *See Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 148 (E.D. Mich. 2020) ("In this personal injury case, Defendant could not be surprised to find Plaintiff's treating physicians in her witness list, but may be surprised to learn of their opinions at some later stage in the litigation, given the non-disclosure."). Particularly troublesome in this case is that Defendants did not serve the Second Report until November 1, 2024—seven months after their deadline to do so.[1]

The parties brief the second and third factors collectively. The second factor considers whether the surprise can be cured, and the third factor considers whether the evidence will disrupt the trial. Plaintiffs contend that the surprise cannot be cured "because discovery closed well over a year ago, in March 2024" [Doc. 451-4 p. 11 (citation omitted)]. And they assert that extending the discovery deadline "would be incredibly prejudicial to [them]" [*Id.*]. They argue that "curing the prejudice that [Defendants] ha[ve] caused—countering [Mr.] Argiz's opinions—would require [Plaintiffs] to open [their] books and records . . . and engage an expert to disprove [Mr.] Argiz's opinions" [*Id.*]. With respect to the third factor, Plaintiffs contend that "[a] trial date has been set in this matter and re-opening discovery and expert disclosures would threaten that trial date, as well as the dispositive motion and other deadlines." [*Id.* (citation omitted)].

Defendants respond that "district courts have broad discretion when managing discovery issues [. . .] and exclusion of tardily disclosed evidence is not mandatory" [Doc. 457-6 pp. 20–21

---

[1] The cases that Defendants rely on to argue that the untimely disclosure is not a surprise [Doc. 457-6 p. 20 (citing *Howe*, 801 F.3d at 748; *Bentley*, 2016 WL 5867496, at *3) are not applicable here. In *Howe*, the Sixth Circuit found that the plaintiffs' late disclosure was not a surprise because the defendant "had all the information relevant to the computation of damages in its possession" and "had a full opportunity during [the plaintiff's] deposition to question him about damages." *Howe*, 801 F.3d at 748 (emphasis omitted) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 600 (6th Cir. 2006)). Such is not the case here. And in *Bentley*, that case addressed supplemental expert reports. *Bentley*, 2016 WL 5867496, at *3. Defendants do not argue the Second Report is a supplemental report under Rule 26(e).

6

Case 3:20-cv-00251-DCLC-DCP   Document 505   Filed 11/26/25   Page 6 of 16
PageID #: 23407

(alteration in original and citation omitted)]. Defendants cite to other courts that have allowed late disclosures [*Id.*].

Plaintiffs reply that while Defendants "suggest[] a cure is possible through a deposition of [Mr.] Argiz[,]" this suggestion "ignores [Plaintiffs'] ability to file a rebuttal report" [Doc. 465 p. 11]. According to Plaintiffs, "[C]ourts routinely reject [Defendants'] proposed cure where, as here, discovery has long since closed, the trial date is set, and reopening discovery would likely delay existing deadlines and trial" [*Id.* (citations omitted)]. They assert that Defendants' "suggested cure – reopening discovery . . . and the resulting impact on trial, is particularly problematic given [Defendants'] documented lack of diligence in pursing discovery and failed attempts at further extending discovery" [*Id.* at 12].

The Court finds the second factor weighs in favor of exclusion. The discovery deadline expired in March 2024. There is no opportunity for Plaintiffs to conduct discovery about Mr. Argiz's new opinions, nor is there an opportunity for them to serve a rebuttal report. *See Campos v. MTD Prods., Inc.*, No. 2:07-CV-00029, 2009 WL 2252257, at *11 (M.D. Tenn. July 24, 2009) ("[I]t would clearly be harmful for the defendant to rely on the plaintiff's expert disclosures for many months and then have to respond to completely new reports disclosed many months after the deadline."); *Bendix Com. Vehicle Sys. LLC v. Haldex Brake Prods. Corp.*, No. 1:09 CV 176, 2010 WL 11561585, at *4 (N.D. Ohio Aug. 12, 2010) ("Plaintiffs' inability to view evidence in support of these defenses prior to the close of fact and expert discovery is prejudicial.").

