UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 3:20-CV-00251-DCLC-DCP |
| WESLEY FINANCIAL GROUP, LLC, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The parties have filed cross-motions for summary judgment [Docs. 546, 647, & 655], their statements of undisputed material facts, and their responses to those statements. They have also moved the Court to deny or strike each other's motions for summary judgment, their statements of undisputed material facts, and their responses to those statements, arguing that they are procedurally defective under the Court's scheduling order. *See* [Defs.' Mot. to Strike Pls.' Statement of Additional Undisputed Facts and Resp. to Defs.' Statement of Undisputed Material Facts, Doc. 687; Pls.' Mot. to Strike Defs.' Mot. for Summ. J., Doc. 675-17; Pls.' Mot. to Strike Defs.' Resp. to Pls.' Statement of Facts, Doc. 580; Defs.' Mot. to Strike or Summarily Deny as Procedurally Defective Pls.' Renewed Mot. for Partial Summ. J. and Statement of Undisputed Material Facts, Doc. 567]. Both sides are right. Because neither side has complied with the Court's scheduling order, despite a second opportunity to do so, the Court will deny both motions for summary judgment without leave to renew, and this case will proceed to a bench trial.

Normally, when addressing motions for summary judgment, the Court would rely on the undisputed material facts from the parties' statements of undisputed material facts to lay

out the case's factual background. But in this case, the parties have failed to comply with the scheduling order's directives governing those statements, rendering them defective. So to recapitulate this case's background, the Court will marshal a few general allegations from the Second Amended Complaint [Doc. 103].

## I. BACKGROUND

Diamond Resorts is one of the world's largest hospitality companies, with hundreds of resorts that span thirty-five countries, and is made up of a "family of companies." [*Id.* ¶ 26]. Plaintiff Diamond Resorts Management, Inc., "manages timeshare resorts" within Diamond Resorts's family of companies. [*Id.* ¶ 27]. Those resorts are "allocated into groupings of resorts called Collections," which include Plaintiff Diamond Resorts U.S. Collection Development, LLC, and Plaintiff Diamond Resorts Hawaii Collection Development, LLC. [*Id.* ¶ 29]. U.S. Collection Development is a points-based program with resorts located throughout the United States, and Hawaii Collection Development is a points-based program with resorts in Hawaii, Nevada, and Arizona. [*Id.* ¶ 30].

Plaintiffs accuse Defendants Wesley Financial Group, LLC, and Charles William McDowell, III of "engag[ing] in a deceptive timeshare cancellation business" that induces Diamond Resorts's timeshare owners to breach their contractual agreements with Diamond Resorts. [*Id.* ¶ 36]. "For this," Defendants allegedly "exact[] exorbitant, up-front fees." [*Id.* ¶ 3]. Plaintiffs bring suit against Defendants for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I),[1] for false advertising and unfair and deceptive acts and

[1] Section 1125(a) states: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents

practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* (Count II),[2] and unauthorized practice of law and improper conduct, in violation of Tenn. Code Ann. § 23-3-101 *et seq.* (Count III).[3] [*Id.* at 20–52]. In requesting relief for these claims, they seek an injunction, monetary damages, disgorgement of Defendants' profits, and attorneys' fees and costs. [*Id.* ¶¶ 102, 123, 132].[4]

The parties have characterized this case as "complex[], [Joint Mot., Doc. 525, at 2], and they have characterized the record as "voluminous," [Joint Mot., Doc. 534, at 3]. And while the Court disputes neither characterization, neither offers the parties freedom to disregard the Court's scheduling order. *See Birge v. Dollar Gen. Corp.*, No. 04-2531 B, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006) ("[A] court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril[.]" (quotation omitted)).

---

the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

[2] "To successfully prove a deceptive advertising claim," Plaintiffs "must establish, among other things, three elements: (1) that the advertisement conveyed a representation through either express or implied claims; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material." *State ex rel. Slatery v. HRC Med. Ctrs., Inc.*, 603 S.W.3d 1, 23 (Tenn. Ct. App. 2019) (internal quotation marks omitted).