Defendants point to other cases that have declined to exclude untimely disclosures and have allowed additional discovery beyond the deadline [Doc. 457-6 p. 21 (citing *ChampionX, LLC v. Resonance Sys., Inc.*, No. 3:21-CV-288, 2024 WL 5188040, at *4 (E.D. Tenn. Dec. 20, 2024) ("The Court finds the surprise to Defendants can be cured through a deposition of Mr. O'Donahue

and a supplement from Defendants' expert." (citing *Greene v. Ledvance, LLC*, No. 3:21-CV-256, 2024 WL 4181777, at *4 (E.D. Tenn. Sept. 12, 2024) (finding that the plaintiff's supplementation to his discovery responses and offer to be re-deposed had "some curative effect")). The Court declines to reopen discovery under the circumstances. Here, Mr. Argiz's Second Report completely changed course from his first report. The surprise cannot be cured by a short deposition followed by a quick rebuttal supplementation. *Cf. ChampionX, LLC*, 2024 WL 5188040, at *4 ("Although the parties disagree on the details of a deposition, Defendants assert that a deposition of Mr. O'Donahue would take no longer than one hour. Considering the limited nature of the supplement and short duration of a deposition of Mr. O'Donahue, it appears to the Court that Dr. Plank would be able to quickly supplement his expert report, if needed."); *Greene*, 2024 WL 4181777, at *4 ("Plaintiffs have also offered for defendant to further depose Mr. Greene as to the matter of loss earning capacity.").[2] Further, discovery in this case lasted for over four years [*See* Docs. 33, 60, 78, 112, 149, 181]. And as the Court has noted at various times, it is not inclined to reopen discovery [*See, e.g.*, Docs. 212 and 238].

The Court finds the third factor—disruption to the trial—slightly weighs against excluding the Second Report. Defendants served Mr. Argiz's Second Report on November 1, 2024. A few weeks later, the parties requested that the Court hold matters in abeyance pending settlement discussions [Doc. 354]. On March 3, 2025, the parties filed a status report stating that their discussions were not successful [Doc. 357]. Later, after a conference with the District Judge, he lifted the stay and set the trial for April 20, 2026 [Doc. 384]. Plaintiffs did not file their instant

---

[2] The Court does not find Defendants' reliance on *Trapp v. Fed. Express Corp.*, 647 F. Supp. 3d 567, 570 (E.D. Mich. 2022) persuasive. In that case, the court addressed whether the plaintiff's failure to supplement his earnings and employment status in response to interrogatories was substantially justified or harmless. *Id*. The facts of that case are different than this case.

motion until July 2, 2025 [Doc. 411].[3] In other words, Mr. Argiz provided the Second Report sixteen months before trial. Even so, the Court does not find the circumstances warrant reopening the deadlines for the reasons discussed above.

With respect to the fourth factor, the importance of the evidence, Plaintiffs claim that "[Mr.] Argiz's new opinions in the Second Report have no bearing on any . . . remaining issue in this case" [Doc. 451-4 p. 12]. Instead, Plaintiffs state that the opinions "relate to quantification of financial or economic harm or losses stated by [Plaintiffs] as a result of [Defendants'] conduct" [*Id.* (citation omitted)]. But because Plaintiffs are not seeking monetary damages, but instead are seeking disgorgement, they argue his opinions are not relevant [*Id.*]. According to Plaintiffs, "[A]lmost the entirety of [Mr.] Argiz's Second Report seeks to quantify the economic amounts [Plaintiffs] allegedly [do] or [do] not lose when an owner defaults, and even references that these amounts 'should be quantified' on two separate occasions" [*Id.* (citation omitted)]. Plaintiffs assert that "quantification of harm is decidedly not part of this case" [*Id.* (emphasis omitted)].

Defendants claim that "during the hearing on April 3 and 4, 2024[,] addressing several ongoing discovery disputes, this Court overruled [Plaintiffs'] objections and found that 'the policies relating to monetizing, pricing, and accounting for points are relevant and Plaintiffs ha[d] not established that they are disproportional to the needs of the case'" [Doc. 457-6 p. 22 (citation omitted)]. They argue that "[t]he financial information that Plaintiffs produced albeit belatedly and incompletely is relevant to the issues in this case, and expert evaluation of such evidence will be very useful to the factfinder (here, the Court) and is important to the resolution of issues at the heart of this dispute" [*Id.*].

---

[3] Given issues with the parties' requests to seal, Plaintiffs were directed to refile their Motion to Strike [*See* Doc. 439]. Plaintiffs refiled the instant motion on August 15, 2025 [Doc. 451-4].