[3] Tennessee Code Annotated § 23-3-101(a) states: "No person shall engage in the practice of law or do law business, or both, as defined in § 23-3-101, unless the person has been duly licensed and while the person's license is in full force and effect, nor shall any association or corporation engage in the practice of the law or do law business, or both. However, nonresident attorneys associated with attorneys in this state in any case pending in this state who do not practice regularly in this state shall be allowed, as a matter of courtesy, to appear in the case in which they may be thus employed without procuring a license, if properly authorized in accordance with applicable rules of court, and when introduced to the court by a member in good standing of the Tennessee bar, if all the courts of the resident state of the nonresident attorney grant a similar courtesy to attorneys licensed in this state." Tennessee provides a private cause of action for "[a]ny person who suffers a loss of money or property, real, personal or mixed, or any other article, commodity or thing of value wherever situated, as a result of an action or conduct by any person that is declared to be unlawful under § 23–3–103, § 23–3–104 or § 23–3–108." *Id.* § 23–3–112(a)(1).

[4] Defendants demanded a jury trial in response to Plaintiffs' allegations, [Answer, Doc. 105, at 1], but Plaintiffs have since notified the Court that they no longer plan to pursue "legal relief (*i.e.* a judgment for monetary damages)" and will instead pursue "equitable relief" in the forms of an injunction, disgorgement, attorneys' fees, and costs. [Pls.' Notice, Doc. 263, at 2]; *see* [Pls.' Mot. for Bench Trial, Doc. 340, at 4 ("The only remedies still being sought in this case are injunctive relief, disgorgement, and an ancillary request for attorneys' fees and costs.")].

Indeed, the Court previously struck Plaintiffs' motion for summary judgment and their statement of undisputed material facts because their statement of undisputed material facts was a "sixty-one page, 325-paragraph tome" that "d[id] not conform in good faith with the plain meaning of the scheduling order's directives." [Order, Doc. 526, at 2]. One of those directives states: "Summary judgment motions shall be accompanied by a separate, ***concise*** statement of the material facts as to which the moving party contends there is no genuine issue for trial." [Am. Scheduling Order, Doc. 384, ¶ 2(b) (emphasis added)].

The day after the Court struck Plaintiffs' motion for summary judgment, Defendants moved for leave to withdraw their own motion for summary judgment "[g]iven the length" of their statement of undisputed facts—an implicit acknowledgment that they too had violated the Court's scheduling order by filing a noncompliant statement of undisputed facts. [Defs.' Mot. to Withdraw, Doc. 528, at 1; *see* Pls.' Mot. for Leave to Exceed Page Limitations, Doc. 531, at 5 ("After Diamond's counsel pointed out to Wesley's counsel that Wesley was guilty of the same lack of conciseness, Wesley moved to withdraw its motion for summary judgment and related filings.")]. In the end, the Court gave both parties leave to refile their motions for summary judgment and statements of undisputed facts. [Order, Doc. 526, at 2; Order, Doc. 530, at 1; Order, Doc. 533, at 2; Order, Doc. 537, at 1–2]. The parties have now refiled them, and they are ripe for the Court's consideration and adjudication.

## II. ANALYSIS

The question of what facts, if any, are undisputed is integral to a motion for summary judgment, *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."), and so, the Court's scheduling order states:

> Summary judgment motions shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph, and supported by no more than two citations to the record.
>
> The party opposing the motion shall file with his/her brief in opposition, opposing affidavits, etc., a separate pleading that responds to each fact set forth by the movant that either (1) agrees that the fact is undisputed, (2) agrees that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (3) demonstrates that the fact is disputed, in which event there must be a specific citation to the record.
>
> The parties are advised that fact statements shall not include argument. If either party fails to file the documents required of him/her as set forth herein, the Court may strike that party's motion or opposition, as applicable.