In their reply, Plaintiffs maintain that Mr. Argiz's opinions are not relevant [Doc. 465 pp. 13–14]. They assert that the opinions "relate to quantification of financial or economic harm or losses sustained by [Plaintiffs] as a result of [Defendants'] conduct" [*Id*. at 13]. Plaintiffs claim that Defendants do "not address this argument in [their] Response, effectively conceding the issue" [*Id*.]. They argue that Defendants "analyze[] the importance of the wrong issue: [Defendants] analzye[] the significance of [Plaintiffs'] production of certain financial information, rather than the importance of the untimely opinions that are the subject of the Motion to Strike [*Id*. at 14 (emphasis and citation omitted)]. "But even if the excluded testimony was important[,]" Plaintiffs add, "that would still weigh in favor of exclusion" [*Id*.]. In addition, Plaintiffs submit that "even if the Court finds this factor favors [Defendants], importance alone cannot save untimely evidence" [*Id*. (citation omitted)].

The Court finds the fourth factor is neutral. The United States Court of Appeals for the Sixth Circuit has stated that "this factor can cut both ways." *Bisig*, 940 F.3d at 220. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Id*. (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017)). Even if Mr. Argiz's Second Report is important, "importance 'cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless.'" *EQT Prod. Co.*, 2017 WL 2295906, at *5 (explaining that "[t]he more important the proof, the greater the effect of preclusion, but also greater the harm in tardy disclosure" (comparing cases)), *objections overruled by* 2017 WL 4974782 (E.D. Ky. July 19, 2017); *see also Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505, 2021 WL 6332794, at *10 (E.D. Tenn. Sept. 28, 2021) ("Instead, parties should be mindful that important evidence must be disclosed in a timely manner, or they must seek an extension of time from the Court prior to the

deadline."); *see also Etheridge v. E. I. DuPont De Nemours & Co.*, No. 14-CV-2443, 2015 WL 12516227, at *3 (W.D. Tenn. Oct. 14, 2015) (finding that factor four favored the plaintiff's request to admit the evidence "because [it was] so important to [the p]laintiff," but noting that "her explanation for her failure to abide by the [c]ourt's [o]rder or the Federal Rules of Civil Procedure bec[ame] even less satisfactory"). Upon review of the parties' arguments, the Court finds this factor cuts both ways. *See Corder v. Ethicon, Inc.*, No. 6:19-CV-273, 2020 WL 13616867, at *7 (E.D. Ky. Nov. 6, 2020) ("Importance can cut both ways." (citation omitted)); *see also ChampionX*, 2024 WL 5188040, at *5 (relying on the above authority and finding that this factor cuts both ways).

The next factor considers Defendants' explanation for the untimely disclosure. Plaintiffs state that Defendants "will attempt to point the finger at [them] for [their] own failures" [Doc. 451-4 p. 12]. They assert that Defendants "will likely claim that [Mr.] Argiz could not render his opinions in the Second Report until after the expert disclosure deadline in February 2024 because [Plaintiffs] had not produced documents that [Defendants] had requested . . . and the deposition of [Plaintiffs'] Rule 30(b)(6) designee did not take place until July 2024" [*Id*. at 12–13]. Plaintiffs argue that this "says nothing of [Defendants'] years of delay that lead up to those disputes nor does it address [Defendants'] failure to timely seek an extension of time to disclose [Mr.] Argiz and his opinions" [*Id*. at 13]. But regardless, Plaintiffs claim that Defendants and Mr. Argiz "had more than sufficient information to render his opinion in a timely manner" [*Id*.]. Plaintiffs contend that Defendants had all the necessary data Mr. Argiz relied on before the expert disclosure deadline [*Id*. at 14–16].

Defendants respond that "[Mr.] Argiz's late supplemental disclosure was the result of Plaintiffs' repeated refusal to provide discovery information regarding their financial records"

[Doc. 457-6 p. 22]. They argue that "[m]onths prior to [Mr.] Argiz's initial expert report, Defendants requested written discovery relating to several specific aspects of Plaintiffs' claims of financial harm" [*Id*.]. Defendants state that "Plaintiffs repeatedly refused to comply with these discovery requests, and as a result, [Mr.] Argiz had incomplete information concerning Plaintiffs' financial records when he filed his initial report" [*Id*.]. "When new information concerning Plaintiffs' financials were revealed," Defendants claim that "[Mr.] Argiz filed his supplemental report to resolve the gaps from his prior report" [*Id*. at 22]. They argue, "The delay was in no way in [Mr.] Argiz's control, but rather was solely in [Plaintiffs'] control, and [Plaintiffs] ha[ve] repeatedly chosen to withhold this information from [Defendants]" [*Id*.].