[Am. Scheduling Order, Doc. 384, ¶ 2(b)]. These directives are straightforward. Be concise. Raise no legal arguments. When responding, do one of three things: (1) agree that the fact is undisputed, (2) agree that it is undisputed for the purpose of summary judgment only, *or* (3) demonstrate that the fact is disputed. Both parties have departed from these basic directives in their statements of undisputed material facts and in their responses to each other's statements of undisputed material facts.

**A. Defendants' Filings**

Take, for example, Defendants' responses to Plaintiffs' statement of undisputed material facts. First, the responses contain extensive legal argument: Defendants repeatedly contend that Plaintiffs' statements are insufficient to enable Plaintiffs "to meet their required initial burden" under Rule 56, [*id.* at 9, 13–15, 17–28, 32–33, 35–39, 41–42, 44], and characterize them as "improper." [*id.* at 16, 20, 35, 42]. Those contentions do not belong in a response to a statement of fact.

In addition, Defendants have not followed the Court's basic instruction of responding to statements of fact as undisputed, undisputed for the purpose of summary judgment only, or

disputed. Instead, they routinely qualify their responses as "disputed in part" or "disputed in pertinent part." [*Id.* at 22, 26, 30, 31, 33, 36-39, 41-42, 45–47]. In other words, they dispute Plaintiffs' statements of fact in some ways but not in others. As a prime example, take their response to a seemingly simple fact: whether Defendant Wesley's employees told Wesley's customers that they would not perjure themselves by signing a knowingly false affidavit. Defendants responded that the fact was "disputed in part," then conceded it was undisputed "at times":

> Wesley expressly told its clients that it is not perjury to sign the known-to-be-false affidavit. Lutton Dep. at 307:4–310:18; 410:5–411:16; 426:24–430:6; S. Whitaker Dep. at 459:15–461:9; Ex. 52 (Transcript of WFG_00512934) at 7-8; Ex. 55 (Transcript of WFG_00604911) at 2–9.
>
> RESPONSE: ***Disputed in part***. It is ***undisputed*** that, ***at times***, a few Wesley employees told customers that it was not perjury to sign the Transitions affidavit required by Diamond but not disclosed in Diamond's customer contracts. It is ***disputed*** that this occurred for the entirety of the discovery period, as is implied by Plaintiffs' assertion. The relevant language was developed in 2019 by Wesley's former general counsel, Stephen Grauberger. Grauberger was terminated more than four years ago, in 2021. *See* Stephen Grauberger Dep. at 13:17–14:1; 105:7–108:12. Shortly after Mr. Grauberger was terminated in 2021, Wesley's new management began to overhaul Wesley's scripts to ensure that any past conduct inconsistent with Wesley's updated policies and practices would not recur, including use of this affidavit language from Wesley's former general counsel. Jinanne West. Decl. [Doc. 548-03] ¶¶ 6-13; A. Whitaker Resp. Decl. ¶ 47. Further, ***disputed*** under Fed. R. Civ. P. 56(c)(1)(B): Plaintiffs have failed to meet their required initial burden because their record citations do not support their assertion that *Wesley* had a practice of telling customers certain information. The statement makes assertions about Wesley as a whole but only cites to a deposition based on one employee's personal knowledge and three individual calls made by Wesley employees, as the cited portion of Sandi Whitaker's does not discuss Wesley's practices, but instead contains a transcript of a recorded call with a customer. None of these sources establish that Wesley had a practice of telling customers that it was not perjury to sign the affidavit. Finally, none of the sources describe the affidavit as a "known-to-be-false affidavit." Defendants also stand on the specific objections to this statement asserted in the corresponding numbered paragraph of Defendants' Objections.

[*Id.* at 38 (emphasis added)]. With this equivocal and conditional response—which is one of *multiple* examples in which Defendants declare a fact bot disputed and undisputed in the same response—Defendants obscure the issue at hand and force the Court to speculate about whether a material fact is or is not in dispute.