The Court finds this factor weighs in favor of exclusion. Plaintiffs state, "One of the brand-new analyses in "[Mr.] Arigz's [Second] [R]eport analyzes when [Plaintiffs] would supposedly receive the amount of money it lent to an owner by virtue of that owner making loan payments over time. . . . To conduct this analysis[,] [Mr.] Argiz looked at the average [Defendants] customer's original loan balance, and calculated how long it would take for the owner to make payments equal to that balance" [Doc. 451-4 p. 14 (citation omitted)]. Mr. Argiz relied on the Schedule D chart and HVG's 2023 10-K [Doc. 454-41 ¶ 37 SEALED; *see also* Doc. 451-4 p. 15]. But with respect to the Schedule D chart, Plaintiffs assert:

> While the specific sources [Mr.] Argiz cited were not available when he submitted his first report, the *data* unquestionably was. [Mr.] Argiz cited to "Schedule D" to establish the average loan balance for Diamond's customers. But that data exists in myriad place[s] throughout the discovery in this case. Diamond had produced dozens of spreadsheets related to customer data, including loan balances, interest rates, loan terms, etc., for every customer in this case, AEO and not, since the inception of this litigation. Diamond has also produced the customers' loan documents, and most importantly, loan payment histories, on five separate occasions prior to [Mr.] Argiz's first report: (1) February 6, 2022, (2)

12

September 16, 2022, (3) June 30, 2023, (4) July 17, 2023, and (5) February 4, 2024.

[Doc. 451-4 p. 15 (emphasis omitted)]. And with respect to HGV 10-K, Plaintiffs argue that "[Mr.] Argiz cites this report as the source for his average down payment and average interest rate data. [Mr.] Argiz provides no explanation why he is using a non-party's public filings to support these figures when the actual data regarding [Plaintiffs'] loans is available" [*Id*.]. They add, similar to the Schedule D chart, "[T]he source [Mr.] Argiz cites was not available, but prior years' 10-Ks said the same thing" [*Id*. at 16 (citations omitted)].

Defendants do not dispute this point in their response brief. But they do state that during a hearing, "[Plaintiffs'] counsel outright asked how this information could be used considering that expert disclosures had already been made" and "[d]efense counsel explained that this information was fundamental to [Mr.] Argiz's report and that though [Mr.] Argiz did not have the information at the time of his initial report, he was prepared to opine on the value of the recovered points if he could obtain the information he needed" [Doc. 457-6 p. 16]. Even so, Defendants provide no explanation for why they did not request an extension of the expert disclosure deadline. *See James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. CIV.A. 5:11-374, 2014 WL 1664263, at *9 (E.D. Ky. Apr. 25, 2014) ("If the plaintiffs believed that they did not have sufficient information for their expert report, they should have moved the Court to modify the Scheduling Order.").

After weighing the *Howe* factors, the Court finds that they weigh in favor of exclusion. The Court is mindful that "the task at the heart of Rule 37(c)(1)" is to "separat[e] 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bentley*, 2016 WL 5867496, at *10 (quoting *Howe*, 801 F.3d at 747, 749). The Court does not take sanctions lightly, "[b]ut deadlines are important things. And when the Court

13

Case 3:20-cv-00251-DCLC-DCP   Document 505   Filed 11/26/25   Page 13 of 16
PageID #: 23414

establishes deadlines, the parties are obliged to follow them." *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 239 (E.D. Ky. 2018). Defendants did not do so here and have not shown their failure to do so is substantially justified or harmless.

### B. Request for an Extension

To the extent the Court is inclined to strike Mr. Argiz's Second Report, Defendants request an extension of time [Doc. 457-6 p. 24]. They argue that they have established excusable neglect [*Id*. at 24–25]. They claim that "[Plaintiffs'] failure to produce [the] requested discovery in a timely manner is the reason for the delay of [Mr.] Argiz's [Second] Report" [*Id*. at 25]. Defendants add that "[w]hen [Mr.] Argiz prepared his initial [r]eport in early 2024, [Plaintiffs] had yet to produce much of the relevant information pertaining to [their] claims of harm, financial information, and detailed 'points' information" [*Id*.].