Again, the scheduling order permits Defendants to take only one of three approaches: (1) agree that the fact is undisputed, (2) agree that the fact is undisputed for the purpose of summary judgment only, *or* (3) demonstrate that the fact is disputed. But Defendants meld some or all of these approaches into one, many times over. And exacerbating matters, Defendants, who filed a statement of undisputed material facts with their motion for summary judgment, have filed an *additional* statement of material facts—with sixty-five additional facts—after the dispositive-motion deadline expired and without leave of the Court. *See* [Defs.' Statement of Additional Facts, Docs. 563 & 662]. In doing so, they violated the scheduling order yet again. *See* [Am. Scheduling Order, Doc. 384, ¶ 2(b) (requiring the parties to file their statements of undisputed material fact contemporaneously with their motions for summary judgment)]. They also violated a separate order in which the Court required the parties' statements of undisputed facts to be "no more than *seventy*" in number. [Order, Doc. 533, at 2 (emphasis in original)]. Defendants' statement of facts now stands at 135 in number—a significant difference from the allowable number. So Defendants' response to Plaintiffs' statement of facts *and* their own statement of facts are noncompliant.

**B. Plaintiffs' Filings**

Plaintiffs are not blameless either. Their statement of facts is rife with argumentation, so they are at least partly to blame for the argumentation that Defendants offer in their response. Take, for example, the following statement from Plaintiffs' statement of facts:

> Wesley's marketing influences prospective clients' decisions and ***induces*** them to engage Wesley using consistent themes comprised of explicit and implicit messages that Wesley can "legally" terminate a Diamond timeshare involving some sort of "legal" process, that the client can stop paying their loan and maintenance fees obligations to Diamond, that Wesley has a high success rate, that Wesley will protect or repair the clients' credit, and that the client will be represented by an attorney[.]

[Pls.' Renewed Statement of Undisputed Material Facts, Doc. 542-2, at 3–4 (emphasis added)]. Whether Defendant Wesley's marketing does or does not induce, deceive, or mislead consumers into believing that Wesley can lawfully terminate their timeshares is the ultimate question underlying Plaintiffs' claims. *See* [Second Am. Compl., Doc. 103, at 9–10 (alleging that Wesley's "deceptive conduct" consists of "induc[ing] existing Diamond Resorts' owners to breach their agreements with, and related obligations to, Diamond Resorts")]. Plaintiffs can state as a fact what Wesley's marketing says, but whether that marketing actually induces customers to act in a particular manner is an inference for the factfinder to draw from the evidence; it is not a fact that Plaintiffs may declare to be undisputed.

Plaintiffs' statement that Wesley, through its marketing, induces consumers is therefore not a statement of fact at all—much less one that is undisputed—but a characterization of the evidence that asks this Court to draw the inference on which Plaintiffs' claims depend. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). And this argument is not a one-off. Plaintiffs renew it elsewhere in their statement of undisputed material facts: "Wesley ***induces*** its debt clients to stop paying Diamond through either (1) directly instructing clients not to pay Diamond, or (2) encouraging clients to stop paying Diamond." [Pls.' Renewed Statement of Undisputed Material Facts, Doc. 542-2, at 8 (emphasis added)].

Plaintiffs also bake argumentation into their statements of material fact concerning their claim for the unauthorized practice of law:

> Wesley's marketing efforts, including its sales calls, and resolution services create the impression that its services and employees have the approval, characteristics, uses, and/or benefits of legal services provided by licensed attorneys, despite no attorney being involved in the process. S. Whitaker Dep. at 89:6–92:25; Chuck McDowell Dep. at 152:14–152:21; Grauberger Dep. at 35:25–36:3; Finn Dep. at 28:3–29:11.
>
> . . . .
>
> Wesley advertises, promotes, sells, or offers for sale legal services, which Wesley cannot lawfully provide. Cameron McDowell Dep. at 55:23–56:4; Grauberger Dep. at 35:25-36:3; Walker Dep. at 18:3–18:5; 112:13–112:25; Finn Dep. at 28:3–29:11.

[*Id.* at 16]. These statements—whether Wesley's marketing creates the appearance that it offers legal services or whether Wesley does in fact offer legal services—go directly to the merits of Plaintiffs' claim. *See* Tenn. Code Ann. § 23-3-101(3) (defining the "practice of law" as "the soliciting of clients directly or indirectly to provide [legal] services"). They are therefore not statements of fact at all but legal conclusions coterminous with the merits of Plaintiffs' claim.