Plaintiffs state that the Court should deny this request as improper [Doc. 465 p. 3]. They argue that "[Defendants] offer[] absolutely no authority that would allow the Court to construe [their] [r]esponse brief as a proper motion" [*Id*.]. According to Plaintiffs, "The key inquiry the Court must analyze is why [Defendants] failed to timely move to extend the expert disclosure deadline so that [Mr.] Argiz could render whatever opinion it was that [Defendants] thought was appropriate, and so that [Defendants] could obtain whatever documents [they] believed were necessary for [Mr.] Argiz to do so" [*Id*. at 4]. Plaintiffs contend that while there are several relevant factors the Court must consider, Defendants only address one [*Id*. at 6]. Even so, they assert, "[Defendants have] not offered any reason for the delay, much less one that satisfies the excusable neglect standard, and the Court should deny [Defendants'] requested extension" [*Id*. (citation omitted).

Even if Defendants' request is proper, *see* Fed. R. Civ. P. 7(b)(1), the Court finds that they have not met their burden. Pursuant to Rule 6(b)(1)(B), if "a party requests an extension of a deadline after that deadline has passed, the Court can grant an extension only on a motion and upon a finding of good cause and excusable neglect." *Boyd v. City of Warren*, No. 16-12741, 2019 WL 1423244, at *2 (E.D. Mich. Mar. 29, 2019) (citation omitted), *objections overruled sub nom.*, *Boyd v. McCabe*, No. 16-CV-12741, 2019 WL 3852582 (E.D. Mich. Aug. 16, 2019). Good cause is measured by the moving party's due diligence in attempting to meet the deadline. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (citation omitted). With respect to excusable neglect, the Court has discretion to determine whether a party failed to act because of excusable neglect. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)) ("We review a district court's determination of excusable neglect, or lack thereof, under the abuse-of-discretion standard." (citation omitted)). In deciding whether excusable neglect exists, courts balance what are commonly referred to as the *Pioneer* factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. *Nafziger*, 467 F.3d at 522 (citing *Pioneer Inv. Servs Co. v. Brunswick Assocs., Ltd. P'Ship*, 507 U.S. 380, 395 (1993)). The Sixth Circuit has explained that the "*Pioneer* factors do not carry equal weight; the excuse given for the filing must have the greatest import." *Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 459 (6th Cir. 2014) (quoting *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010)).

The Court finds Defendants have not met their burden for largely the same reasons as above. *Cf Stanley v. Nagle Paper, Inc.*, No. 24-CV-10094, 2025 WL 1768619, at *2 (E.D. Mich. June 26, 2025) ("Even if the Court relied on Federal Rule of Civil Procedure 26 and *Howe*,

standards that overlap significantly with Rule 6, the Court would arrive at the same conclusion for the below described reasons."). Defendants blame Plaintiffs for the delay, but they do not respond to Plaintiffs' argument that Defendants had the underlying data that Mr. Argiz relied on in his Second Report. Nor do they explain why they did not request an extension when they knew Mr. Argiz would be issuing another opinion [*See* 457-6 p. 16 (explaining that during a hearing, defense counsel noted that Mr. Argiz needed certain information)].[4] *See RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 670 (6th Cir. 2024) ("But Plaintiffs' attempt to place the onus on Defendants ignores Plaintiffs' responsibility to abide by the district court's orders and provide the required disclosures. After all, Plaintiffs chose to disclose Lockhart as an expert witness, and it was Plaintiffs' responsibility to manage and prosecute their case.").

The Court finds Defendants have not established that they are entitled to an extension of time.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion to Strike Antonio L. Argiz's Supplemental Report as Untimely [**Doc. 451-4**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[4] Indeed, according to Plaintiffs, Defendants claimed that their expert Loren Naidoo did not have Plaintiffs' expert material [Doc. 451-4 p. 10]. "[T]he [p]arties entered into a stipulation, which the Court adopted, extending the deadline for [Mr.] Naidoo to present his opinion and then be deposed, and for [Plaintiffs'] expert to respond" [*Id*. (citation omitted)]. Plaintiffs state that after receiving Mr. Naidoo's report, Plaintiffs sought "leave to extend the deadline to respond to that report and for the parties to conduct depositions" [*Id*.]. This did not occur with regard to Mr. Argiz.