**C. The Appropriate Response**

In sum, both parties have again disregarded the Court's scheduling order. The question is what response that failure warrants. The Court has previously admonished the parties for their conduct. *See* [Order, Doc. 527, at 2 (admonishing the parties for their "tit-for-tat feuds")]. Because the parties have *twice* failed to produce statements of material facts and responses to those statements that comply with the Court's scheduling order and that aid the Court in determining what facts are and are not in dispute, the Court, this time, will deny their motions for summary judgment without leave to renew them. *See* [Am. Scheduling Order, Doc. 384, ¶ 2(b) ("If either party fails to file the documents required of him/her as set forth herein, the Court may strike that party's motion or opposition, as applicable.")]; *see also* Fed. R. Civ. P.

16(f)(1)(C) (authorizing "any just orders" when a party "fails to obey a scheduling or other pretrial order"); Fed. R. Civ. P. 56(e)(1), (4) (permitting a court, when a party fails to properly support or address a fact, to "give an opportunity to properly support or address the fact" or to "issue any other appropriate order").[5] The parties already received the opportunity that Rule 56(e)(1) contemplates. [Order, Doc. 526, at 2; Order, Doc. 533, at 2]. And denial of their motions works no unfair prejudice to either party. It resolves no claim or defense, and each side remains free to present its evidence and arguments at trial, where the Court will sit as the factfinder.

The Court notes that independent of the noncompliance of the parties, the Court would decline to resolve these motions on the record before it. Nothing in Rule 56 prevents the Court from denying "summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255; *see* Fed. R. Civ. P. 56 advisory committee's note to 2007 amendment (recognizing "discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact" (citing *Kennedy v. Silas Mason Co*., 334 U.S. 249, 256–57 (1948)). The Court finds that is the course the Court will take here. The Court will sit as the factfinder at a bench trial set to begin in four months. The parties describe the record as "complex[]" and "voluminous," [Joint Mot., Doc. 525, at 2; Joint Mot., Doc. 534, at 3], and their competing statements show that many contested facts turn on witness testimony about what Wesley's employees told customers, when they said it, and whether Wesley's practices changed after 2021. *See, e.g.*, [Defs.' Resp., Doc. 662, at 38]. The

[5] Rule 16(f)(2) provides that, "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). Both sides failed to comply with the scheduling order, and the expenses each incurred flow at least in part from its own noncompliance. An award of expenses to either side would therefore be unjust, and the Court declines to make one.

Court may weigh that testimony at trial. It may not do so on summary judgment. *See Anderson*, 477 U.S. at 255. The relief Plaintiffs seek, an injunction and disgorgement, is equitable, and its availability and scope will require findings on a full record in any event. *See* Fed. R. Civ. P. 52(a)(1). And because Plaintiffs request only partial summary judgment, granting their motion would not avoid a trial. Any purely legal argument either side has raised remains available at trial. *See* Fed. R. Civ. P. 52(c).

## III. CONCLUSION

For the reasons stated above, Plaintiffs' Renewed Motion for Partial Summary Judgment [Docs. 647 & 655] and Defendants' Motion for Summary Judgment [Doc. 546] are therefore **DENIED**. Defendants' Motion to Strike or Summarily Deny as Procedurally Defective Plaintiffs' Renewed Motion for Partial Summary Judgment and Statement of Undisputed Material Facts [Doc. 567] is **GRANTED**, and Defendants' Motion to Strike Plaintiffs' Statement of Additional Undisputed Facts and Responses to Defendants' Statement of Undisputed Material Facts [Doc. 687] is **GRANTED**. Plaintiffs' Motion to Strike Defendants' Response [Doc. 580] is **GRANTED,** and Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment [Doc. 675-17] is **GRANTED**. This case remains set for a bench trial on **Tuesday, February 2, 2027, at 9:00 a.m.**

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge